1

TONY WEST
Assistant Attorney General

2

ELIZABETH J. SHAPIRO
Deputy Branch Director

3

JOEL McELVAIN, State Bar No. 257736
Senior Counsel

4

U.S. Department of Justice
Civil Division, Federal Programs Branch

5

450 Golden Gate Ave., Room 7-5395
San Francisco, CA 94102

6

Telephone:    (415) 436-6645
Fax:              (415) 436-6632

7

Email:           Joel.McElvain@usdoj.gov

8

Attorneys for the Defendants

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

11

ELECTRONIC FRONTIER FOUNDATION,          )     Case No. 4:09-cv-03351-SBA

12

                                         )
              Plaintiff,                 )     **Memorandum in Opposition to**

13

                                         )     **Plaintiff's Motion for Partial**
              v.                         )     **Summary Judgment**

14

                                         )
CENTRAL INTELLIGENCE AGENCY, *et al.*,   )     Date:  December 1, 2009

15

                                         )     Time:  1:00 p.m.
              Defendants.                )     Courtroom 1, 4th Floor

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     Preliminary statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.     The plaintiff's requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.     The processing of the OAG requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.     The processing of the DOD requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.     The processing of the DIA requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    E.     The processing of the NSA requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    F.     The processing of the CIA requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    G.     The processing of the ODNI requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    H.     The processing of the FBI requests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.     Legal standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.     The plaintiff is not entitled to an order requiring a complete response
        from all agencies by December 15, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.   Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

Page

**Cases:**

*Appleton v. FDA*, 254 F. Supp. 2d 6 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
*CaretoLive v. FDA*, 2008 WL 2201973 (S.D. Ohio 2008) . . . . . . . . . . . . . . . . . .   13, 14
*Exner v. FBI*, 542 F.2d 1121 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
*Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035 (9th Cir. 1999) . . . . . . . . . . . . .   12, 14
*Open America v. Watergate Special Prosecution Task Force*,
        547 F.2d 605 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

**Statutes:**

5 U.S.C. § 552(a)(6)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
5 U.S.C. § 552(a)(6)(C)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13, 14
5 U.S.C. § 552(a)(6)(E)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
5 U.S.C. § 552(a)(6)(E)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14
5 U.S.C. § 552(a)(6)(E)(vi) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

**Regulations:**

28 C.F.R. § 16.4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
28 C.F.R. § 16.5(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3
32 C.F.R. § 1700.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

**Miscellaneous:**

Executive Order 12863 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2
Executive Order 12958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
Executive Order 13462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

I.      **Preliminary Statement**

The defendants respectfully submit this memorandum in opposition to the motion for partial summary judgment submitted by the plaintiff, the Electronic Frontier Foundation.  In that motion, the plaintiff asks this Court to direct each of the defendants to complete the processing of the requests that the plaintiff has submitted to them under the Freedom of Information Act ("FOIA") by December 15, 2009.  Some of the defendants anticipate that they will be able to complete their processing by that date, and the parties have reached a stipulation to that effect.  The remaining defendants, however, will be unable to complete their review by that date.  With one exception, the remaining defendants anticipate that they will be able to complete their respective reviews no later than March 31, 2010, and accordingly request that the Court enter an order that reflects the time required for the completion of several complex tasks, including the review of classified material, before the processing of the FOIA requests can be completed.  (The one exception involves the requests directed to the Federal Bureau of Investigation; as explained in the defendants' separately-filed motion for a stay of proceedings with respect to the FBI, the plaintiff's requests to the FBI will not rise to the top of the queue in the FBI's first-in, first-out processing system for 18 months.)

As support for this memorandum, the defendants respectfully submit the declarations of Melanie Ann Pustay (attached as Exhibit 1); William T. Kammer (attached as Exhibit 2); Alesia Y. Williams (attached as Exhibit 3); Martha M. Lutz (attached as Exhibit 4); Diane M. Janosek (attached as Exhibit 5); and John F. Hackett (attached as Exhibit 6).  The defendants also rely on the pleadings on file with respect to their motion for a stay of proceedings with respect to the FBI, including the Declaration of David M. Hardy, which has been filed with that motion.

