1   TONY WEST
    Assistant Attorney General
2   ELIZABETH J. SHAPIRO
    Deputy Branch Director
3   JOEL McELVAIN, State Bar No. 257736
    Senior Counsel
4   U.S. Department of Justice
    Civil Division, Federal Programs Branch
5   450 Golden Gate Ave., Room 7-5395
    San Francisco, CA 94102
6   Telephone:   (415) 436-6645
    Fax:            (415) 436-6632
7   Email:        Joel.McElvain@usdoj.gov

8   Attorneys for the Defendants

9                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                              OAKLAND DIVISION

11  ELECTRONIC FRONTIER FOUNDATION,          )   Case No. 4:09-cv-03351-SBA
                                             )
12                        Plaintiff,          )   **Reply Memorandum in Support**
                                             )   **of Motion for Stay of Proceedings**
13              v.                            )   **with Respect to FBI**
                                             )
14  CENTRAL INTELLIGENCE AGENCY, *et al.*,    )   Date:  December 1, 2009
                                             )   Time: 1:00 p.m.
15                        Defendants.         )   Courtroom 1, 4th Floor
16

17         The defendants have shown that the circumstances of this case warrant a stay of proceedings

18  with respect to the Federal Bureau of Investigation ("FBI") pursuant to 5 U.S.C. § 552(a)(6)(c).  As

19  the defendants explained in the memorandum of law accompanying their motion for a stay (Doc.

20  26), a stay is warranted both because the FBI is operating under exceptional circumstances, in that,

21  among other factors, it faces a large backlog of disclosure requests, and because the FBI is

22  exercising due diligence in processing the plaintiff's FOIA requests and in responding to the backlog

23  of pending requests.  The plaintiff, the Electronic Frontier Foundation, opposes a stay, but its

24  arguments present no genuine dispute as to the existence of the exceptional circumstances under

25  which the FBI is operating, or the reasonableness of the FBI's efforts to respond to those

26  circumstances.  Because the plaintiff can present no good reason that its requests should be

27  processed ahead of other, earlier-submitted requests that are pending in the FBI's large queue, this

28

Court should stay the proceedings (only with respect to the FBI) to allow the FBI to process these requests in the order that they were received.

<u>**Argument**</u>

Under 5 U.S.C. § 552(a)(6)(C)(i), an agency may be afforded additional time to process a FOIA request upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id.* The defendants' initial brief, and supporting declaration, identified a number of major factors that justify a stay of this litigation with respect to the FBI: an increased volume of new FOIA requests; the volume of requests pending in the FBI's backlog; short-term staffing and resource issues, some of which are related to long-term efforts to improve the FBI's processing capacity; processing deadlines imposed in other FOIA litigation; and a large volume of administrative appeals. *See* Mot. for Stay (Doc. 26) at 6-14; Declaration of David M. Hardy, ¶¶ 6-42. These factors easily meet the standard for a stay specified in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), which clarified that Section 552(a)(6)(C) affords an agency additional time to process a FOIA request when it:

> is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

*Id.* at 616 (quoting 5 U.S.C. § 552(a)(6)(C)); *see also Exner v. FBI*, 542 F.2d 1121, 1123 (9th Cir. 1976); *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1040-41 (9th Cir. 1999).

**A.     The FBI is Operating Under Exceptional Circumstances**

The plaintiff raises several arguments to dispute whether the FBI is operating under the sort of "exceptional circumstances" described in Section 552(a)(6)(C). None of these arguments is convincing. First, the plaintiff reasons that the FBI does not face a volume of requests in excess of what Congress has anticipated, as the FBI has faced a backlog for several years, and Congress last amended FOIA in 2007. (Opp. at 4-5.) This obviously misreads *Open America*. The reference in that case to "a volume of requests vastly in excess of that anticipated by Congress" is plainly a reference to the circumstances envisioned when Congress first enacted FOIA, and established the

1   presumptive twenty-day period in which an agency would determine whether or not to comply with

2   a request.  It is plain that Congress did not have in mind a circumstance in which an agency such as

3   the FBI faces multiple requests for disclosure of tens of thousands of pages of responsive records.

4   For this reason, courts have had no difficulty recognizing that the FBI faces a volume of requests

5   significantly greater than what Congress had anticipated when it enacted FOIA.  *See, e.g., Electronic*

6   *Frontier Found. v. Dep't of Justice*, 563 F. Supp. 2d 188, 194 (D.D.C. 2008).

