TONY WEST
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
JOEL McELVAIN, DC Bar No. 448431
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7332
Washington, DC 20001
Telephone:    (202) 514-2988
Fax:          (202) 616-8202
Email:        Joel.McElvain@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION**, ) | Case No.  4:09-cv-03351-SBA |
| Plaintiff, ) | |
| ) | **Notice of Motion, and Motion** |
| v. ) | **for Summary Judgment** |
| ) | |
| **CENTRAL INTELLIGENCE AGENCY**, *et al.*, ) | |
| ) | Date:  March 27, 2012 |
| Defendants. ) | Time:  1:00 p.m. |
| ) | Place: Courtroom 1, Oakland |

NOTICE is hereby given of the filing of this motion pursuant to Fed. R. Civ. P.

56(b) by Defendants, the Department of Homeland Security (DHS), the Department of

Defense (DOD), the National Security Agency (NSA), the Department of Justice (DOJ),

and the Office of the Director of National Intelligence (ODNI).[1]  Defendants respectfully

---

[1]  The parties have stipulated to the dismissal of the remaining defendants, the
Central Intelligence Agency, the Department of Energy, and the Department of State.
(ECF 54, ECF 58.)  With respect to DOJ, the parties have stipulated to the dismissal of
the plaintiff's claims with respect to the Office of the Attorney General, although plaintiff
continues to assert a claim with respect to DOJ's component, the Federal Bureau of
Investigation.  (ECF 54.)  DOD's component, the National Security Agency (NSA), is
named as a separate defendant, but the parties have stipulated that a sample set selected
from DOD's withholdings will govern plaintiff's claims with respect to DOD, NSA, and
DOD's component, the Defense Intelligence Agency.  (ECF 57.)

request that the Court enter summary judgment in their favor in this Freedom of Information Act (FOIA) action.  Defendants have properly withheld records that are exempt from disclosure under 5 U.S.C. § 552(b), and are accordingly entitled to summary judgment.  Counsel for Defendants certifies that he has conferred with counsel for Plaintiff, Jennifer Lynch, Esquire, and that the parties have resolved several, but not all, of the issues related to this case; this motion is directed to the matters remaining in dispute between the parties.

In support of this motion, Defendants rely on the Declaration of Margaret B. Baines; the Declaration of Andrew D, Fausett; the Declaration of John F. Hackett; the Declaration of David M. Hardy; and the Declaration of Caryn L.M. Hargrave, and the exhibits attached to each of these declarations.

## Background

This case concerns Freedom of Information Act (FOIA) requests for reports made by agencies in the intelligence community to the President's Intelligence Advisory Board (PIAB) and a committee of the PIAB, the Intelligence Oversight Board (IOB).  The PIAB was established within the Executive Office of the President exclusively to advise and assist the President on the effectiveness of the intelligence community's activities.  Exec. Order 13,462, §§ 3, 4, 73 Fed. Reg. 11,805 (Feb. 29, 2008).  The PIAB's responsibilities include assessing the quality, quantity, and adequacy of intelligence collection, analysis and estimates as well as reviewing the performance of United States government agencies engaged in these areas.  (Hackett Decl., ¶ 9.)  The PIAB reports the results of these reviews and makes recommendations to the President.  (*Id.*)

The IOB's responsibilities were established by the President in Executive Order 13,462, § 6.  Those responsibilities include a requirement to inform the President of intelligence activities that the IOB believes may be unlawful or contrary to an Executive Order or presidential directive, or any matters that should be reported immediately to the President.  (Hackett Decl., ¶ 10.)  ODNI supports the PIAB and the IOB in these

functions under Sections 7 and 8 of Executive Order 13,462.  (*Id.*, ¶ 11.)  ODNI receives reports from reporting agencies, and also produces quarterly reports as required by Executive Order 12,333 and transmits an analysis of them to the IOB pursuant to Executive Order 13,462.  (*Id.*)  Members of the intelligence community are required by Section 1.6(c) of Executive Order 12,333 to submit quarterly reports of intelligence activities to the IOB.  (*Id.*)  ODNI also provides an analysis at least twice a year to the IOB of the intelligence community's reporting, and also makes reports in its own capacity as a member of the intelligence community.  (*Id.*, ¶¶ 11, 12.)

