UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:09-cv-03351-SBA |
| v. | ) ) | |
| CENTRAL INTELLIGENCE AGENCY, et al. | ) ) ) | |
| Defendants. | ) ) | |

DECLARATION OF JOHN F. HACKETT,
CHIEF OF THE INFORMATION MANAGEMENT GROUP,
THE OFFICE OF THE CHIEF INFORMATION OFFICER,
OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare the following to be true and correct:

1. I am the Chief of the Information Management Group for the Office of the Director of National Intelligence ("ODNI").[1] I have held this position since April 2006. Prior to my arrival in the ODNI, I held similar positions in the National Counterterrorism Center and its predecessor, the Terrorist Threat Integration Center. In this capacity I am the final decision-making authority for the ODNI Information Management Group, which receives, processes, and responds to requests for

---

[1] The Information Management Group within the Office of the Chief Information Officer previously was called the Information Management Office. This was a purely administrative change and all FOIA functions within the Information Management Group remained unchanged.

ODNI records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. In addition, I have TOP SECRET original classification authority delegated to me by the Director of National Intelligence ("DNI") pursuant to Section 1.3 of Executive Order 13526. I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions.

3. I make the statements herein on the basis of my personal knowledge as well as on information made available to me in the course of performing my official duties.

## ODNI Background

4. Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the United States Intelligence Community and as the principal advisor to the President and the National Security Council for intelligence matters related to the national security. 50 U.S.C. §§ 403(b)(1), (2).

5. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. These

responsibilities include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof.  50 U.S.C. § 403-1(a)(1).  The DNI is charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community.  50 U.S.C. §§ 403-1(f)(1)(A)(i) and (ii).

6.   In addition, the National Security Act of 1947, as amended, states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 403-1(i)(1).  Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive Orders, or other Presidential Directives and for access to and dissemination of intelligence.  50 U.S.C. §§ 403-(i)(2)(A), (B).

7.   Finally, the National Security Act of 1947, as amended, created an Office of the Director of National Intelligence.  The function of this Office is to assist the DNI in carrying out the duties and responsibilities of the Director under the Act and

other applicable provision of law, and to carry out such other duties as may be prescribed by the President or by law.

### Background on the PIAB and the IOB

8. Executive Order 13462 outlines the roles and responsibilities of the President's Intelligence Advisory Board ("PIAB"), the Intelligence Oversight Board ("IOB") and the ODNI's support to the PIAB and the IOB.

9. The PIAB was established within the Executive Office of the President exclusively to advise and assist the President on the effectiveness of the Intelligence Community's activities, as provided in Sections 3 and 4 of Executive Order 13462. The PIAB's responsibilities include assessing the quality, quantity, and adequacy of intelligence collection, analysis and estimates as well as reviewing the performance of all agencies of the United States Government engaged in these areas. The PIAB reports the results of these reviews and makes appropriate recommendations to the President. Where appropriate, the PIAB also provides recommendations and feedback to the DNI and other agencies on their performance.

10. The IOB is a committee within the PIAB, whose responsibilities are described in Section 6 of Executive Order 13462. Among the IOB's responsibilities, Section 6(e) of Executive Order 13462 requires the IOB to receive and review information submitted by the DNI and make recommendations

thereon, including for any needed corrective action, with respect to such information. Section 6(b) of Executive Order 13462 also requires the IOB to inform the President of intelligence activities the IOB believes may be unlawful or contrary to an Executive Order or Presidential Directive or for any matters that should be reported immediately to the President.

11. In accordance with Sections 7 and 8 of Executive Order 13462 the DNI supports the PIAB and the IOB as they may need to perform their functions under Executive Order 13462. The DNI receives intelligence oversight reports from all reporting agencies pursuant to Section 1.6(c) of Executive Order 12333, which requires the heads of elements of the Intelligence Community to report to the IOB, consistent with Executive Order 13462, and provide copies of these reports to the DNI. Pursuant to Section 7(c) the DNI examines the reports received from the heads of departments concerned and provides an analysis to the IOB of the Intelligence Community's reporting. This analysis includes an identification of trends or patterns of matters reported and an assessment of the effectiveness of corrective actions taken. This intelligence oversight assessment is provided no less than twice each year to the IOB.