II.     **Background**

A.      **The Plaintiff's Requests**

On February 25, 2008, the plaintiff sent requests under FOIA to the Department of Energy ("DOE"); the Department of Homeland Security ("DHS"); the Department of Defense ("DOD"); the Defense Intelligence Agency ("DIA"); the National Security Agency ("NSA"); the Central Intelligence Agency ("CIA"); the Office of the Director of National Intelligence ("ODNI"); and the

Federal Bureau of Investigation ("FBI"). (Compl. ¶¶ 19, 28; Answer ¶¶ 19, 28; Kammer Decl. ¶ 6; Williams Decl. ¶ 5; Janosek Decl. ¶ 16; Lutz Decl. ¶ 5; Hackett Decl. ¶ 3; Hardy Decl. ¶ 6.) The requests sought reports submitted by these respective agencies to the Intelligence Oversight Board ("IOB") pursuant to Executive Order 12,863. (*Id.*)

On February 13, 2009, the plaintiff sent a request under FOIA directed to the Office of the Attorney General ("OAG"), a component of the Department of Justice ("DOJ"). (Pustay Decl., ¶ 3.) That request also sought reports submitted to the IOB. (*Id.*)

On June 19, 2009, the plaintiff sent requests under FOIA to the Department of State ("DOS"); DOE; DHS; OAG; DOD; DIA; NSA; CIA; ODNI; and FBI. (Compl. ¶ 31; Answer ¶ 31; Kammer Decl. ¶ 9; Williams Decl. ¶ 6; Janosek Decl. ¶ 21; Lutz Decl. ¶ 7; Hackett Decl. ¶ 5; Hardy Decl. ¶ 12.)[1] The requests sought reports submitted by these respective agencies to the IOB or to ODNI pursuant to Executive Order 13,462, and certain other communications between these agencies and IOB or the President's Intelligence Advisory Board ("PIAB"). (*Id.*)

DOE has completed its processing of the February 2008 request. (Compl. ¶ 27; Answer ¶ 27.) DOE, DOS, and DHS have reached a stipulation regarding the timing of the processing of the June 2009 request to DOE, and to each of the requests submitted to DOS and DHS. (Doc. 10.)

## B.    The Processing of the OAG Requests

The responsibility for the processing of the requests that the plaintiff submitted to OAG has been assigned to the Office of Information Policy ("OIP"), a component within DOJ that is responsible for responding to FOIA requests submitted to the department's leadership offices. (Pustay Decl. ¶ 1.) OIP has completed the processing of the plaintiff's June 2009 request; no records were located in response to that request. (*Id.* ¶¶ 20-22.)

---

[1]  The plaintiff attached a letter with the date February 25, 2008, in a form similar to the requests of that date submitted to the other agencies, to its June 2009 FOIA request to DOS. DOS does not have a record of prior receipt of that letter, but is in any event processing both requests. The plaintiff's complaint alleges that it submitted FOIA requests in June 2009 to DHS's Office of the Inspector General and its Office of General Counsel. The latter office does not have a record of receipt of that request, but the plaintiff has since provided another copy, and DHS is voluntarily processing that request.

The plaintiff's February 2009 request did not ask for expedited processing, as contemplated in 28 C.F.R. § 16.5(d).  (*Id.* ¶ 11.)  OIP accordingly assigned the request to its regular processing queue, to be processed in the order that it was received.  (*Id.*)  OIP conducted a search of the Departmental Executive Secretariat – the official records repository for the leadership offices – in March 2009.  (*Id.* ¶ 5.)  The current staff of OAG completed a search of the records of that office in May 2009.  (*Id.*)  In September 2009, searches were completed of the records indices of the former Attorney General Michael B. Mukasey.  (*Id.*)  Potentially responsive records were found in these searches.  (*Id.*)

These potentially responsive records are classified.  (*Id.* ¶ 6.)  OIP is working to obtain the documents, to determine if they are responsive, to determine if a classification review is necessary, and to determine if any portion of the documents can be released.  (*Id.*)  OIP's review may require consultations with other DOJ components, or other agencies, before it can provide a response.  (*Id.* ¶ 7.)  *See* 28 C.F.R. § 16.4(c)(1).  The determination whether a consultation or referral is required cannot be made until OIP has had an opportunity to review the potentially responsive records.  (*Id.* ¶ 8.)  OIP anticipates that it will be able to provide the plaintiff with a response addressing any responsive records from OAG by November 20, 2009.  (*Id.* ¶ 9.)