7         Second, the plaintiff argues that the FBI cannot be operating under "exceptional

8   circumstances" particular to this case, because the FBI has relied on similar factors in seeking stays

9   in other recent cases.  (Opp. at 5, 6.)  But the circumstances justifying a stay here would of course

10  apply to other cases pending in the FBI's large queue.  For example, the FBI's project to consolidate

11  its records at a new Central Records Complex, when completed, will lead to vast improvements in

12  the agency's ability to process FOIA requests.  (Hardy Decl. ¶ 31.)  That project is a multi-year

13  effort, however, and the agency has faced significant disruptions in the interim, including the loss

14  of a large number of experienced personnel, and the accompanying need to train newly-hired

15  personnel, while the project is ongoing.  (Hardy Decl. ¶¶ 31-32.)  That disruption has affected the

16  FBI's FOIA operations today in the same manner has it has affected those operations over the past

17  several years.  This multi-year project contributes to the extraordinary circumstances that the FBI

18  faces in responding to FOIA requests.  The plaintiff's contrary argument appears to rest on the

19  premise that "exceptional circumstances" may be exceptional for one case, and one case only.  This

20  is obviously incorrect.  Congress has specified that an agency's backlog of FOIA requests can justify

21  a stay, so long as the agency is making reasonable progress in responding to the backlog.  5 U.S.C.

22  § 552(a)(6)(C)(ii), (iii).  Congress did not specify that the agency's backlog could justify a stay of

23  one request, but that all other requests would have to be processed immediately.

24

25        Third, the plaintiff disputes the FBI's reliance on a March 2009 change in FOIA processing

26  policy.  (Opp. at 5.)  As the defendants have previously explained, the FBI has chosen no longer to

27  rely on its former "field office rule ," in which requesters had been expected to specify the particular

28  locations within the FBI that they asked to be searched.  (Hardy Decl. ¶ 28.)  Although this policy

change has streamlined the process for FOIA requesters, it is not without its costs.  Because of this policy change, the FBI has seen an increase in 2009 in the number of pages of records potentially responsive to pending requests that is greater than the number of pages that it processed in 2008.  (*Id.*)  The plaintiff does not dispute the foregoing, but expresses doubt that the policy change alone justifies the FBI's requested stay.  This mischaracterizes the defendants' position; the FBI faces extraordinary circumstances in that it faces a backlog of requests pending ahead of the plaintiffs' two requests, and that backlog was caused by a number of factors, including (but not solely) the large increase in pages to be processed because of the new policy.  The plaintiff also argues that the policy change could not affect its requests, because the FBI has completed its search for responsive records.  This argument, too, misconstrues the defendants' motion and the Hardy Declaration.  The FBI has completed it search efforts, but the results of those search efforts are awaiting assignment to a RIDS Disclosure Unit in the large queue.  (Hardy Decl. ¶¶ 19-20.)  It is those Disclosure Units that face a backlog, caused in part by the increase in responsive records for requests that are ahead of the plaintiff in the large queue, thus increasing the expected processing time for those requests and requiring a delay before the plaintiffs' requests begin to be processed.  (Hardy Decl. ¶ 28.)

Fourth, the plaintiff disputes that the FBI's litigation caseload, or the volume of cases in administrative appeals, could justify a stay.  (Opp. at 6.)  As the defendants have previously explained, the FBI faces litigation deadlines in a number of cases requiring the processing of hundreds of thousands of pages potentially responsive to requests submitted by other requesters.  (Hardy Decl. ¶¶ 35-36.)  It is obvious that the FBI could not meet even the more generous of the plaintiff's two proposed schedules without abrogating its responsibilities to these other courts.  The plaintiff argues that the search will soon be completed in one of the cases cited in the Hardy Declaration.  The defendants' point, however, is that the FBI is facing a current strain on its resources, and that current strain affects the ability of the agency to move through its caseload going forward.

1

2

**B.**   **The FBI is Exercising Due Diligence in Processing Plaintiff's Requests and is Making Reasonable Progress in Reducing its Backlog of Pending Requests**

3

4    In addition to having shown "exceptional circumstances," the defendants have also shown

5    that the FBI is exercising due diligence in responding to plaintiff's FOIA request, and that the FBI

6    has made reasonable progress in reducing its backlog. First, the FBI has completed its search efforts

7    in response to the plaintiff's two requests, and those requests now await assignment to a Disclosure

8    Unit in the FBI's large queue. Second, the FBI has reasonably taken a number of steps in good faith

9    to address its backlog, including the hiring of new personnel, the development of electronic records

10   processing systems, and the ongoing project to establish the new Central Records Complex. The

11   plaintiff disputes the adequacy of the FBI's efforts, but its arguments in this regard fail.