On February 25, 2008, the plaintiff sent FOIA requests to DHS, DOD, ODNI, and FBI.  (Fausett Decl., ¶ 5; Hackett Decl., ¶ 13; Hardy Decl., ¶ 3; Hargrave Decl., ¶ 2.)  The requests sought reports submitted by these respective agencies to the IOB pursuant to Executive Order 12,863.  (*Id.*)  On June 19, 2009, the plaintiff sent additional FOIA requests to the same agencies.  (Fausett Decl., ¶ 5; Hackett Decl., ¶ 15; Hardy Decl., ¶ 3; Hargrave Decl., ¶ 2.)  The requests sought reports submitted by these respective agencies to the IOB or to ODNI pursuant to Executive Order 13,462, and certain other communications between these agencies and IOB or the PIAB.  (*Id.*)

The agencies have completed their processing of these requests.  The parties have stipulated that the plaintiff does not dispute the adequacy of the agencies' searches for documents that are responsive to the requests.  (ECF 62.)  The parties have stipulated that a sample set would govern this Court's review of the exemptions claimed by DOD and FBI.  (ECF 57.)  The parties have also stipulated that the plaintiff does not dispute certain of the agencies' exemption claims.  (ECF 57, ECF 62.)  This motion, accordingly, addresses the agencies' exemption claims that remain in dispute.

1

**Argument**

2

**I.    FOIA Requires the Disclosure Only of Non-Exempt Records, and This Court Lacks Jurisdiction to Compel the Disclosure of Exempt Records**

3

4       The Freedom of Information Act was enacted to "pierce the veil of administrative

5  secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v.*

6  *Rose*, 425 U.S. 352, 361 (1976) (internal quotation omitted).  However, the public's

7  interest in government information under FOIA is not absolute – "[i]t extends only to

8  information that sheds light upon the government's performance of its duties." *Hale v.*

9  *U.S. Dep't of Justice*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509

10 U.S. 918 (1993).  "Congress recognized . . .  that public disclosure is not always in the

11 public interest." *CIA v. Sims*, 471 U.S. 159, 166-167 (1985).

12      FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure

13 unless information is exempted under clearly delineated statutory language." *John Doe*

14 *Agency v. John Doe Corp.*, 493 U.S. 146, 149 (1989) (quoting *Rose*, 425 U.S. at 360-361

15 (1976)) (other citation omitted).  FOIA is designed to achieve a "workable balance

16 between the right of the public to know and the need of the Government to keep

17 information in confidence to the extent necessary without permitting indiscriminate

18 secrecy." *Id.*, 493 U.S. at 152 (citation omitted).

19      Toward that end, FOIA incorporates "nine exemptions which a government

20 agency may invoke to protect certain documents from public disclosure." *Minier v. CIA*,

21 88 F.3d 796, 800 (9th Cir. 1996).  Despite the "liberal congressional purpose" of FOIA,

22 the Supreme Court has recognized that the statutory exemptions are intended to have

23 "meaningful reach and application." *John Doe*, 493 U.S. at 152.  "A district court only

24 has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records,"

25 *i.e.*, records that do "not fall within an exemption." *Minier*, 88 F.3d at 803 (emphasis in

26 original).  Thus, "[r]equiring an agency to disclose exempt information is not authorized

27 by FOIA." *Id.* (quoting *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995)).

28

FOIA actions are generally resolved through summary judgment motions pursuant to Fed. R. Civ. P. 56.  *See Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993).  Under FOIA, courts conduct *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions.  5 U.S.C. § 552(a)(4)(B).  The government bears the burden of justifying non-disclosure.  *Minier*, 88 F.3d at 800.  "The agency may meet its burden by submitting a detailed affidavit showing that the information 'logically falls within the claimed exemptions.'"  *Id.* (quoting in part *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)).  The court must accord a presumption of good faith to agency declarations submitted in support of claimed exemptions.  *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Moreover, courts afford higher deference to the agency's declarations regarding withholding in instances of national security – "a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d, 918 926-27 (D.C. Cir. 2003).  Although the court still conducts *de novo* review of an agency's actions, "*de novo* review in FOIA cases is not everywhere alike."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  Because "courts have little expertise in either international diplomacy or counterintelligence operations, [they] are in no position to dismiss the [agency's] facially reasonable concerns" about the harm that disclosure could cause to national security.  *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999). As the Ninth Circuit directed, for exemptions related to national security, "the district court [is] required to accord 'substantial weight' to [the agency's] affidavits" as long as it is not "controverted by contrary evidence in the record or by evidence of [agency] bad faith."  *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992) (internal quotation omitted).