12. In addition, as the head of an element of the Intelligence Community, the DNI submits his own quarterly report

to the IOB concerning any intelligence activities within the ODNI that may be unlawful or contrary to executive order or Presidential Directive pursuant to Section 1.6(c) of Executive Order 12333. Within the ODNI, the responsibility of preparing these ODNI quarterly reports belongs to the ODNI IOB Team, a team consisting of staff members from the ODNI Offices of General Counsel and Inspector General[2] as well as the ODNI Civil Liberties and Privacy Office, which serves in a consultative role to the team. The ODNI IOB Team also participates in discussions with the IOB staff, attends meetings on behalf of the ODNI, prepares the intelligence oversight assessments no less than twice each year, and executes the DNI's responsibilities as provided in Executive Orders 13462 and 12333.

## Processing of Plaintiff's Request

13. By facsimile dated February 25, 2008, the ODNI received a FOIA request from plaintiff for all reports submitted by the ODNI to the IOB pursuant to Section 2.4 of Executive Order 12863 since April 2005. (A copy of plaintiff's February 25, 2008 request letter is attached hereto as Exhibit A.)

14. Plaintiff's request was assigned number DF-2008-00029 and was placed in the ODNI's normal processing queue. ODNI did

---

[2] On November 7, 2011, the Senate confirmed the first Inspector General of the Intelligence Community and by operation of law, the Inspector General of the Intelligence Community retains the functions of the Inspector General for the ODNI while assuming new responsibility for conducting IC-wide audits, reviews, and investigations. All of the records in this case predate the confirmation of the Inspector General of the Intelligence Community.

6

not have any record of providing the plaintiff with a written acknowledgement of plaintiff's FOIA request. When this inadvertent oversight was discovered, ODNI provided a written status update dated August 13, 2009 to the plaintiff. (A copy of ODNI's August 13, 2009 letter is attached hereto as Exhibit B.)

15. By facsimile dated June 19, 2009, plaintiff submitted a second FOIA request to the ODNI. In this request, plaintiff requested ODNI reports submitted to the IOB pursuant to Executive Order 12863 from February 25, 2008 through February 29, 2008, and also requested all records concerning the ODNI's activities under Executive Order 13462 since February 29, 2008. This included reports, assessments, reviews, instructions, guidelines, and submissions to or communications between the ODNI and the IOB and/or the PIAB. (A copy of plaintiff's June 19, 2009 request letter is attached hereto as Exhibit C.) Plaintiff's second request was assigned number DF-2009-00083 and placed in ODNI's normal processing queue.

16. By letter dated June 29, 2009, ODNI acknowledged receipt of plaintiff's second FOIA request. (A copy of ODNI's June 29, 2009 letter is attached hereto as Exhibit D.)

17. The ODNI located approximately 2100 pages of documents responsive to plaintiff's FOIA requests. The documents were

processed and ODNI responded to plaintiff in five separate requests.

18. The first set of responsive documents was provided as an interim response to plaintiff by letter dated December 14, 2009. ODNI provided 24 documents, totaling 31 pages, with redactions made pursuant to Exemptions 1, 2, 3 and 6, 5 U.S.C. §§ 552(b)(1), (2), (3) and (6). (A copy of ODNI's December 14, 2009 letter is attached hereto as Exhibit E.)

19. The second set of responsive documents was provided to plaintiff by letter dated February 25, 2010. ODNI released 216 pages, of which 35 pages were released in full and the remaining 181 pages were released with redactions made pursuant to Exemptions 1, 2, 3, 5 and 6, 5 U.S.C. §§ 552(b)(1), (2), (3), (5) and (6), withheld 1,526 pages[3] under Exemptions 1, 2, 3, 5 and 6, 5 U.S.C. §§ 552(b)(1), (2), (3), (5) and (6), and referred 318 pages[4] to other agencies for their review and direct response to plaintiff. In addition, ODNI reviewed four documents that were referred from DOJ for ODNI's direct response to plaintiff. Of those four documents, two documents with redactions had been released previously to plaintiff by ODNI letter dated December 14, 2009. One document was referred to

---

[3] Initially, ODNI indicated in its February 25, 2010 letter that approximately 1,750 pages were withheld but later determined that the number of pages withheld was 1,526 pages. ODNI relayed this correction to plaintiff in a letter dated March 23, 2010.