The plaintiff's February 2009 request asked that, if the records that it sought were not located in OAG, searches also be conducted of the Office of the Deputy Attorney General ("ODAG") and the Office of the Associate Attorney General ("OASG").  (*Id.* ¶ 10.)  Although potentially responsive records have been located from OAG, OIP has elected to search these additional offices as well.  (*Id.*)  The OASG search has been completed, and no responsive records were located.  (*Id.* ¶ 19.)

With respect to ODAG, in September 2009, a FOIA analyst has completed searches of the records indices of former ODAG officials.  (*Id.* ¶ 12.)  No responsive records were located.  (*Id.*)  Searches of the paper and electronic files of each current official in ODAG are currently pending.  (*Id.* ¶ 13.)  These searches generally involve hand searches of large paper files, as well as electronic searches.  (*Id.* ¶ 14.)  Because ODAG officials must balance their pressing day-to-day duties with

*Electronic Frontier Found. v. CIA*
Case No. 09-cv-03351-SBA
Opposition to Motion for Partial Summary Judgment

the need to respond to search requests, it is not possible for these searches to be completed immediately. (*Id.*) These official are completing the searches as soon as it is practical to do so, however. (*Id.*)

Because these searches are still pending, OIP is unsure of the volume of potentially responsive records that may be located. (*Id.* ¶ 15.) OIP is accordingly planning for the eventuality that a large volume of records will be located. (*Id.*) For every potentially responsive record that is located, OIP will need to conduct a page-by-page review to determine that the material is responsive, that duplicative material is removed, and that FOIA exemptions are appropriately applied. (*Id.*) It is very likely that consultations with other DOJ components or other agencies will be required for any responsive documents before the records can be released. (*Id.*) OIP accordingly estimates that it will complete its processing of the February 2009 request by January 15, 2010. (*Id.* ¶ 18.)

### C.    The Processing of the DOD Requests

DOD's Office of Freedom of Information ("OFOI") is responsible for DOD's processing of the two requests that the plaintiff has submitted to it. (Kammer Decl., ¶¶ 1, 4.) DOD follows a first-in, first-out system for the processing of FOIA requests, after assigning incoming requests to one of three queues. (*Id.* ¶ 5.) Although DOD reserves one of its queues for expedited processing, the plaintiff has not requested expedited processing for either of its two requests. (*Id.* ¶¶ 5, 6, 9.) The requests were accordingly assigned to DOD's complex request queue. (*Id.*)

OFOI is in the course of processing an earlier request, addressing the same subject matter, from the Electronic Privacy Information Center. (*Id.* ¶ 7.) OFOI has determined that it would be efficient to combine its processing of the February 2008 request with its processing of the earlier request. (*Id.*) Because OFOI has chosen to do so, the plaintiff is benefitting from the processing of its requests earlier than that to which the plaintiff otherwise would be entitled under DOD's first-in, first-out processing system. (*Id.*) 580 requests are pending that were submitted before the plaintiff's February 2008 request. (*Id.* ¶ 5.)

The Office of the Assistant to the Secretary of Defense, Intelligence Oversight ("ATSD(IO)") is the central collection point for DOD submissions to the IOB. (*Id.* ¶ 8.) That office

has conducted a search for responsive records. (*Id.*) Potentially responsive records have been identified and have been referred for review to DOD components and to other government agencies. (*Id.*)

OFOI has also elected to combine its processing of the plaintiff's June 2009 request with its processing of the first request. (*Id.* ¶ 9.) The plaintiff accordingly has also benefitted from this decision, as otherwise this request would be pending in the complex request queue. (*Id.*) The searches for potentially responsive records for both requests have been completed. (*Id.* ¶ 11.) OFOI currently has identified 1,181 pages of documents that are potentially responsive to one or both requests. (*Id.*) These documents have been referred to other DOD components or other agencies for review. (*Id.*)

OFOI will be unable to complete its processing of these records by the plaintiff's requested deadline of December 15. (*Id.*) There are 64 other FOIA litigations pending for DOD; DOD personnel must balance their need to respond to these litigation matters, and to respond to the processing of other FOIA requests, with the processing of the two requests at issue in this case. (*Id.*) In addition, both of the plaintiff's requests involve classified material. (*Id.*) Accordingly, both DOD and the other components and agencies that must be consulted need to engage in a careful page-by-page review to determine that the interests of national security are protected before a response can be made to the plaintiff. (*Id.*) Because of this need for a careful review, DOD will require until February 2, 2010 to complete its processing. (*Id.*)

### D.     The Processing of the DIA Requests

DIA's Freedom of Information Act Services Section holds the responsibility for the processing of the requests submitted to that agency. (Williams Decl. ¶ 2.) DIA's mission is to collect, analyze, and provide foreign intelligence; accordingly, the vast majority of its records are classified in the interests of national security. (Williams Decl. ¶ 4.)