12   First, the plaintiff argues that the FBI is not exercising due diligence in the processing of its

13   requests, because the FBI has completed its search but has not yet processed those records or

14   released records to the plaintiff. (Opp. at 7.) As the defendants have previously explained, however,

15   the records located in response to the plaintiff's two requests are awaiting assignment to a

16   Disclosure Unit in the FBI's large queue. It is well established that the FBI operates in good faith

17   and exercises due diligence in its use of a first-in, first-out queue system. *See, e.g., Exner v. FBI*,

18   542 F.2d 1121, 1123 (9th Cir. 1976). The plaintiff essentially asks this Court to ignore the fact that

19   other, older requests are pending ahead of the plaintiff's requests in the large queue, and to order the

20   FBI to process these requests to the detriment of other requesters who have been waiting longer.

21   The plaintiff is an experienced FOIA requester, and certainly is aware that, if it had desired this

22   relief, it should have filed an administrative request with the FBI for expedited treatment. *See* 28

23   C.F.R. § 16.5(d). The plaintiff's failure to do so precludes it from seeking such relief in the first

24   instance from this Court. *See* 5 U.S.C. § 552(a)(6)(E)(iii) (judicial review of agency's denial of

25   expedition request is based on record before agency at time of denial); *CaretoLive v. FDA*, 2008 WL

26   2201973, at *8 (S.D. Ohio 2008) (in absence of administrative request, there is no record to review,

27   and thus court cannot review judicial request for expedition).

28

Second, the plaintiff argues that the number of pages of records that are ultimately found to be responsive will be fewer than the 81,000 pages of potentially responsive records that the FBI has located in its search efforts. (Opp. at 8.) This is likely so. Those records are only potentially responsive; the actual determination as to which records are or are not actually responsive will be made by the RIDS Disclosure Units once the plaintiff's two requests move to the top of the large queue and are available for processing by the personnel in those units. (Hardy Decl. ¶¶ 5, 22(d).) Obviously, it cannot be known whether a particular page is or is not responsive until that particular page is reviewed, and the fact that the Disclosure Units ultimately determine that a particular page is nonresponsive does not mean that they did not spend time in making that determination. Nonetheless, the FBI recognizes the possibility that the total number of responsive records to be processed will be reduced, and that – once the two requests clear the large queue and processing begins – the total amount of time for processing may be reduced. (Hardy Decl. ¶ 5.) Accordingly, the defendants intend to advise the Court promptly of any changes to their estimates of processing time when processing begins. (*Id.*)

Third, the plaintiff argues that the processing time for requests in the FBI's large queue has increased since 2006, and that this increase shows that the FBI is not making "reasonable progress" in reducing its backlog. (Opp. at 8.) But the FBI has demonstrated the reasons for this temporary increase – primarily, the strain on its resources caused by the project to establish the new Central Records Complex, and the increase in the amount of records to be processed due to the change in the "field office" policy. The FBI has also shown that it is making reasonable progress in response to these demands. Its development of the electronic investigative case file and its establishment of the Central Records Complex, when completed, will reduce processing time by 40%. (Hardy Decl. ¶ 31.) The FBI has hired dozens of new employees, most of whom are currently undergoing training, but who will soon be assisting in reducing the agency's backlog. (Hardy Decl. ¶ 29.) These obviously constitute good faith, reasonable efforts to address the caseload of pending FOIA requests. The plaintiff's contrary argument appears to be based on the premise that an agency can never implement a policy – such as the move to the Central Records Complex – that would lead to

long-term improvement in FOIA processing at the price of a temporary disruption in the processing of current requests.  Nothing in FOIA indicates that Congress intended to limit agencies' discretion in that way.  Because the FBI is making reasonable efforts to address its caseload, and because the FBI is operating under extraordinary circumstances, it is entitled to a stay.

## <u>Conclusion</u>

For the foregoing reasons, the defendants respectfully request that the Court grant their motion, and stay proceedings in this case with respect to the requests submitted to FBI.

Dated: November 17, 2009                    Respectfully submitted,

TONY WEST
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director


   /s/ Joel McElvain
JOEL McELVAIN
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Room 7-5395
San Francisco, CA 94102
Telephone:     (415) 436-6645
Fax:           (415) 436-6632
Email: Joel.McElvain@usdoj.gov

Attorneys for the Defendants

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2009, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.


     /s/ Joel McElvain
JOEL McELVAIN