The discussion below, the declarations, and *Vaughn* indexes, demonstrate that the Defendants have provided the proper bases for all of the challenged withholdings pursuant to 5 U.S.C. § 552(b).  Because the Defendants have shown that they have

properly withheld materials that are exempt from disclosure, they are entitled to summary judgment with respect to the Plaintiff's FOIA claims.

## II. The Defendants Have Properly Withheld Records that Are Exempt from Disclosure under FOIA

### A. The Defendants Have Properly Withheld Records under FOIA Exemption 1

FOIA Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to Executive Order." 5 U.S.C. § 552 (b)(1); *accord, e.g.*, *Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 144 (1981).  In other words, under Exemption 1 material that has been properly classified is exempt from disclosure.  *Weinberger*, 454 U.S. at 144-45.  For information to be properly classified pursuant to Exemption 1, it must meet the requirements of Executive Order ("E.O.") 12,958, "Classified National Security Information," *as amended by* E.O. 13,292. 68 Fed. Reg. 15315 (Mar. 28, 2003):

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information in § 1.4 of E.O 12958, as amended; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the original classification authority is able to identify or describe the damages.

*Id.* § 1.1, 68 Fed. Reg. at 15315. The Executive Order lists three classification levels for national security information: top secret, secret, and confidential.  *Id.* § 1.2, 68 Fed. Reg. at 15315-16.

In reviewing classification determinations under Exemption 1, the courts have repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning classified status of the records at issue, and that summary judgment is appropriate if the agency submits a detailed affidavit showing that the information logically falls within the exemption.  *See Minier*, 88 F.3d at 800; *see also Halperin v.*

*CIA*, 629 F.2d 144, 147-49 (D.C. Cir. 1980) ("summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of bad faith"). Moreover, if "the agency's statements meet this standard the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Halperin*, 629 F.2d at 148; *see also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns."); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) ("'The Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of public disclosure of a particular classified record.'") (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).

The declarations and *Vaughn* indexes submitted herewith fully support application of Exemption 1, as they describe "the justifications for nondisclosure with reasonably specific detail," and demonstrate "that the information withheld logically falls within the claimed exemption[]." *Minier*, 88 F.3d at 800. (Cite declarations.) FBI, for example, has withheld classified information pertaining to intelligence activities that, if disclosed, could be expected to cause serious damage to national security. (Hardy Decl., ¶¶ 37-42, 54-56, 61-64, 72, 78 & Ex. H.) For example, FBI has withheld information relating to foreign counterintelligence operations, the release of which could permit hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities. (*Id.*, ¶ 41.) DOD also has withheld classified information that relates to intelligence activities that, if disclosed, could be expected to cause serious damage to national security. (Baines Decl., ¶¶ 7-8 & Ex. A; Hargrave Decl., ¶¶ 5 & Ex. A.) For example. DOD has withheld material that pertains to

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Motion for Summary Judgment

electronic intelligence collection methods and methods for collecting human intelligence, the release of which reasonably could be expected to cause serious damage to the national security.  (*E.g.*, Hargrave Decl., Ex. A.)  And DHS has likewise withheld classified information relating to intelligence activities that, if disclosed, could be expected to cause serious damage to national security.  (Fausett Decl., ¶¶ 11-12 & Ex. A.)  For example, DHS has withheld information relating to intelligence activities used to counter terrorist threats, the release of which reasonably could be expected to cause serious damage to the national security.  (Fausett Decl., Ex. A.)  Based on these declarations, the Defendants have properly withheld classified material under Exemption 1.

**B.     The Defendants Have Properly Withheld Records under FOIA Exemption 3**

The Defendants properly invoke Exemption 3, which applies to records that are "specifically exempted from disclosure" by other federal statutes "if that statute – establishes particular criteria for withholding the information or refers to the particular types of material to be withheld."  5 U.S.C. § 552(b)(3).  In promulgating FOIA, Congress included Exemption 3 to recognize the existence of collateral statutes that limit the disclosure of information held by the government, and to incorporate such statutes within FOIA's exemptions.  *See Balridge v. Shapiro*, 455 U.S. 345, 352-53 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998). Under Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990).