[4] Initially, ODNI indicated in its February 25, 2010 letter that approximately 500 pages have been referred to other agencies. ODNI later determined that the correct number of pages referred was 318 pages. ODNI relayed this correction to plaintiff in a letter dated March 23, 2010.

the Department of Defense Inspector General ("DoD IG") and the DoD IG released the document with redactions by letter dated December 2, 2009. ODNI released the remaining document with no redactions. (A copy of ODNI's February 25, 2010 letter is attached hereto as Exhibit F.)

20. The third set of responsive documents was provided to plaintiff by letter dated March 23, 2010. ODNI released in part 152 pages with redactions made pursuant to Exemptions 1, 2, 3, 5, 6, and 7, 5 U.S.C. §§ 552(b)(1), (2), (3), (5), (6) and (7).[5] In addition, as a matter of administrative ease, ODNI provided 98 pages of documents that originated with other agencies after receiving authorization from those agencies. (A copy of ODNI's March 23, 2010 letter is attached hereto as Exhibit G.)

21. The fourth set of responsive documents was provided to plaintiff by email dated August 2, 2011. ODNI provided one document totaling seven pages to plaintiff with redactions made pursuant to Exemptions 2 and 6, 5 U.S.C. §§ 552(b)(2) and (6). (A copy of ODNI's August 2, 2011 email is attached hereto as Exhibit H.)

22. By letter dated November 8, 2011, ODNI released in part a fifth set of documents, totaling 337 pages, with redactions made pursuant to Exemptions 2, 5, and 6, 5 U.S.C.

---

[5] Some of these released documents contain FBI redactions. These redactions are referenced in the Vaughn Index as document numbers 92-100, 179 and 213-217. FBI will address in its declaration redactions made pursuant to FOIA Exemptions 1, 2, 5, 7(D) and 7(E) in ODNI document numbers 92, 98, 100, 179, 213 and 216.

§§ 552(b)(2), (5) and (6). (A copy of ODNI's November 8, 2011 letter is attached hereto as Exhibit I.)

### Explanation of Redacted or Withheld Material

23. Documents containing exempt material were reviewed for segregability. A total of 743 pages were segregated and released to the plaintiff with redactions made pursuant to FOIA Exemptions 1, 2, 3, 5, and 6. All reasonably segregable, non-exempt material has been released. In instances where attempts to segregate the material resulted in releases that would not be meaningful or almost entirely blacked out, the ODNI withheld those materials in full. A total of 783 pages were withheld in full.

24. Accompanying this Declaration is a Vaughn Index that contains a list of the documents released in part or withheld in full in response to plaintiff's FOIA requests and a description of the FOIA exemptions that apply to those documents. (A copy of ODNI's Vaughn Index is attached hereto as Exhibit J.)

25. In discussions with the plaintiff, the parties came to an understanding that the plaintiff would not challenge material withheld pursuant to FOIA Exemptions 2, 3 and 6, as well as Exemption 1 when taken coextensively with Exemption 3. After a review of the material, the ODNI determined that all of its Exemption 1 redactions were taken coextensively with Exemption 3.

26. Because withholdings based on FOIA Exemptions 1, 2, 3 and 6 are not being challenged, I will not address these exemptions in the remainder of the declaration. The only remaining exemption being challenged by the plaintiff is Exemption 5. The plaintiff also identified some Exemption 5 redactions that it was not challenging.[6] Accordingly, I will address only those Exemption 5 withholdings being challenged by plaintiff.

27. Exemption 5 redactions to ODNI documents were made on the basis of applicable privileges, including the deliberative process privilege and the presidential communications privilege. The withheld material includes inter-agency and intra-agency discussions, draft documents, internal briefings or talking points, and other predecisional deliberative communications. I will discuss each of these Exemption 5 categories in the below paragraphs.