DIA has a backlog of 2,863 requests, the majority of which are complex, which were submitted before the earliest of the plaintiff's two requests. (Williams Decl. ¶¶ 5, 7.) DIA, however, is actively working to reduce this backlog and reduce the processing time for FOIA requests.

(Williams Decl. ¶ 7.)  It has increased its staffing of the FOIA Services Section by approximately 50% in the past year, including the assignment of a new Assistant General Counsel to advise that office.  (*Id.*)  It has upgraded its technology by purchasing newer equipment to enhance the speed of processing FOIA requests.  (*Id.*)  It has also provided additional opportunities for training for its FOIA staff, directed toward the goal of reducing the backlog of requests.  (*Id.*)

DIA ordinarily follows a first-in, first-out procedure for processing FOIA requests.  (*Id.* ¶ 8.) The plaintiff did not request expedited processing for either of its requests; ordinarily, therefore, these requests would not be processed until they rose to the top of the queue.  (*Id.*)  DIA has elected, however, to begin its processing of both requests.  (*Id.*)  Absent this voluntary decision by DIA, both requests would still be waiting in the queue for processing.  (*Id.*)

The FOIA Service Section has determined that DIA's Office of Inspector General ("OIG") would hold records responsive to the requests.  (*Id.* ¶ 9.)  OIG has performed a search of its hard copy files and its Intelligence Oversight electronic folder.  (*Id.*)  OIG has also obtained hard copies of some reports from DOD's ATSD(IO) office.  (*Id.*)  OIG is currently reviewing the records retrieved in these searches.  (*Id.*)  This review is complex, and will likely require additional review by other DIA directorates and other government agencies. (*Id.*)  Only the subject matter experts from these other directorates or agencies have the adequate knowledge to determine whether the disclosure of information in responsive records would damage national security, or harm other governmental interests protected by FOIA.  (*Id.*)  *See* Executive Order 12,958, § 3.6(b).  Due to the complexity of the review and the number of consultations that will be required in advance of any release, DID believes that it will not be able to complete its response to the two requests before February 2, 2010.  (*Id.*)

**E.     The Processing of the NSA Requests**

The NSA FOIA Office is responsible for processing the plaintiff's two requests to that agency.  (Janosek Decl. ¶ 6.)  That office assigns incoming requests to one of six queues, and processes the requests on a first-in, first-out basis within each queue.  (*Id.* ¶¶ 5, 6.)  When that office logs a request into its database, a member of the office searches its database to determine if a prior

request seeks similar subject matter, and if the processing of the current request may be combined with that prior request. (*Id.* ¶ 7.)  If no such prior request is found, the FOIA Office identifies the organizations within NSA that are likely to have responsive material, and sends a search request to those organizations. (*Id.*)  Those organizations then search their electronic and paper records and forward the results to the FOIA Office. (*Id.* ¶ 8.)  Upon receiving those results, the FOIA Office then assigns the file to one of the six queues mentioned above. (*Id.*)  When the request rises to the top of its queue, a FOIA case officer conducts a line-by-line review of the records that had been gathered. (*Id.* ¶ 9.)

Numerous factors complicate the processing of FOIA requests by NSA. (*Id.* ¶ 11.)  Its records are often highly specialized and complex. (*Id.*)  NSA's foreign intelligence mission includes the responsibility to collect, process, analyze, produce, and disseminate signals intelligence; accordingly, its records frequently contain classified information with access permitted strictly on a need-to-know basis. (*Id.* ¶¶ 3, 11.)  It is necessary to exercise extreme care in reviewing requested information, in order to protect highly sensitive national security information. (*Id.* ¶ 11.)  Every request accordingly goes through a minimum of two levels of review by the FOIA Office prior to release. (*Id.*)  Certain complex of highly sensitive cases are subject to additional levels of review. (*Id.*)  Because NSA is charged with the responsibility to safeguard national security information, it expends a great deal of time, effort, and resources in its FOIA review process. (*Id.* ¶ 12.)