FBI's affidavit supports the "two-part inquiry [that] determines whether Exemption 3 applies to a given case." *Minier v. CIA*, 88 F.3d 796, 800-01 (9th Cir. 1996) (citing *Sims v. CIA*, 471 U.S. 159, 167 (1985)).  "First, a court must determine whether there is a statute within the scope of Exemption 3.  Then, it must determine whether the requested information falls within the scope of the statute." *Id.*  In this case, FBI has

withheld grand jury material that is protected by Federal Rule of Criminal Procedure 6(e).

Rule 6(e) prohibits the disclosure of any "matter occurring before the grand jury," except

as permitted by the rule itself.  Fed. R. Crim. P. 6(e)(2).  Any material protected from

disclosure under Rule 6(e) is also exempt from disclosure under Exemption 3.  *See*, *e.g.*,

*McDonnell v. United States*, 4 F.3d 1227, 1246 (3d Cir. 1993).  Rule 6(e) extends to

"anything which may reveal what occurred before the grand jury," or "information which

would reveal the identities of witnesses or jurors, the substance of testimony, the strategy

or direction of the investigation, the deliberations or questions of the jurors, and the like."

*Standley v. Dep't of Justice*, 835 F.2d 216, 218 (9th Cir. 1987).  Secrecy also "extends to

transcripts and file memoranda summarizing grand jury testimony."  *Id.*  The FBI's

affidavit establishes that it has withheld information that would identify individuals of

investigative interest and a description of records subpoenaed by a grand jury.  (Hardy

Decl., ¶¶ 29, 43& Ex. H.)  The material is exempt from disclosure pursuant to Exemption

3 and Rule 6(e).

DHS also properly invokes Exemption 3 to withhold information that would reveal

the number of personnel employed by DHS's Office of Intelligence and Analysis ("DHS

I&A").  (Fausett Decl., ¶ 15 & Ex. A.)  That information is protected from disclosure

under 6 U.S.C. § 121 and 50 U.S.C. § 403g.  The latter section provides that, "[i]n the

interests of the security of the foreign intelligence activities of the United States . . . the

[CIA] shall be exempted from . . . the provisions of any other law which require the

publication or disclosure of the organization, functions, names, official titles, salaries, or

numbers of personnel employed by the Agency."  50 U.S.C. § 403g.  This statute is

within the scope of Exemption 3.  *See CIA v. Sims*, 471 U.S. 159, 169 (1985).  Under 6

U.S.C. § 121(d)(11), in turn, "any intelligence information under [the Homeland Security

Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002)] is shared, retained, and

disseminated consistent with the authority of the Director of National Intelligence to

protect intelligence sources and methods under the National Security Act of 1947 (50

U.S.C. 401 *et seq.*) and related procedures[.]" Accordingly, information that would reveal the number of personnel employed by DHS I&A is protected from disclosure in the same manner as information that would reveal the number of personnel employed by CIA.

## C. The Defendants Have Properly Withheld Privileged Materials under FOIA Exemption 5

The Defendants have withheld materials pursuant to Exemption 5, which shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has clarified that Exemption 5 exempts "those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Carter v. United States Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002). Exemption 5 thus protects from disclosure records that would be privileged in civil litigation under doctrines such as the deliberative process privilege and the attorney-client privilege. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *see also Maricopa Audubon Society*, 108 F.3d 1082, 1092 (9th Cir. 1997); *Sears, Roebuck & Co.*, 421 U.S. at 132, 149, 154.

### 1. The Defendants Have Properly Withheld Deliberative Materials

The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151. Courts have recognized that this privilege is an "ancient [one] . . . predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations marks and citation omitted). Thus, agencies may invoke the privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public

confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. *See Sears, Roebuck & Co.*, 421 U.S. at 150-54; *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992); *Russell v. Department of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Documents covered by Exemption 5 include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150.

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Department of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted).