### Intelligence Oversight Assessments for the IOB[7]

28. As required by Section 7(c) of Executive Order 13462, the ODNI submits to the IOB an analysis of the reports received under Executive Order 12333 from the heads of elements of the Intelligence Community and prepares an intelligence oversight assessment concerning the gravity, frequency, trends, and

---

[6] Plaintiff informed ODNI that it would not challenge FOIA Exemption 5 claims for the following document numbers as referenced in the ODNI Draft Vaughn Index: 111-114, 125, 132, 134-157, 160-161, 165-168, and 170-171. Accordingly, ODNI will not address any Exemption 5 redactions taken for these particular documents.
[7] Documents 14-19 as referenced in the Vaughn Index.

11

patterns of occurrences of intelligence activities that may be unlawful or contrary to Executive Order or Presidential Directive as well as an assessment of the effectiveness of corrective action taken by the DNI or the head of the department concerned with respect to these intelligence activities. In preparing these intelligence oversight assessments for the IOB, the ODNI receives and reviews the quarterly reports submitted by the heads of elements of the Intelligence Community ("IC") and any immediate reports of significant or highly sensitive matters under investigation or review by an IC element. The reports submitted by the heads of elements of the IC include explanations, justifications, and any remediation efforts underway by the reporting IC element. After the ODNI reviews these reports, the ODNI assesses whether each IC element has complied with its reporting obligations in accordance with Executive Order 13462 and its associated Reporting Criteria, identifies any problematic trends across the IC element or the IC, and provides recommendations for the IOB's consideration through the ODNI's intelligence oversight assessments.

29. In response to plaintiff's FOIA request, the ODNI released its intelligence oversight assessments with redactions made pursuant to FOIA Exemption 5, which permits redactions and withholdings under FOIA for materials that may be subject to the presidential communications and deliberative process privileges.

The presidential communications privilege protects communications between the President and his advisers. The PIAB and the IOB are presidentially-created boards specifically established to advise the President on national security matters pursuant to Executive Order 13462. Section 4(a) of Executive Order 13462 requires the PIAB to review the performance of all agencies of the Federal Government that are engaged in the collection, evaluation, or production of intelligence or the execution of intelligence policy and to report the results of its reviews to the President and if appropriate to the DNI and the heads of the departments concerned. Section 4(b) of Executive Order 13462 requires the PIAB to consider and make appropriate recommendations to the President, the DNI, or the head of the department concerned with respect to matters identified to the PIAB by the DNI or the head of a department concerned. The IOB, a committee of the PIAB, receives and reviews information submitted by the DNI and makes recommendations thereon, including for any needed corrective action, with respect to such information, and the intelligence activities to which the information relates, to the President, the DNI, and the head of the department concerned pursuant to section 6(e) of Executive Order 13462. As required, the IOB reviews the ODNI's quarterly reports of reportable ODNI intelligence activities, intelligence oversight assessments

submitted on no less than twice a year pursuant to Executive Order 13462, and any immediate reports of significant or highly sensitive matters. In turn, the IOB provides appropriate recommendations to the President on national security policy and as to whether any current intelligence policies and procedures warrant change or immediate attention.

30. This information was also redacted pursuant to the deliberative process privilege. The deliberative process privilege protects the ODNI's evaluation of each agency's reporting efforts, updates from agencies on sensitive matters under review or investigation, the ODNI's review of the effectiveness of an agency's remediation efforts, the identification of trends and patterns in the IC's reporting activities, and recommendations submitted for the IOB's consideration. The disclosure of deliberative material contained in these intelligence oversight assessments would reveal the ODNI's deliberative analyses and recommendations to the IOB. If while preparing these assessments the ODNI IOB team had to consider the public reaction, or even other agencies' reactions, to its intelligence oversight assessments, they will likely be less frank in their assessments and will be inhibited from freely and candidly providing evaluations of an agency's performance on intelligence oversight compliance. The ODNI must be free to provide the IOB with the information it needs to