NSA's FOIA Office consists of 18 full-time equivalent civilian employees and 15 part-time contractor case officers. (*Id.* ¶13.)  The office currently receives more requests each year than it is able to fully process, and accordingly has a backlog of requests. (*Id.* ¶ 14.)  For fiscal year 2009, it received 989 FOIA requests, and had a backlog of 368 cases as the end of the fiscal year. (*Id.*)  This represents a reduction in its backlog since the beginning of fiscal year 2007, however. (*Id.*)  NSA is diligently processing requests and, as these statistics show, is diligently making efforts to reduce its backlog. (*Id.*)

The plaintiff did not request expedited treatment for either of its two requests to NSA. (*Id.* ¶ 15.)  NSA nonetheless has begun processing its response to the two requests. (*Id.* ¶ 17.)  NSA

completed a search for responsive records in response to the first request in March 2008, as it was able to combine that request with an earlier-submitted one. (*Id.*) On June 8, 2009, NSA provided an interim response to the plaintiff, which released responsive records dating through the first quarter of fiscal year 2006, and withheld other records or portions of records under one or more FOIA exemptions. (*Id.* ¶ 18.)[2] NSA informed the plaintiff that it would complete its release of responsive records as soon as practicable. (*Id.*) NSA is nearing the completion of its review of the remaining documents that are responsive to the plaintiff's first request; it anticipates that it will provide its response to the plaintiff shortly. (*Id.* ¶ 24.)

In response to the plaintiff's second request, the FOIA Office has conducted a search, has located responsive records with respect to two of the categories specified in that request, and had provided the plaintiff with an initial response. (*Id.* ¶ 22.) The FOIA Office is continuing its processing of the remaining documents responsive to the first request, and the records that are responsive to the second request. (*Id.* ¶ 24.) Because NSA follows a first-in, first-out system of processing, both of the plaintiff's requests ordinarily would still be in their respective queues; however, the plaintiff has benefitted from the NSA's voluntary decision to process these requests with a previously-submitted request, and it is gaining a response earlier than it otherwise would have. (*Id.* ¶¶ 24, 25.)

As mentioned above, NSA has located responsive records for two of the categories identified in the plaintiff's second request. (*Id.* ¶ 25.) NSA has combined its processing for one of those categories with an earlier-submitted request; it anticipates that it will be able to complete its response with respect the records responsive to that category by January 4, 2010. (*Id.* ¶ 25.) For the remaining category of records, the request remains in NSA's queue, with two requests pending ahead of it. (*Id.* ¶ 27.) Once the processing begins, a FOIA case officer will be required to conduct a line-by-line review of the records; referrals may be required to other government agencies; and

---

[2] The plaintiff has filed an administrative appeal with respect to NSA's exemption determinations. (*Id.* ¶ 19.)

the FOIA case officer must redact documents as necessary and prepare a response to the plaintiff. (*Id.* ¶ 26.)  Given the request's status in the queue and the tasks required before a response can be completed, NSA will require until March 31, 2010 to complete its processing of the request.  (*Id.* ¶ 28.)  This would complete its processing of its response to both requests.  (*Id.*)  Because this review involves NSA's duty to safeguard national security information, it is imperative that it, and the other government agencies for which referrals are required, be afforded sufficient time to make careful and informed release decisions.  (*Id.* ¶ 30.)

**F.    The Processing of the CIA Requests**

The CIA's Office of Information Management Services ("IMS") is the initial reception point for all of CIA's FOIA requests. (Lutz Decl. ¶ 11.)  IMS case officers review requests, determine which CIA components might reasonably be expected to possess responsive records, and forward copies of the requests to those components.  (*Id.*)  Each relevant CIA directorate's Information Review Officer then conducts a search for potentially responsive documents.  (*Id.*)  After the searches are completed, IMS case officers review the records that have been retrieved to determine whether they are in fact responsive.  (*Id.* ¶ 12.)  They then review responsive records to determine which, if any, FOIA exemptions may apply.  (*Id.* ¶ 13.)  This review must be a careful one, as CIA needs to avoid the inadvertent disclosure of classified information, information concerning intelligence sources and methods, or other information protected by the FOIA exemptions.  (*Id.*)  The process of the review for classified material and for other FOIA exemptions is laborious and time-consuming, in part because the inadvertent release of a FOIA-exempt document could potentially cause grave damage to national security.  (*Id.*)  The review accordingly involves a word-by-word review of responsive records to guard against the inadvertent release of national security information.  (*Id.* ¶ 15.)