The deliberative process privilege of Exemption 5 extends to those documents that are both "predecisional" and "deliberative." *See Carter v. U.S. Dep't of Commerce*, 307 F.3d at 1089; *Maricopa Audubon Society*, 108 F.3d at 1093; *Assembly of the State of Cal.*, 968 F.2d at 920. The Ninth Circuit has "adopted the D.C. Circuit's definition of these terms." *Maricopa Audubon Soc'y*, 108 F.3d at 1093. A document is "predecisional" if it was "generated before the adoption of an agency policy." *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also Carter v. United States Dep't of Commerce*, 307 F.3d at 1089 (a pre-decisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision); s*ee also North Dartmouth Prop., Inc. v. United States Dep't of Housing & Urban Devel.*, 984 F. Supp. 65, 69 (D. Mass. 1997) (emphasizing the importance of protecting the "ingredients" of the agency's decisionmaking process). A document is "deliberative" if it is "a direct part of the deliberative process" in that it "makes  recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). "In

practice, there is some overlap" between these two terms.  *Assembly of State of Cal.*, 968 F.2d at 920.

The Defendants' declarations and *Vaughn* indices demonstrate that they have properly withheld documents that are subject to the deliberative process privilege.  The documents contain discussions pertinent to pre-decisional matters before the agencies. For example, ODNI has withheld intelligence oversight assessments that include recommendations it has made for the IOB's consideration in the exercise of its duties of overseeing the intelligence community in compliance matters.  (Hackett Decl., ¶ 30.)  The Defendants have properly determined that these materials are subject to the deliberative process privilege, and should be withheld as exempt from disclosure under FOIA Exemption 5.  "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'"  *Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d at 1144).  The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'"  *Chemical Mfrs. Ass'n*, 600 F. Supp. at 118 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151).

The documents are deliberative in nature, such that their disclosure would harm the agencies' deliberative processes by chilling free and frank discussions on matters of significant public policy.  These documents contain opinions, recommendations, and comments that were both predecisional and deliberative.  (*E.g.*, Hackett Decl., ¶¶ 29-30 & Ex. J; Fausett Decl., ¶ 16 & Ex. A.)  The willingness of government officials and employees to provide honest and open assessments and advice depends on the ability of federal agencies to protect those opinions from routine public oversight.  (*Id.*)  Moreover, many of the documents that have been withheld are drafts, which inherently fall under the deliberative process privilege, because such documents, before they are finalized, necessarily concern pre-decisional and deliberative information.  *See, e.g., City of*

*Virginia Beach v. United States Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993); *see also Mobil Oil Corp. v. EPA*, 879 F.2d 698, 703 (9th Cir. 1989).

Where, as here, the documents were "prepared in order to assist an agency decision maker in arriving at his decision," *see Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975), and include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Coastal States Gas Corp.*, 617 F.2d at 866, the agencies may protect them under Exemption 5.  Disclosure of the personal views of individual participants, which do not necessarily reflect those of their agency, could lead to misinterpretation of agency positions and public confusion regarding reasons and rationales that were not ultimately the grounds for the agency's decisions.  *See, e.g.*, *Maricopa Audubon Society*, 108 F.3d at 1095 (materials withheld consisted of "recommendations" and "suggestions" from an inferior to a superior reflecting personal opinions of writer rather than policy of agency); *see also Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995), *aff'd*, 76 F.3d 1232 (D.C. Cir. 1996)

### 2.     Defendants Have Properly Withheld Attorney-Client Communications

FBI and DHS have withheld documents, in whole or in part, as exempt under Exemption 5 pursuant to the attorney-client privilege.  (Fausett Decl., ¶ 16 & Ex. A; Hardy Decl.,¶ 44, 56, 73, 81, 88 & Ex. H.)  The privilege is properly invoked with respect to these documents.  The attorney-client privilege protects from disclosure under FOIA "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  The privilege encompasses both facts divulged from a client to his attorney and opinions given by an attorney to his client based on, and thus reflecting, those facts.  *See Barmes v. IRS*, 60 F. Supp. 2d 896, 901 (S.D. Ind.