CIA's review frequently identifies documents, or segregable information, that is the product of another CIA component or another government agency, which will require a review of the material by that entity.  (*Id.* ¶ 14.)  That entity also must engage in a careful review of responsive records to ensure that the interests of national security are protected.  (*Id.*)  When all of the relevant

components and agencies have completed their review, IMS professionals incorporate all recommendations in order to ensure that any releases or any withholdings comply with applicable law. (*Id.* ¶ 16.) They then prepare a final response for the FOIA requester. (*Id.*)

CIA receives hundreds of FOIA requests each year, many of which are broad. (*Id.* ¶ 17.) CIA strives to process its requests expeditiously and fairly, and accordingly has implemented efforts to improve its FOIA processing. (*Id.*) For example, it has established a special task force to work exclusively on clearing old cases. (*Id.*) It has also created a special unit to handle FOIA litigation matters, in order to relieve the substantial demands that litigation has placed on its FOIA officers. (*Id.*) Through these efforts, it has shown substantial progress in reducing its backlog of FOIA requests, with a current backlog of approximately 700 open requests, a decrease from a backlog of 4,800 requests in fiscal year 1997 and 1,400 requests in fiscal year 2003. (*Id.*)

CIA handles requests on a first-in, first-out basis, although it may determine in the interest of efficiency to process less complex or less time-consuming requests ahead of more complex or more voluminous requests. (*Id.* ¶ 18.) CIA has elected to combine its processing of the plaintiff's requests with an earlier-submitted request. (*Id.* ¶¶ 7, 19.) This treatment thus has afforded the plaintiff earlier processing of its requests than it would otherwise receive under the CIA's first-in, first-out system. (*Id.* ¶¶ 7, 19.) The plaintiff did not request expedited treatment for either of its two requests. (*Id.* ¶ 19.)

CIA has accordingly begun its efforts to locate responsive documents, and its efforts are ongoing. (*Id.* ¶ 19.) Several factors complicate its processing of the two requests. (*Id.* ¶ 20.) There are multiple offices within CIA that possess potentially responsive records. (*Id.*) The review of responsive records will require time-consuming coordination among multiple components and offices. (*Id.*) CIA will also require time to coordinate with other government agencies whose information is implicated in the CIA's responsive records. (*Id.* ¶ 21.) Because each of these agencies must also engage in a careful review of sensitive information, CIA estimates that it will need two months after it completes its own review to allow time for these consultations to be completed. (*Id.*) CIA is also currently responding to other voluminous FOIA requests, and

accordingly must balance its efforts to respond to this and to other requests.  (*Id.* ¶ 22.)  CIA accordingly will require until at least March 31, 2010 to complete its response to the plaintiff's requests.  (*Id.* ¶ 23.)

### G.    The Processing of the ODNI Requests

ODNI's Information Management Office ("IMO") processes FOIA requests submitted to that agency.  (Hackett Decl. ¶ 1.)  IMO processes all requests on a first-in, first-out basis unless a request for expedited processing is received and granted.  (*Id.* ¶ 4.)  *See* 32 C.F.R. § 1700.12.  The plaintiff did not request expedited processing for either of its two requests to ODNI, and accordingly ODNI has placed those requests in its normal processing queue.  (*Id.* ¶¶ 4, 5.)

ODNI has completed its search for records that are responsive to the plaintiff's first request, which seeks reports by ODNI to the IOB.  (*Id.* ¶ 7.)  It has located responsive records, and is processing those records for release; the processing includes consultations with another government entity.  (*Id.*)  It anticipates that it will be able to complete its response to the plaintiff's first request by December 15, 2009.  (*Id.*)

ODNI is currently performing searches for records responsive to the plaintiff's second request – which seeks reports by ODNI to the IOB, as well as a significant volume of additional material – in its Office of the General Counsel and its Office of the Inspector General.  (*Id.* ¶ 8.)  It anticipates that it will be able to complete its response to the plaintiff's second request, to the extent that that request seeks reports to the IOB, by December 15, 2009.  (*Id.* ¶ 9.)