1998).  The privilege also encompasses communications between attorneys that reflect information supplied by their clients.  *See Green v. IRS*, 556 F. Supp. 79, 85 (N.D. Ind. 1982), *aff'd*, 734 F.2d 18 (7th Cir. 1984).  With respect to government personnel, the privilege encompasses confidential communications with government attorneys not only by "control group" personnel but also by lower echelon employees.  *See Upjohn Co. v. United States*, 449 U.S.383, 392-97 (1981).  A government agency "needs the . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors."  *Coastal States Gas Corp.*, 617 F.2d at 863.  The attorney-client privilege thus protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

FBI has properly withheld documents pursuant to the attorney-client privilege.  The withheld documents consist of confidential communications between government attorneys and government personnel with respect to matters for which legal advice had been sought, such as legal opinions for the agency's Office of General Counsel concerning the use of intelligence information.  (*E.g.*, Hardy Decl., ¶ 44.)  Likewise, DHS has withheld confidential legal  communications between government attorneys and government personnel.  (Fausett Decl., ¶ 16.)  The disclosure of these records would reveal confidential and privileged attorney-client communications, and would interfere with the client's ability to seek legal advice from government attorneys; accordingly. FBI and DHS have properly withheld these documents pursuant to the attorney-client privilege.

### 3.   The Defendants Have Properly Withheld Documents Subject to the Presidential Communications Privilege

FOIA Exemption 5 incorporates the presidential communications privilege.  *Judicial Watch v. Dept' of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Loving v. Dep't of Defense*, 496 F. Supp. 2d 101, 106 (D.D.C. 2007); *Berman v. CIA*, 378 F. Supp. 2d

1209, 1219 (E.D. Cal. 2005), *aff'd*, 501 F.3d 1136 (9th Cir. 2007). The privilege is a

"[p]resumptive privilege for Presidential communications . . . [that is] fundamental to the

operation of Government and inextricably rooted in the separation of powers under the

Constitution." *United States v. Nixon* ("*Nixon I*"), 418 U.S. 683, 708 (1974). This

privilege "flow[s] from the nature of enumerated powers" of the President. *Id.* at 705 &

n.16. "At core, the presidential communications privilege is rooted in the President's

need for confidentiality in the communications of his office . . . in order to effectively and

faithfully carry out his Article II duties and to protect the effectiveness of the executive

decision–making process." *Judicial Watch*, 365 F.3d at 1115 (internal quotation marks

and citations omitted). The Supreme Court "found such a privilege necessary to

guarantee the candor of presidential advisers and to provide '[a] President and those who

assist him . . . [with] free[dom] to explore alternatives in the process of shaping policies

and making decisions and to do so in a way many would be unwilling to express except

privately.'" *In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (quoting *Nixon I*, 418

U.S. at 708); *see also Berman*, 378 F. Supp. 2d at 1219. *See Nixon v. Administrator of

General Services* ("*Nixon II*"), 433 U.S. 425, 448-49 (1977) ("'Unless he can give

his advisers some assurance of confidentiality, a President could not expect to receive the

full and frank submissions of facts and opinions upon which effective discharge of his

duties depends'") (citation omitted). The privilege applies to documents in their entirety,

and covers final and post-decisional materials as well as predeliberative ones. *In re

Sealed Case*, 121 F.3d at 745; *Berman*, 378 F. Supp. 2d at 1219.

     The presidential communications privilege extends beyond presidential

decision-making and encompasses communications that "explore alternatives in the

process of shaping policies and making decisions." *Nixon II*, 433 U.S. at 449. Because

the privilege "preserves the President's ability to obtain candid and informed opinions

from his advisors and to make decisions confidentially" it necessarily protects not only

"communications directly involving and documents actually viewed by the President,"

but also documents "solicited and received by the President or his "immediate White House advisers with broad and significant responsibility for investigating and formulating the advice to be given the President." *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation and alterations omitted).

ODNI's declaration establishes that it has properly invoked the presidential communications privilege. As discussed above, the PIAB and the IOB are presidentially-created boards that were established for the specific purpose of advising the President on national security measures pursuant to Executive Order 13,462. ODNI supports these boards in their roles by providing intelligence oversight assessments to them, which the boards use to develop recommendations for the President. (Hackett Decl., ¶¶ 29-30 & Ex. J.) ODNI has withheld portions of the reports that it has made to the boards pursuant to the presidential communications privilege (as well as the deliberative process privilege) because public disclosure of the reports would inhibit OPNI staff from providing candid and comprehensive evaluations in future intelligence oversight reports, thereby diminishing the ability of the PIAB and the IOB to formulate appropriate or comprehensive policy recommendations to the President. (*Id.*) Disclosure of these reports would undermine the goal of Executive Order 13,462 to ensure proactive oversight of the activities of the intelligence community and early identification and correction of any compliance weaknesses within that community. (*Id*.) The withheld material is therefore exempt pursuant to the presidential communications privilege, as well as the deliberative process privilege.