The remainder of the second request is very broad, however.  (*Id.* ¶ 8.)[3]  ODNI anticipates that it will be required to review thousands of pages of potentially responsive records.  (*Id.*)  The searches for the anticipated volume of records are extremely time-consuming.  (*Id.*)  Those searches are anticipated to be completed within two weeks.  (*Id.* ¶ 10.)  Many of the responsive records will contain highly sensitive classified information that will require a classification review and inter-

---

[3]  In this respect, the plaintiff's June 2009 request to ODNI is substantially broader than its June 2009 requests to the other defendant agencies.  *See* Hackett Decl., Ex. C.

agency consultations and referrals.  (*Id.* ¶ 9, 10.)  This review will be time-sensitive, as it is vital to ensure that currently and properly classified information is appropriately protected.  (*Id.* ¶ 12.)  This review will require page-by-page and line-by-line analysis of responsive records.  (*Id.*)  Other offices and agencies with an interest in the responsive records will also need to review the records, in light of the sensitive nature of classified information.  (*Id.*)  Those offices and agencies also need sufficient time to engage in a careful and thorough review to protect national security. (*Id.*)  ODNI accordingly anticipates that, absent narrowing by the plaintiff, it will require until March 31, 2010 to complete its processing of the remainder of the plaintiff's second request.  (*Id.* ¶ 11.)

### H.    The Processing of the FBI Requests

The status of the FBI's response to the plaintiff's requests is addressed in the defendants' motion for a stay of proceedings with respect to the FBI, which has been separately filed, and which is incorporated by reference herein.  (Doc. 26.)  As explained in that motion, both of the plaintiff's requests are pending in the FBI's "large queue," and FBI anticipates that the first request will rise to the top of the queue within eighteen months.

## III.    Argument

### A.    Legal Standard

An agency receiving a FOIA request generally must determine whether to comply with the request within 20 working days.  5 U.S.C. § 552(a)(6)(A)(i).  Once the initial twenty days has passed without an agency determination on the request, the FOIA requester "shall be deemed to have exhausted his administrative remedies," 5 U.S.C. § 552(a)(6)(C)(i), and the requestor can file suit in federal court.  The Court may, however, "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  *Id.*  This provision "was designed and inserted specifically as a safety valve for [FOIA]."  *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976).  The Ninth Circuit has adopted the holding of *Open America*, while recognizing that one factor in the analysis will be whether a party in litigation has demonstrates a need for expedition of its request.  *See Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir.

1   1976); *see also Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1040-41 (9th Cir. 1999).

2   "[E]xceptional circumstances" for the purpose of Section 552(a)(6)(C)(i) include "any delays

3   encountered in responding to a request as long as the agencies are making good-faith efforts and

4   exercising due diligence in processing requests on a first-in, first out basis." *Appleton v. FDA*, 254

5   F. Supp. 2d 6, 8-9 (D.D.C. 2003).

6           A requester may seek expedited processing from the agency.  5 U.S.C. § 552(a)(6)(E)(i).

7   Such a requester must demonstrate a "compelling need" for expedited treatment, or otherwise prove

8   its entitlement other factors identified by the agency's regulations.  5 U.S.C. § 552(a)(6)(E)(i).  The

9   requester must prove such a compelling need before the agency by a statement certified to be true

10  to the best of the requester's knowledge and belief.  5 U.S.C. § 552(a)(6)(E)(vi).  The agency's

11  denial of a request for expedited processing is judicially reviewable, but the requester must show

12  his entitlement to expedited processing on the basis of the record before the agency at the time of

13  the request.  5 U.S.C. § 552(a)(6)(E)(iii).  If a requester fails to seek expedited processing before the

14  agency, it has not made any record for the Court to review, and accordingly it may not seek

15  expedited processing for the first time before the Court.  *See, e.g., CaretoLive v. FDA*, 2008 WL

16  2201973 (S.D. Ohio 2008) (where requester did not seek expedited processing before agency, there

17  is no record for court to review, and requester cannot fulfill its burden to show its entitlement to

18  expedited processing).