### D. The Defendants Have Properly Withheld Records under FOIA Exemption 7

Exemption 7 protects a broad array of information used for law enforcement purposes. Indeed, in 1986, Congress amended Exemption 7 to expand its protection from "investigatory records" compiled for law enforcement purposes to all "records or information" compiled for law enforcement purposes. *Hopkinson v. Shillinger*, 866 F.2d

1185, 1222 n. 27 (10th Cir. 1989), *overruled on other grounds*, *see Sawyer v. Smith*, 497 U.S. 227 (1990). Thus, records generated for general law enforcement purposes but not related to a specific investigation come within Exemption 7's protection. *See, e.g.*, *Voinche v. FBI*, 940 F. Supp. 323, 332 (D.D.C. 1996) (holding information relating to safety procedures afforded to Supreme Court and its justices protected under Exemption 7(E)), *aff'd*, 1997 WL 411685 (D.C. Cir. June 19, 1997).

In order to establish the threshold requirement under Exemption 7 that the information was compiled for law enforcement purposes, an agency that has both law enforcement and administrative functions must demonstrate that its purpose in compiling the particular document fell within its sphere of enforcement authority. *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979). Both FBI and DHS have express statutory law enforcement authority, and therefore are agencies with law enforcement functions. (Fausett Decl., ¶ 17; Hardy Decl., ¶ 33.) The information withheld from release relates to techniques and procedures used by the agencies in the fulfillment of their law enforcement functions. (*Id.*) As such, the withheld information meets the threshold requirement of information being compiled for a law enforcement purpose.

"[A]n agency with a clear law enforcement mandate such as the FBI need establish only a 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed." *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983); *see also Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995); *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 748 (9th Cir. 1980). The documents withheld by FBI and DHS pursuant to Exemptions 7(D) and 7(E) meet this rational nexus test.

1
2

### 1. The Defendants Have Properly Withheld Material under Exemption 7(D)

3

FBI has withheld material under Exemption 7(D), which permits the withholding
4
or redacting of law enforcement records, the release of which "could reasonably be
5
expected to disclose the identity of a confidential source ... and, in the case of a record or
6
information compiled by a criminal law enforcement authority in the course of a criminal
7
investigation ... information furnished by a confidential source." Exemption 7(D)
8
requires no balancing of public and private interests. *See Dow Jones & Co. v. DOJ*, 917
9
F.2d 571, 575-76 (D.C. Cir. 1990). Exemption 7(D) applies if the agency establishes that
10
a source has provided information under either an express or implied promise of
11
confidentiality. *See Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995). A
12
confidential source is one who "provided information under an express assurance of
13
confidentiality or in circumstances from which such an assurance could be reasonably
14
inferred." *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993). An implied assurance
15
of confidentiality could be found "when circumstances such as the nature of the crime
16
investigated and the witness' relation to it support an inference of confidentiality." *Id.* at
17
179, 181. In such circumstances, the Government is entitled to a presumption of inferred
18
confidentiality. *Id. See also, e.g.*, *Mays v. DEA*, 234 F.3d 1324, 1337 (D.C. Cir. 2000)
19
(inference of implied confidentiality for sources to conspiracy to distribute cocaine, which
20
"is typically a violent enterprise, in which a reputation for retaliating against informants is
21
a valuable asset"); *Williams v. FBI*, 69 F.3d 1155 (D.C. Cir. 1995) (inference of
22
confidentiality found for sources to the crimes of rebellion or insurrection, seditious
23
conspiracy, and advocating overthrow of the government).

24
In the context of FBI investigations related to national security, as in other law
25
enforcement investigations, the use of confidential sources is common and important.
26
The material at issue here involves information concerning the activities of the subjects of
27
the FBI's national security investigations. (Hardy Decl., ¶34-35, 45 & Ex. H.) In these
28

investigations, the FBI relies on information provided by third parties, in circumstances where the disclosure of the identities of these third parties could have disastrous consequences.  (*Id*.)  These third parties could come into harm's way should the fact of their cooperation with the FBI become known, and they have shared information with the FBI under an implied assurance of confidentiality.  (*Id*.)  The information this is exempt under Exemption 7(D).