19  **B.      The Plaintiff is Not Entitled to an Order Requiring a Complete Response**
20          **from All Agencies by December 15, 2009**

21          The plaintiff has filed a motion, which it has denominated as a motion for partial summary

22  judgment, in which it asks the Court to direct all of the defendant agencies to complete all the

23  processing in response to each of its FOIA requests by December 15, 2009.  Its argument is

24  premised on the misconception that the twenty-day limit in FOIA is a deadline for processing to be

25  completed.  The plaintiff misconstrues FOIA.  The twenty-day limit is a period in which the agency

26  shall make its initial determinations regarding the plaintiff's FOIA requests; at the conclusion of this

27  period, the plaintiff may proceed to federal court.  *See* 5 U.S.C. § 552(a)(6)(C)(i).  But this threshold

28

period for an initial determination is not the same as the question of the timing in which agencies are required to complete their responses to FOIA requests.  There obviously will be circumstances in which a complete response within twenty days is not possible.  FOIA so recognizes, and permits a "safety valve" to allow agencies a reasonable period to respond.  *See* 5 U.S.C. § 552(a)(6)(C)(i); *cf. Fiduccia*, 185 F.3d at 1040-41.

Each of the defendant agencies has shown that it is entitled to a brief additional period to respond to the plaintiff's FOIA requests.  The longest period that any of these agencies seek is an additional three and a half months beyond the plaintiff's proposed deadline, an exceptionally short period given the complexity of these requests.[4]  Each of the defendants has shown exceptional circumstances justifying this minimal extension.  First, the plaintiff did not seek expedited treatment from any of the defendants.  The plaintiff – an experienced FOIA requester – thus should not have been surprised to learn that its requests were assigned for normal processing.  The plaintiff's failure to seek expedited processing before the agencies bars it from requesting such relief now; judicial review of a plaintiff's request for expedited processing is based solely on the record before the agency in the plaintiff's (here, non-existent) expedition request.  5 U.S.C. § 552(a)(6)(E)(iii); *see CaretoLive v. FDA*, 2008 WL 2201973 (S.D. Ohio 2008).

Second, despite the plaintiff's failure to seek expedited processing, many of the defendant agencies have nonetheless accorded the plaintiff the equivalent of such treatment by voluntarily combining its requests with earlier-filed requests.  The plaintiff thus has gained the benefit of earlier processing that it would otherwise be entitled to under the agencies' first-in, first-out processing systems.

Third, the review that each agency must undertake in response to the plaintiff's requests is laborious and time consuming.  The plaintiff seeks classified records, which will require each

---

[4] The one exception is FBI, which, as explained in the defendant's motion for a stay of proceedings with respect to FBI, stands in a different position with respect to the volume of its backlog, and so will require 18 months before the plaintiff's first request rises to the top of its queue.

agency to undertake a careful line-by-line review of responsive records to ensure that the interests of national security are protected before any records are released.  In many instances, multiple persons within an agency with relevant knowledge will be required to engage in this review.  For each of the agencies, referrals will be required to other government offices and agencies whose information is at stake; those offices must also be able to perform a careful review to ensure that the interests of national security are protected.  These reviews cannot be completed by December 15, 2009, and it would create a risk that national security interests will be compromised if processing is ordered to be completed by that date. The agencies, however, require only a relatively brief period beyond that date to ensure that the required reviews are completed.

In sum, the plaintiff is not entitled to an order directing the immediate completion of all processing of its FOIA requests.  Those requests are complex and require a careful review before the agencies' responses can be completed.  The defendants respectfully suggest that their alternative proposed order reflects the time required to provide the plaintiff with a full and appropriate response to its requests.  The defendants' proposed order contemplates that DOJ would complete its processing of the requests by January 15, 2010; that DOD and DIA would complete their processing by February 2, 2010; that NSA, CIA, and ODNI would complete their processing by March 31, 2010; and that proceeding with respect to FBI will be stayed for eighteen months.

**III.     Conclusion**

For the foregoing reasons, the defendants respectfully request that the Court deny the plaintiff's motion for partial summary judgment, and that it instead enter the defendants' proposed order, which provides a reasonable schedule for the completion of the defendants' processing of the plaintiff's FOIA requests.

Dated: October 28, 2009                    Respectfully submitted,

TONY WEST
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director


    /s/ Joel McElvain
JOEL McELVAIN
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Room 7-5395
San Francisco, CA 94102
Telephone:     (415) 436-6645
Fax:               (415) 436-6632
Email: Joel.McElvain@usdoj.gov

Attorneys for the Defendants

1

CERTIFICATE OF SERVICE

2

      I hereby certify that on October 28, 2009, I electronically filed the foregoing document

3

with the Clerk of the Court, using the CM/ECF system, which will send notification of such

4

filing to the counsel of record in this matter who are registered on the CM/ECF system.

5

6

7

           /s/ Joel McElvain      

8

           JOEL McELVAIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28