>    **2.    The Defendants Have Properly Withheld Material under Exemption 7(E)**

FBI and DHS also have withheld material under Exemption 7(E), which protects records or information, the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C.  552(b)(7)(E).  This exemption is comprised of two clauses: the first relating to law enforcement "techniques or procedures," and the second relating to "guidelines for law enforcement investigations or prosecutions."  *Id.*  The latter category of information may be withheld only if "disclosure could reasonably be expected to risk circumvention of the law."  *Id.*  No such showing of harm is required for the withholding of law enforcement "techniques or procedures," however, which receive categorical protection from disclosure. *See Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004); *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997).  In an abundance of caution, however, the defendants address the risk of circumvention of the law with respect to all of their Exemption 7(E) withholdings.

The FBI has withheld information that is protected under Exemption 7(E).  It has withheld information that would identify field offices, units, or members involved in a national security investigation; disclosure of this information would allow a potential

criminal to piece together bits of information to learn how the FBI conducts its national security investigations, which could foster circumvention of the law with respect to particular geographic areas or particular activities.  (Hardy Decl., ¶¶ 36, 46-52, 57-59, 65-68, 74, 82-83, 89 & Ex. H.)  The FBI also has withheld information that would disclose the specific e-mail accounts under investigation; disclosure of this information could allow suspects to switch email accounts, or to learn which domains or internet carriers are under surveillance.  (*Id*.)  The FBI also has withheld information that would reveal whether a preliminary or full investigation has been undertaken, which would allow individuals to learn the criteria that would trigger a full investigation by the FBI and to adjust their behavior accordingly.  (*Id*.)  The FBI further has withheld information that would disclose the specific types of internet or e-mail activity that are under surveillance or that would trigger investigation; that would disclose the details of a computer system that the FBI uses in its national security investigations; specific law enforcement techniques that the FBI uses in national security investigations; and specific techniques used to sequester information during investigations.  (*Id*.)  Similarly, DHS has withheld information that pertains to techniques and procedures used by DHS I&A or would disclose guidelines for DHS I&A analytic activities, the disclosure of which reasonably could be expected to lead to circumvention of criminal laws.  (Fausett Decl., ¶ 17 & Ex. A.)  Disclosure of this information could reasonably be expected to risk circumvention of the law, and the information is exempt under Exemption 7(E).

### E.    Defendants Have Produced All Reasonably Segregable Portions of Responsive Records

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).  This provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005)

(concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words."); *see also Klamath Siskiyou Wildlands Ctr. v. U.S. Dep't of Interior*, 2007 WL 4180685, at *8 (D.Or. Nov. 21, 2007) ("In cases where nonexempt material is inextricably intertwined with exempt material and the deletion of the exempt material would leave only meaningless words and phrases, the entire document is exempt.").  The Defendants have reviewed the withheld material and have disclosed all non-exempt information that reasonably could be disclosed.  (Baines Decl., Ex. A.; Fausett Decl., ¶ 8 & Ex. A; Hackett Decl., ¶ 23 & Ex. J; Hardy Decl., ¶ 101 & Ex. H; Hargrave Decl., Ex. A.)  Accordingly, the agency has produced all "reasonably segregable portion[s]" of the responsive records. 5 U.S.C. § 552(b).

## Conclusion

For the foregoing reasons, the Defendants respectfully request that the Court hold that Defendants have properly withheld records that are exempt from disclosure under one or more of the exemptions established under the FOIA, and that the Court enter summary judgment in their favor.

Respectfully submitted,

TONY WEST
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director


___/s/ Joel McElvain_____
JOEL McELVAIN
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7332
San Francisco, CA 94102
Telephone:   (202) 514-2988
Fax:         (202) 616-8202
Email:       Joel.McElvain@usdoj.gov

Attorneys for Defendants

*Habeas Corpus Resource Ctr. v. U.S. Dep't of Justice*
Case No. C 08-02649 CW
Motion for Partial Summary Judgment

1

CERTIFICATE OF SERVICE

2        I hereby certify that on November 21, 2011, I electronically filed the foregoing

3  Notice of Motion and Motion for Summary Judgment with the Clerk of the Court, using

4  the CM/ECF system, which will send notification of such filing to the counsel of record

5  in this matter who are registered on the CM/ECF system.

6

7

8                            /s/ Joel McElvain
                          JOEL McELVAIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28