1   Jennifer Lynch (SBN 240701)
    *jlynch@eff.org*
2   ELECTRONIC FRONTIER FOUNDATION
    454 Shotwell Street
3   San Francisco, CA 94110
    Telephone:   (415) 436-9333
4   Facsimile:   (415) 436-9993

5   David L. Sobel *(pro hac vice)*
    *sobel@eff.org*
6   ELECTRONIC FRONTIER FOUNDATION
    1818 N Street, N.W., Suite 410
7   Washington, DC  20036
    Telephone: (202) 797-9009 x104
8   Facsimile: (202) 707-9066

9   Attorneys for Plaintiff
    Electronic Frontier Foundation

10

11                    **UNITED STATES DISTRICT COURT**

12             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                          **OAKLAND DIVISION**

14
    ELECTRONIC FRONTIER FOUNDATION,       )    CASE NO. 4:09-CV-03351-SBA
15                                        )
                              Plaintiff,  )    **NOTICE OF CROSS MOTION AND**
16                                        )    **CROSS MOTION FOR SUMMARY**
         v.                               )    **JUDGMENT; MEMORANDUM OF**
17                                        )    **POINTS AND AUTHORITIES IN**
    CENTRAL INTELLIGENCE AGENCY,          )    **SUPPORT OF CROSS MOTION FOR**
18   ET AL.                               )    **SUMMARY JUDGMENT**
                                          )
19                           Defendants.  )    **AND**
                                          )
20                                        )    **OPPOSITION TO DEFENDANTS'**
                                          )    **MOTION FOR SUMMARY JUDGMENT**
21                                        )
                                          )    Date:        March 27, 2012
22                                        )    Time:        1:00 p.m.
                                          )    Place:       Ctrm. 1, 4th Floor
23                                        )    Hon. Saundra Brown Armstrong

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 1

    A.    INTELLIGENCE VIOLATIONS IN POST-9/11 AMERICA ....................................... 1

    B.    THE INTELLIGENCE OVERSIGHT BOARD .......................................................... 3

    C.    EFF'S FREEDOM OF INFORMATION ACT REQUESTS FOR RECORDS RELATED TO
        INTELLIGENCE VIOLATIONS AND DEFENDANTS' PRODUCTION ............................ 4

III.    ARGUMENT ........................................................................................................... 5

    A.    THE FREEDOM OF INFORMATION ACT AND THE STANDARD OF REVIEW ............ 5

    B.    EFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT HAS
        IMPROPERLY WITHHELD AGENCY RECORDS ....................................................... 7

        1.   Defendants Have Failed to Meet the Procedural Requirements Necessary to
            Sustain Their Burden Under the FOIA ....................................................... 7

        2.   DOD, FBI and DHS Have Improperly Withheld Records Under Exemption 1 ........ 8

            (a)   DOD and FBI Have Failed to Support Their Exemption 1 Claims with
                Sufficiently Detailed Justification ..................................................... 9

                (i)   DOD and Its Component DAIG's Exemption 1 Claims Fail for Lack
                    of Specificity .......................................................................... 10

                (ii)  FBI's Exemption 1 Withholdings Fail for Lack of Specificity ............ 11

            (b)   Because the Records Defendants Withheld Under Exemption 1 Concern
                Illegality and Misconduct, They Are Not Properly Classified and Must Be
                Released ..................................................................................... 14

        3.   Defendants Have Improperly Withheld Records Under Exemption 5 ..................... 17

            (a)   Defendants Have Improperly Withheld Records Under the Deliberative
                Process Privilege ......................................................................... 17

                (i)   ODNI's Vaughn Submission Fail to Satisfy the Heightened
                    Specificity Required to Withhold Records Under the Deliberative
                      Process Privilege .................................................................... 18

                (ii)  ODNI and DHS Have Improperly Withheld Records Reflecting
                      Final Agency Positions or Opinions ........................................... 20

                (iii) ODNI Has Improperly Withheld Purely Factual Information ............. 22

i

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

(b)   FBI and DHS Have Improperly Withheld Records Under the Attorney-Client Privilege ............................................................................................ 22

(c)   ODNI Has Improperly Withheld Documents Under the Presidential Communications Privilege ........................................................................... 23

4.   FBI Improperly Withheld Records Under Exemption 7(D) .................................... 25

5.   Defendants Improperly Withheld Records Under Exemption 7(E) ......................... 27

(a)   FBI has Failed to Show That Releasing Records Would Allow Criminals to Circumvent Detection, Apprehension or Prosecution ............................... 28

(b)   Defendants Have Improperly Withheld Law Enforcement Techniques That Are Generally Known or Routine ......................................................... 29

6.   DHS and FBI Have Improperly Withheld Guidelines and Policies that Regulate an Agency's Dealings With the Public .................................................................. 31

7.   Defendants Have Failed to Segregate and Release All Non-Exempt Information ... 32

IV.   CONCLUSION .................................................................................................................. 35

ii

Case No. 09-CV-03351 SBA    Opp. to Defs.' Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

# TABLE OF AUTHORITIES

## CASES

*ACLU of Wash. v. DOJ*,
    No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011) .......12, 13, 28, 29

*ACLU v. Dep't of Defense*,
    389 F. Supp. 2d 547 (S.D.N.Y. 2005)..................................................................16

*ACLU v. ODNI*,
    No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011)...............12, 16, 28

*Albuquerque Publ'g Co. v. DOJ*,
    726 F. Supp. 851 (D.D.C. 1989) .......................................................................29, 30

*Arthur Andersen & Co. v. IRS*,
    679 F.2d 254 (D.C. Cir. 1982) ..........................................................................19, 21

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*,
    818 F. Supp. 1291 (N.D. Cal. 1992) ......................................................................22

*Binion v. DOJ*,
    695 F.2d 1189 (9th Cir. 1983)................................................................................8

*Birch v. USPS*,
    803 F.2d 1206 (D.C. Cir. 1986) ..............................................................................7

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
    601 F.3d 143 (2d Cir. 2010)...................................................................................7

*Campbell v. DOJ*,
    164 F.3d 20 (D.C. Cir. 1998) ..................................................................9, 10, 12, 14

*Carter v. Dep't of Commerce*,
    307 F.3d 1084 (9th Cir. 2002)...............................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................6

*Church of Scientology v. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979).............................................................................7, 32

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ..........................................................................20, 23

*Coldiron v. DOJ*,
    310 F. Supp. 2d 44 (D.D.C. 2004) .........................................................................14

iii

*CREW v. DHS*,
   Civ. No. 06-0173, 2008 WL 2872183 (D.D.C. July 22, 2008).............................................24

*Crooker v. ATF*,
   670 F.2d 1051 (D.C. Cir. 1981) .......................................................................................34

*Ctr for Biological Diversity v. OMB*,
   625 F. Supp. 2d 885 (N.D. Cal. 2009) .........................................................................23, 25

*Defenders of Wildlife v. Dep't of Agric.*,
   311 F. Supp. 2d 44 (D.D. C. 2004) ..................................................................................21

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976)..........................................................................................................6

*Dept. of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001)........................................................................................................6, 17

*DOJ v. Landano*,
   508 U.S. 165 (1993).........................................................................................................26

*DOJ v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ......................................................................................................5, 6

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ..........................................................................................................6

*Dow Jones & Co. v. Dep't of Justice*,
   724 F. Supp. 985 (D.D.C. 1989) ......................................................................................17

*Dunaway v. Webster*,
   519 F. Supp. 1059 (C.D. Cal. 1981).................................................................................30

*EFF. v. DOJ*,
   Civ. No. 07-00656 (D.D.C. April 10, 2007) ....................................................................33

*Elec. Privacy Info. Ctr. v. DOJ*,
   511 F. Supp. 2d 56 (D.D.C. 2007) ...................................................................................20

*EPA v. Mink*,
   410 U.S. 73 (1973)...........................................................................................................22

*Feshbach v. SEC*,
   5 F. Supp. 2d 774 (N.D. Cal. 1997) ...................................................................................6

*Gerstein v. DOJ*,
   No. 03-04893, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005) ..........................28

*Goland v. CIA*,
   607 F.2d 339 (D.C. Cir. 1978) ...........................................................................................7

*Goldberg v. Dep't of State*,
    818 F.2d 71 (D.C. Cir. 1987) .......................................................................................14

*Gordon v. FBI*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ...............................................................27, 28, 32

*Hamilton v. Weise*,
    No. 95-1161, 1997 U.S. Dist. LEXIS 18900 (M.D. Fla. Oct. 1, 1997) ............................30

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ...........................................................................23, 24, 25

*Int'l Counsel Bureau v. DOD*,
    723 F. Supp. 2d 54 (D.D.C. 2010) ..............................................................................9, 10

*Jordan v. DOJ*,
    591 F.2d 753 (D.C. Cir. 1978) ...................................................................................18, 32

*Judicial Watch v. USPS*,
    297 F. Supp. 2d 252 (D.D.C. 2004) .........................................................................18, 24, 25

*Kamman v. IRS*,
    56 F.3d 46 (9th Cir. 1995).................................................................................................7

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) .....................................................................................8, 11

*Larson v. Dep't of State*,
    565 F. 3d 857 (D.C. Cir. 2009) ......................................................................................10

*Lesar v. DOJ*,
    636 F. 2d 472 (D.C. Cir. 1980) ........................................................................................9

*Maricopa Audubon Soc'y v. U.S. Forest Service*,
    108 F.3d 1089 (9th Cir. 1997).......................................................................................18, 20

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ...............................................................................7, 23, 32

*Milner v. Dept. of Navy*,
    131 S.Ct. 1259 (2011) .....................................................................................................34

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) .......................................................................................8

*N.Y. Times Co. v. DOD*,
    499 F. Supp. 2d 501 (S.D.N.Y. 2007).............................................................................21

v

*Nat'l Sec. Archive v. FBI,*
    759 F. Supp. 872 (D.D.C. 1991) ................................................................. 13, 29

*Nat'l Wildlife Fed'n v. U.S. Forest Service,*
    861 F.2d 1114 (9th Cir. 1988) ........................................................................ 6, 18

*Nixon v. Adm'r of Gen. Servs.,*
    433 U.S. 425 (1977) ............................................................................................ 24

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ........................................................................................... 5, 6

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ........................................................................... 18, 20, 31

*NRDC v. DOD,*
    388 F. Supp. 2d 1086 (C.D. Cal. 2005) .................................................... *passim*

*Petroleum Info. Corp. v. Dep't of the Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) ........................................................................ 18

*PHE, Inc. v. DOJ,*
    983 F.2d 248 (D.C. Cir. 1993) .......................................................................... 32

*Quarles v. Dep't of Navy,*
    893 F.2d 390 (D.C. Cir. 1990) .......................................................................... 22

*Rosenfeld v. DOJ,*
    57 F.3d 803 (9th Cir. 1995) ............................................................. 26, 27, 29, 30

*Roth v. DOJ,*
    642 F.3d 1161 (D.C. Cir. 2011) ........................................................................ 26

*Senate of Puerto Rico v. DOJ,*
    823 F.2d 574 (D.C. Cir. 1987) .......................................................................... 18

*Strang v. Collyer,*
    710 F. Supp. 9 (D.D.C. 1989), *aff'd,* 899 F.2d 1268 (D.C. Cir. 1990) ............... 18

*United States v. Nixon,*
    418 U.S. 683 (1974) ............................................................................................ 24

*United States v. Rozet,*
    183 F.R.D. 662 (N.D. Cal. 1998) ...................................................................... 18

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) .................................................................... *passim*

*Warshak v. U.S.,*
    532 F.3d 521 (6th Cir. 2008) ............................................................................ 30

vi

*Wiener v. FBI*,
    943 F.2d 972 (9th Cir. 1991).......................................................................................*passim*

## STATUTES

5 U.S.C. § 552 ...........................................................................................................................1

5 U.S.C. § 552(a)(4)(B)..............................................................................................................6

5 U.S.C. § 552(b) ..................................................................................................6, 32, 33, 35

5 U.S.C. 552(b)(1).......................................................................................................................9

5 U.S.C. § 552(b)(1)(B) ............................................................................................................14

5 U.S.C. § 552(b)(5)..................................................................................................................17

5 U.S.C. § 552(b)(7)(E).............................................................................................................27

5 U.S.C. §552(b)(7)(D)..............................................................................................................25

50 U.S.C. § 401a(4).....................................................................................................................3

## RULE

Fed. R. Civ. P. 56(c)....................................................................................................................6

1

**NOTICE OF MOTION**

2   TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE that on March 27, 2012, or as soon thereafter as the matter may

4   be heard in Courtroom 1 on the 4th Floor at 1301 Clay Street in Oakland, California, plaintiff

5   Electronic Frontier Foundation (EFF) will, and hereby does, cross move for summary judgment.

6      Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring the

7   Department of Defense (DOD) and its components, Department of Justice (DOJ)'s component

8   Federal Bureau of Investigation (FBI), Department of Homeland Security (DHS), and Office of the

9   Director of National Intelligence (ODNI) to release records under the Freedom of Information Act

10   (FOIA). EFF respectfully asks that this Court issue an order requiring the government to release all

11   records improperly withheld from the public. This cross motion is based on this notice of cross

12   motion, the memorandum of points and authorities in support of this cross motion, the declaration

13   of Jennifer Lynch and attached exhibits in support of this cross motion, and all papers and records

14   on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any

15   further evidence which may be offered.

16   DATED:  December 20, 2011          Respectfully submitted,

17

18                                 */s/ Jennifer Lynch*
                                Jennifer Lynch, Esq.

19                                 ELECTRONIC FRONTIER FOUNDATION
                                454 Shotwell Street

20                                 San Francisco, CA  94110
                                Telephone:  (415) 436-9333

21                                 Facsimile:  (415) 436-9993

22                                 David L. Sobel *(pro hac vice)*
                                ELECTRONIC FRONTIER FOUNDATION

23                                 1818 N Street, N.W., Suite 410
                                Washington, DC  20036

24                                 Telephone: (202) 797-9009 x104
                                Facsimile: (202) 707-9066

25

26                                 Attorneys for Plaintiff
                                ELECTRONIC FRONTIER FOUNDATION

27

28

1

Case No. 09-CV-03351 SBA    Opp. to Defs.' Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeks the disclosure of records held by Defendants Department of Homeland Security (DHS), Department of Defense (DOD) and its components, Federal Bureau of Investigation (FBI) (a component of Department of Justice (DOJ)), and Office of the Director of National Intelligence (ODNI) (collectively "Defendants") concerning reports of actual and suspected intelligence violations that occurred in the years following September 11, 2001. Pursuant to Executive Orders 12,863 and 13,462, the intelligence agencies were required to compile and report violations to an independent body called the Intelligence Oversight Board (IOB) and to the ODNI. Defendants have moved for summary judgment, asking the Court to sustain their decision to withhold a substantial portion of the requested material in part or whole. Because the agencies have failed to meet their burden— both procedurally and substantively—the Court should deny the government's motion for summary judgment and grant EFF's cross-motion. EFF respectfully requests entry of an order compelling Defendants immediately to disclose all improperly withheld records.

## II.     STATEMENT OF FACTS

### A.      Intelligence Violations In Post-9/11 America

In the years following September 11, 2001, the American public learned of extensive abuses conducted by members of the intelligence community. In three separate, scathing reports published between 2007 and 2010, the Department of Justice Inspector General described the FBI's illegal use of its investigative authority. *See* DOJ, Office of Inspector General (OIG), *A Review of the Federal Bureau of Investigation's Use of National Security Letters*, Special Report (March 2007);[1] DOJ, OIG, *A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006,* Special Report, (March 2008);[2] DOJ, OIG, *A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal*

---

[1] Http://www.justice.gov/oig/special/s0703b/final.pdf.
[2] Http://www.justice.gov/oig/special/s0803b/final.pdf.

*Requests for Telephone Records* (January 2010).[3] In 2004, the *New York Times* reported that DHS sought and obtained specially tabulated population statistics on Arab-Americans from the Census Bureau, "including detailed information on how many people of Arab backgrounds live in certain ZIP codes." Lynette Clemetson, "Homeland Security Given Data on Arab-Americans," *NY Times* (July 30, 2004).[4] In late 2005, evidence emerged that the Department of Defense was spying on domestic anti-war groups exercising their First Amendment right to gather together and protest against the government. *See, e.g.*, Lisa Myers, *et al.*, "Is the Pentagon spying on Americans?," *NBCNews.com* (Dec. 14, 2005).[5] Also in 2005, the *New York Times* broke the story that the NSA was conducting warrantless wiretapping of Americans' phone and electronic communications. *See* James Risen & Eric Lichtblau, "Bush Lets U.S. Spy on Callers Without Courts," *N.Y. Times* (Dec. 16, 2005).[6] The CIA and DOD engaged in "enhanced interrogation techniques" and out-right torture of detainees in Iraq, Afghanistan, and Guantanamo Bay, Cuba. *See, e.g.,* Josh White, *et al.*, "A Prison on the Brink: Usual Military Checks and Balances Went Missing," *Wash. Post*, A1 (May 9, 2004);[7] Dana Priest, "CIA Avoids Scrutiny of Detainee Treatment," *Wash. Post*, A1 (March 3, 2005);[8] Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo," *Wash. Post* (July 27, 2005).[9] The CIA also kidnapped and placed foreign nationals suspected of involvement in terrorism on secret "extraordinary rendition" flights to countries well known for their human rights abuses where they could be interrogated and tortured. *See* ACLU*, Fact Sheet: Extraordinary Rendition* (Dec. 6, 2005).[10] And the agency operated its own secret jails or "black sites" in

---

[3] Http://www.justice.gov/oig/special/s1001r.pdf.

[4] Http://www.nytimes.com/2004/07/30/politics/30census.html.

[5] Http://www.msnbc.msn.com/id/10454316/ns/nightly_news-nbc_news_investigates/t/pentagon-spying-americans/ (describing a "secret 400-page Defense Department document" that included information collected by the DOD on "nearly four dozen anti-war meetings or protests" in contravention of strict guidelines that limit the extent to which DOD can collect information on U.S. persons).

[6] Https://www.nytimes.com/2005/12/16/politics/16program.html.

[7] Http://www.washingtonpost.com/wp-dyn/articles/A11413-2004May8.html.

[8] Http://www.washingtonpost.com/wp-dyn/articles/A2576-2005Mar2.html.

[9] Http://www.washingtonpost.com/wp-dyn/content/article/2005/07/26/AR2005072601792_pf.html.

[10] Http://www.aclu.org/national-security/fact-sheet-extraordinary-rendition.

2

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

countries such as Afghanistan, Poland, Romania, and Ethiopia. *See* Stephen Grey, "Extraordinary Rendition," *Frontline*, PBS (Nov. 6, 2007).[11]

Throughout this time, the Intelligence Oversight Board (IOB) had a mandate to "oversee the Intelligence Community's compliance with the Constitution and all applicable laws, Executive Orders, and Presidential Directives." *President's Intelligence Advisory Board and Intelligence Oversight Board*, "About the PIAB," whitehouse.gov.[12] It appears to have failed miserably at that task.

### B.     The Intelligence Oversight Board

President Ford created the IOB by Executive Order in 1976 to act as a watchdog over the intelligence agencies. Exec. Order ("E.O.") No. 11,905; *see also* Charlie Savage, "President Weakens Espionage Oversight," *Boston Globe* (March 14, 2008).[13] The IOB was set up to combat the abuses uncovered by the Rockefeller Commission's investigation in the mid-1970s, which found that intelligence agencies had intercepted and read Americans' mail, performed surveillance on civil rights leaders and other dissidents, and had orchestrated assassination attempts on foreign leaders. *Id.*; "PIAB History," *President's Intelligence Advisory Board & Intelligence Oversight Board*, whitehouse.gov.[14] The IOB was designed to be a "Presidential-level body with specific oversight responsibilities for the legality and propriety of US intelligence activities," "PIAB History," *id.*, and is supposed to provide reports to the President and Attorney General on intelligence activities that may be "unlawful or contrary to executive order." "About the PIAB," *id.*

One of the IOB's chief functions has been to review reports of intelligence violations submitted by members of the Intelligence Community, a group that includes each of the Defendants.  *See* 50 U.S.C. § 401a(4) (defining the "Intelligence Community"); E.O. No. 12,863 § 2.4. From September 13, 1993 through February 29, 2008, Executive Order 12,863 required the intelligence agencies to "report to the IOB at least on a quarterly basis and from time to time as

---

[11] Http://www.pbs.org/frontlineworld/stories/rendition701/.

[12] Http://www.whitehouse.gov/administration/eop/piab/about.

[13] Http://www.boston.com/news/nation/washington/articles/2008/03/14/president_weakens_ espionage_oversight/.

[14] Http://www.whitehouse.gov/administration/eop/piab/history.

1   necessary or appropriate, concerning intelligence activities that they have reason to believe may be
2   unlawful or contrary to Executive order or Presidential directive." *Id.* § 2.4.

3       On February 29, 2008, Executive Order 13,462 replaced Executive Order 12,863 and
4   significantly modified the intelligence oversight role of the IOB. The Intelligence Community
5   agencies were still required to "[r]eport to the Intelligence Oversight Board [and the Director of
6   National Intelligence] concerning any intelligence activities of their organizations that they have
7   reason to believe may be unlawful or contrary to Executive order or Presidential directive,"
8   although they were no longer required to do so on a regular basis. *See* E.O. No. 12,333 § 1.7(d), as
9   referenced by E.O. 13,462 § 7(a)(i). Executive Order 13,462 also expanded the intelligence
10  oversight role of the ODNI by requiring the ODNI to issue guidelines to agencies concerning
11  which activities must be reported to the IOB. The Order also changed the roles of ODNI and the
12  IOB by appointing ODNI as an intermediary between the Intelligence Community and the IOB;
13  ODNI would now review and summarize agency reports before they were sent to the IOB. E.O.
14  No. 13,462 § 7.

15      **C.    EFF's Freedom of Information Act Requests For Records Related to
            Intelligence Violations and Defendants' Production**
16

17      On February 25, 2008, EFF faxed FOIA request letters to the CIA, DHS's components
18  Office of Inspector General (OIG) and Office of General Counsel (OGC), DOD, Defense
19  Intelligence Agency, National Security Agency (NSA), FBI, ODNI, Department of Energy (DOE)
20  and Department of State (DOS) requesting copies of all reports submitted by each agency to the
21  IOB pursuant to Section 2.4 of Executive Order 12,863 from January 1, 2001 through February 25,
22  2008. On June 19, 2009, EFF faxed similar letters to the CIA, DHS's components OIG and OGC,
23  DOD, DIA, NSA, DOJ's components FBI and Office of Attorney General (OAG), ODNI, DOE
24  and DOS.  The letters requested copies of all records created pursuant to each agency's role under
25  Executive Order 13,462.

26      After the agencies failed to timely respond to each set of requests, EFF filed suit on July 22,
27  2009, seeking the immediate processing and release of all improperly withheld records. *See* Compl.
28  (Dkt. 1). On December 21, 2009, the Court granted in part Plaintiff's motion for partial summary

4

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

judgment and ordered Defendants to produce records according to the schedule laid out in Docket No. 38.

After almost two years of negotiations and multiple rounds of productions from each Defendant, the Defendants have completed processing and produced records in response to EFF's requests as described in detail in Defendants' affidavits, withholding a significant amount of material in whole or part.[15] *See* Decl. of Margaret B. Baines, Office of the Inspector General (IG) of the United States Army (Baines Decl.); Decl. of Andrew D. Fausett, DHS (Fausett Decl.); Decl. of John F. Hackett, ODNI (Hackett Decl.); Decl. of David M. Hardy, FBI, (Hardy Decl.); Decl. of Caryn L.M. Hargrave, Office of the General Counsel of the DOD (Hargrave Decl.).

Due to the large quantity of documents at issue in this case and to ease the burden on the Court, the parties have agreed on a subset of FBI and DOD's documents to serve as a sample for those agencies' *Vaughn* submissions. These documents are described further in the Hardy, Hargrave, and Baines Declarations.[16] *See* Hardy Decl. ¶ 4; Hargrave Decl.¶ 2-3; Baines Decl.¶ 3-4. DHS and ODNI's *Vaughn* submissions address all documents in their productions, except those for which the parties have agreed EFF will not challenge. *See* Dkt. Nos. 57, 62.

## III.   ARGUMENT

### A.   The Freedom of Information Act and the Standard of Review

The FOIA is intended to safeguard the American public's right to know "what their Government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

---

[15] The parties have agreed to significant narrowing of issues as described in stipulations submitted at Docket Numbers 57 and 62. Plaintiff also dismissed the following agencies or components, which were originally parties to the suit: DOE, DOS, OAG, and CIA. *See* Dkt. Nos. 55, 58.

[16] The parties agreed that the DOD sample would include summary reports produced by the Office of the Assistant to the Secretary of Defense (Intelligence Oversight) (ASTD(IO) for the quarters where those exist in substantive form. *See* Hargrave Decl. ¶ 2 (describing ASTD(IO) reports). For quarters for which those do not exist, the parties agreed that the Department of the Army Inspector General's (DAIG) reports would serve as the sample documents.

5

Case No. 09-CV-03351 SBA     OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

"[D]isclosure, not secrecy, is the dominant objective of the [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Supreme Court has stated that "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose." *Reporters Comm.*, 489 U.S. at 773.

The FOIA requires an agency to disclose agency records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). It is well established that these "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act," *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), and if the requested information does not fit squarely into one of these categories, the law requires federal agencies to make it available to the general public. *NLRB,* 437 U.S. at 221 (1978); *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1116 (9th Cir. 1988) (same). The exemptions "have been consistently given a narrow compass," and agency records that "do not fall within one of the exemptions are improperly withheld[.]" *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n*, 861 F.2d at 1115. Summary judgment is proper when the moving party shows that "there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 779 (N.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party who bears the burden of proof on an issue at trial "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id*. "In contrast, a moving party who will not have the burden of proof on an issue at trial can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*.

A court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions to the FOIA's broad presumption of disclosure. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's

6

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). When claiming one of FOIA's exemptions, the agency bears the burden of providing a "'relatively detailed justification' for assertion of an exemption and must demonstrate to a reviewing court that records are clearly exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). An agency may submit affidavits to satisfy its burden, but "the government may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979) (internal quotation marks omitted). All doubts as to whether a FOIA exemption applies are resolved in favor of disclosure. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

**B.    EFF is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records**

As described in detail below, Defendants have failed to satisfy their burden of proving that they have released all non-exempt material in response to EFF's FOIA requests. As a result, the Court should deny the government's motion for summary judgment and grant EFF's cross-motion, requiring Defendants to release all material they have improperly withheld under the FOIA.

**1.    Defendants Have Failed to Meet the Procedural Requirements Necessary to Sustain Their Burden Under the FOIA**

In *Vaughn v. Rosen*, the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must satisfy in order to carry its burden. 484 F.2d 820, 828 (D.C. Cir. 1973). *Vaughn* requires that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent.*, 566 F.2d at 251 (citing *Vaughn*);[17] *see also Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (applying the *Vaughn* requirements). The purpose of an agency's

---

[17] We refer to each agency's affidavits and indices together as its "*Vaughn* submission."

7

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*Vaughn* Index and accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* (citing *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)). According to *King*, "[s]pecificity is the defining requirement" of an agency's *Vaughn* submission, and affidavits cannot sustain summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." 830 F.2d at 219 (footnote omitted). As the court concluded in *King*, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Id.* at 224 (footnote omitted). Whether the government's *Vaughn* submissions are adequate "is a question of law reviewed *de novo*." *Weiner*, 943 F.2d at 978 (citing *Binion v. DOJ*, 695 F.2d 1189, 1193 (9th Cir. 1983)).

Here, as we discuss more fully below in the context of specific exemption claims, the government has submitted several classic examples of the type of conclusory affidavits that the courts have long rejected. The inadequacy of Defendants' *Vaughn* submissions leaves EFF and the Court unable to assess the validity of Defendants' claims that the disputed material is exempt from disclosure under Exemptions 1, 5 and 7. When an agency seeks to withhold information, it must "specifically identify[] the reasons why a particular exemption is relevant and *correlat[e] those claims with the particular part of a withheld document* to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (emphasis added) (citations and internal quotation marks omitted). Based upon that failure alone, the Court should deny the government's motion.

**2. DOD, FBI and DHS Have Improperly Withheld Records Under Exemption 1**

DOD, FBI and DHS have invoked Exemption 1 to withhold information from several hundred pages of records as noted in their Motion and *Vaughn* submissions.[18] *See* Def. Mot. for Summ. J. ("Def. Mot.") at 6-8 (citing declarations). Exemption 1 allows agencies to withhold records that are "(A) specifically authorized under criteria established by an Executive order to be

---

[18] ODNI has withheld records under Exemption 1 but has done so co-extensively with Exemption 3 throughout its production. Plaintiff does not challenge these withholdings. *See* Dkt. No. 62.

8

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. 552(b)(1). Because the records at issue in this case date from 2001 through 2009, Executive Orders 12,958 and 13,292 (amending E.O. 12,958 in March 2003) are applicable.[19] Pursuant to these orders, the government may withhold properly classified information such as intelligence activities, intelligence sources or methods, and cryptology. E.O. 12,958 § 1.5. However, the government may not classify information to "conceal violations of the law, inefficiency, or administrative error;" to "prevent embarrassment;" or "to prevent or delay the release of information that does not require protection." E.O. 12,958 § 1.8.

FOIA allows requesters to challenge the government's withholdings under Exemption 1 and "requires the district court to review the propriety of the classification." *Wiener*, 943 F.2d at 980. Although an "agency's classification decisions are accorded substantial weight," *id.*, the government still has the burden to sustain its claims under Exemption 1 by providing declarations that are "sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Int'l Counsel Bureau v. DOD*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (citing *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) and noting "deference is not equivalent to acquiescence").

### (a)   DOD and FBI Have Failed to Support Their Exemption 1 Claims with Sufficiently Detailed Justification

Defendants argue that their *Vaughn* submissions "fully support application of Exemption 1," *see* Def. Mot. at 7, yet DOD and FBI's *Vaughn* submissions provide the same boilerplate justifications for withholding records that courts have refused to accept in many past cases. Because their *Vaughn* submissions are categorical, lack specificity, and fail to tie the general harm claimed with the actual record or document at issue, their Exemption 1 claims must fail.[20]

---

[19] The applicable Executive Order is the order in place when the relevant classification decisions were made. *See Lesar v. DOJ*, 636 F. 2d 472, 479-80 (D.C. Cir. 1980); *Wiener*, 943 F.2d at 979. As the amendments in Executive Order 13,292 did not substantially change the sections of Executive Order 12,958 relevant to this FOIA action, Plaintiff will cite to E.O. 12,958 throughout this brief.

[20] DHS also withheld information in three documents pursuant to Exemption 1. *See* Fausett Decl. Ex. A (Doc. Nos. 25, 27, 28). While Plaintiff is challenging DHS's Exemption 1 claims, *see* Sec. 2.b *infra*, Plaintiff does not argue DHS's *Vaughn* submission lacked specificity.

**(i)** ***DOD and Its Component DAIG's Exemption 1
Claims Fail for Lack of Specificity***

DOD and its component DAIG's *Vaughn* submissions are general, categorical and repetitive and fail to meet DOD's burden to sustain an Exemption 1 claim.

*Vaughn* submissions that offer nothing more than a "categorical description of redacted material coupled with [a] categorical indication of anticipated consequences" fall "short of establishing that release could reasonably be expected to harm national security." *Int'l Counsel Bureau,* 723 F. Supp. 2d at 60 (citing *Campbell*, 164 F.3d at 30). In the instant case, DOD and its component DAIG's *Vaughn* submissions are precisely the "sort of 'overly vague 'and 'sweeping' declaration that 'will not, standing alone, carry the government's burden.'" *Id.* (citing *Larson v. Dep't of State*, 565 F. 3d 857, 864 (D.C. Cir. 2009)). For example, in a 9-page DAIG 2008 quarterly report discussing questionable intelligence activities, there are no fewer than 14 separate Exemption 1 withholdings representing possibly as many individual instances of intelligence violations. *See* Decl. of Jennifer Lynch (Lynch Decl.) Ex. 1 (Bates pages 1485-93). However, the *Vaughn* entry purporting to describe the information withheld is almost word-for-word the same as every other *Vaughn* entry in the DAIG's submission. *See* Baines Decl. Ex. A at 18. The only somewhat specific phrase in the entry notes that the "information redacted [in the 2008 report]. . . discusses electronic intelligence collection methods, human intelligence sources, and counter-intelligence methods." *Cf. e.g., id.* at 20 (using the same terms but changing the word order: "counter-intelligence methods, human intelligence sources, and electronic intelligence collection methods"); *id.* at 16 (adding "methods for collecting human intelligence").[21]

DOD's *Vaughn* entries describing the Exemption 1 withholdings in its ASTD(IO) Summary Reports are similarly non-specific. For example, the second quarter 2006 ASTD(IO) report

---

[21] Similarly, in a 32-page quarterly report from 2007, DAIG redacted approximately 25 paragraphs under Exemption 1 relating to what appears to be approximately 11 separate instances of intelligence violations. *See* Lynch Decl. Ex. 2 (DAIG Q1 2007 Report, Bates 864-895). However, the *Vaughn* entry for this report notes merely that the information redacted "discusses human intelligence sources, methods for collecting human intelligence, and the details of clandestine foreign operation." *See* Baines Decl. Ex. A at 4; *cf. id.* at 6 (which uses the same terms and adds "electronic intelligence collection methods"); *id.* at 8 (which removes "electronic intelligence collection methods" and adds "counter-intelligence methods").

---

10

includes several large block redactions, yet the *Vaughn* entry for the report merely quotes the relevant statutory language and notes generally that the information redacted "pertains to the location of clandestine facilities, electronic intelligence collection methods, the details of a particular clandestine foreign operation, and human intelligence sources." *See* Lynch Decl. Ex. 3; Hargrave Decl. Ex. A (Bates pages 41-49). *Cf. id.* (Bates pages 19-23) (adding "methods for collecting human intelligence"); *id.* (Bates pages 1257-60) (adding "identifying information regarding a clandestine agent").[22]

DOD and DAIG's lack of specificity is particularly problematic given that EFF has waived its claims to material withheld under Exemption 3. *See* Hargrave Decl. ¶ 10. In some cases, DOD has withheld material solely under Exemption 1, while in other cases the agency withheld material under both Exemptions 1 and 3. And yet the *Vaughn* entries make it impossible to tell which reasons cited pertain to which material withheld. *See, e.g.,* Lynch Decl. Ex. 4 (Bates pages 1218-22) (redacting several paragraphs under both (b)(1) and (b)(3), one paragraph under (b)(1) and (b)(5), and one paragraph solely under (b)(1)). DOD's *Vaughn* submission thus fails to provide EFF "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener*, 943 F.2d at 977 (citing *King*, 830 F.2d at 218).

Given DOD and its component DAIG's failure to produce a sufficiently detailed *Vaughn* submission, the Court should order the agency to release the withheld records.

**(ii)** ***FBI's Exemption 1 Withholdings Fail for Lack of Specificity***

FBI's categorical *Vaughn* submission also "fails to state specific harms that may result from the release of a particular document," *Wiener*, 943 F. 2d at 981, and therefore fails to meet the agency's burden on summary judgment. *See id.* (holding a similar boilerplate *Vaughn* submission

---

[22] *Vaughn* entries for other DOD reports are no better. For example, the DOD's report from the fourth quarter 2005 includes several large block redactions under Exemption 1, *see* Lynch Decl. Ex. 5, but the *Vaughn* entry for that report notes merely that the information "pertains to the oversight of intelligence activities; electronic intelligence collection methods; and details of a particular clandestine foreign operation." Hargrave Decl. Ex. A (Bates pages 9-14). This entry is almost exactly the same as entries for Bates pages 19-23, 41-49, 1212-17, and 1227-32, and very similar to almost all of DOD's other *Vaughn* entries.

---

11

failed to support the FBI's Exemption 1 claims); *see also*, *Campbell*, 164 F. 3d at 31, 37 (D.C. Cir. 1998) (FBI declaration did not "draw any connection between the documents at issue and the general standards that govern the national security exemption.").

Two recent district court opinions have harshly criticized FBI *Vaughn* declarations that use the same or very similar language as the *Vaughn* declaration the FBI submitted in the instant case. *See ACLU v. ODNI,* No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011); *ACLU of Wash. v. DOJ*, No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011).[23] The *ACLU v. ODNI* court held "[w]ith respect to the balance of [FBI's] Exemption 1 withholdings . . . the Hardy Declaration makes little effort to describe the documents at issue or explain why they reflect intelligence 'methods,' 'activities,' or 'capabilities.'" 2011 U.S. Dist. LEXIS 132503 at *33 (specifically criticizing Hardy Decl. submitted in that case at ¶¶ 40, 41); *cf.* Hardy Decl. (filed in this case) at ¶¶ 26, 27 (using the same or very similar language). The court concluded the declaration "fail[ed] to fulfill the 'functional purpose' of the *Vaughn* affidavit" and therefore the FBI failed to carry its burden on most of its Exemption 1 claims. 2011 U.S. Dist. LEXIS 132503 at *33-34.

In *ACLU of Wash. v. DOJ*, the court similarly criticized the FBI for "in effect, parrot[ing] the language of the Executive Order (in the disjunctive) and declar[ing] that the redacted information falls within one or more of the categories covered by the order." 2011 U.S. Dist. LEXIS 26047 at *10 (referencing Hardy Decl. submitted in that case at ¶¶ 31, 32, 34, 35, 39); *cf.* Hardy Decl. (filed in this case) at ¶¶ 26, 27, 28, 39, 62, 85 (using the same or very similar language). The court held "[t]his categorical approach is 'clearly inadequate.'" *Id.* (citing *Wiener*, 943 F.2d at 978-79).[24]

The Hardy Declaration submitted in this case is internally repetitive and uses boilerplate

---

[23] To aid the court, EFF has attached relevant pages from the Hardy Declarations submitted in these cases as Exhibits 6 and 7 to the Lynch Declaration. Plaintiff has also included a table that shows the similarities among all three declarations. Lynch Decl. Ex. 8.

[24] Of note, both cases criticized the FBI's *Vaughn* submission for lack of specificity under Exemption 7 as well. *See* Secs. 4-6, *infra*.

12

Case No. 09-CV-03351 SBA   OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

text extensively to describe information that varies widely from document to document;[25] it thus fails to adequately tie the harms claimed to the release of a specific document. *See Wiener*, 943 F. 2d at 981. For example, in a four-page 2008 IOB Report concerning "a highly sensitive joint investigation of the FBI and US Army," Hardy Decl. Ex. I at 1, there are no fewer than nine full paragraphs redacted in whole or part under Exemption 1, including almost the entire page on Cardozo-IOB-69. *See* Lynch Decl. Ex. 9 (Cardozo-IOB-67-70). However, Mr. Hardy's description of the material withheld notes merely that the sections redacted under Exemption 1 discuss *either* "standard terminology / phraseology," Hardy Decl. ¶ 39, *or* the "character of the case." Hardy Decl. ¶ 40.[26] It is not clear which categorical claim applies to which redacted section; nor is it clear, given Mr. Hardy's use of the disjunctive, what the information in the document includes and what the true harm of disclosing it would be. *See ACLU of Wash.*, 2011 U.S. Dist. LEXIS 26047 at *11 (criticizing Hardy Decl. specifically on its *Vaughn* entry describing "standard terminology/ phraseology" and "unique record identifiers"); *see also Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 878-879 (D.D.C. 1991) (same).

FBI's *Vaughn* entries for the documents it referred to the Army and to an undisclosed "other government agency,"[27] Hardy Decl. ¶¶ 99-100, are also insufficient. The *Vaughn* entry for the eight pages (three documents) FBI referred to the undisclosed "OGA" and withheld in full is particularly glaring. *See* Hardy Decl. ¶ 100. Not only does FBI fail to disclose the name of the "OGA," but it also fails to describe with any specificity the subject matter of the classified information or any information about the original classification authority. *See id*. Given the dearth of information in this entry, it is impossible for EFF to meaningfully contest the soundness of the

---

[25] The vast majority of the FBI's documents discuss an individual intelligence violation—such as improper use of an NSL to obtain records beyond those the FBI can legally access; over-collection of intercepts unrelated to a suspect; or making false statements in court declarations—that the FBI reported to the IOB. Lynch Decl. Ex. 10 (Hofmann-IOB-1075, -594, -2374). As such the material discussed varies significantly from document to document. The FBI's categorical declaration fails to account for this variation.

[26] The FBI withholds information on no fewer than 108 individual IOB reports describing potentially as many individual intelligence violations based solely on a non-specific 7-line paragraph that vaguely describes the FBI's term "character of the case."

[27] EFF does not challenge the document referred to the CIA. *See* Hardy Decl. ¶¶ 91-98.

13

1   withholding.

2           The entry for the Army document is not much better; it merely restates the language of the

3   Executive Order—the entry literally states that the document "relates to intelligence activities,

4   sources or methods, and crypto logic," Hardy Decl. ¶ 99—and thus fails to draw any connection

5   between the document at issue and the "general standards that govern the national security

6   exemption." *Campbell*, 164 F. 3d at 31.

7           As the court noted in *Codiron v. DOJ*, 310 F. Supp. 2d 44 (D.D.C. 2004), "[i]t might be

8   just as vacuous—and just as much an abdication of the court's *de novo* review duty—to allow the

9   FBI to prevail time and time again on the same, 50-word boilerplate language instead of just two

10  words ('national security'), regardless of the content of the withheld information." 310 F. Supp. 2d

11  at 53. The Court should not abdicate its duty here, but must engage in true *de novo* review of the

12  Bureau's withholdings and order FBI to disclose records improperly withheld under Exemption 1.

13                          **(b)     Because the Records Defendants Withheld Under
                                      Exemption 1 Concern Illegality and Misconduct, They
14                                    Are Not Properly Classified and Must Be Released**

15          Defendants have argued the material they withheld under Exemption 1 is "properly

16  classified." Def. Mot. at 6-8. However, the government may not classify information—and thus

17  may not withhold it under Exemption 1—to "conceal violations of the law, inefficiency, or

18  administrative error;" to "prevent embarrassment;" or "to prevent or delay the release of

19  information that does not require protection[.]" E.O. No. 12,958 § 1.8(a); *see, e.g.*, *Goldberg v.*

20  *Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (stating court's obligation to "ensure that

21  information *not* be classified in order to conceal violations of law, inefficiency, or administrative

22  error; [or] to prevent embarrassment to a person, organization, or agency"). Because the very

23  subject matter of this case concerns reports of violations of the law, misconduct, and activities that

24  have embarrassed the federal government, it is highly likely that at least some of the information

25  withheld under Exemption 1 is not properly classified. 5 U.S.C. § 552(b)(1)(B) (material withheld

26  must be "in fact properly classified pursuant to such Executive order"). At a minimum, because

27  these documents on their face concern illegal activities, the Court must review the agencies'

28  Exemption 1 claims with heightened scrutiny.

                                                   14

As noted above, the IOB was created to monitor the Intelligence Communities' activities and to try to prevent the illegal surveillance and other intelligence violations of the 1960s and 70s from recurring. To enable the IOB to perform that duty, the Intelligence Community agencies are required to submit reports of intelligence activities that "they have reason to believe may be unlawful or contrary to Executive order or Presidential directive." E.O. No. 12,863 § 2.4. The records Defendants have produced in this case are those IOB reports; as such, they necessarily describe intelligence activities that Defendants believe "may be unlawful or contrary to Executive order or Presidential directive." *Id*. For this reason alone, there should be a strong presumption against their classification.

The unredacted portions of Defendants' documents only reinforce this presumption. For example, the unredacted portions of DOD's documents shows the DOD components consistently engaged in illegal surveillance of Americans and civilians in the years following September 11, 2001[28] and in extensive abuses of detainees and civilians in Iraq and Afghanistan.[29] Similarly, the unredacted portions of DHS records discuss Senators Feingold and Rockefeller's concerns over DHS's use of "derogatory information" and "criticisms of Americans' First Amendment-protected political and academic views" as a basis for collection of information on U.S. Persons. Lynch Decl. Ex. 15 (DHS Doc. Nos. 25, 27, 28).[30] The FBI's records, too, include evidence of rampant abuse of

---

[28] Reports from 2005 and 2006 discuss DOD surveillance of and collection of information on US organizations such as Planned Parenthood and persons who were engaging in First Amendment-protected activity, including anti-war and anti-recruiting activities in Alaska, Ohio, and Florida. *See* Lynch Decl. Ex. 5 (2005 Q4 ASTD(IO) Rept. at 10, 12); (2006 Q1 ASTD(IO) Rept. at 39); (2006 Q2 ASTD(IO) Rept. at 47). Another report from 2004 describes illegal intelligence gathering on US persons who attended a conference on Islamic law at the University of Texas School of Law. *See* Lynch Decl. Ex. 12 (2004 Q1 ASTD(IO) Rept. at 1234-35). Another report discusses three NSLs an Army special agent issued for customer phone records, despite the fact that 18 U.S.C. §2709 only authorizes the FBI to issue NSLs. *See* Lynch Decl. Ex. 13 (2004 Q2 ASTD(IO) Rept. at 1240).

[29] Several reports discuss widespread detainee abuse and torture during interrogations; unauthorized detention, interrogation and prisoner transfer operations; and the assault and death of an Afghan citizen in Army custody. *See, e.g.*, Lynch Decl. Ex. 11 (Q1 2006 ASTD(IO) Rept. at 38); Ex. 5 (Q4 2005 ASTD(IO) Rept. at 14); Ex. 3 (Q2 2006 ASTD(IO) Rept. at 48-49); Ex. 14 (Q3 2006 ASTD(IO) Rept. at 65).

[30] The Senators' letter also expresses concern with "DHS/I&A's overbroad efforts to seek information on U.S. Organizations conducting legal activities with immigrant communities . . . including on structures, organizations, locations, and groups involved in facilitating Somali

15

Case No. 09-CV-03351 SBA   OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

the Bureau's national security letter ("NSL") authority and multiple instances of FBI agents conducting surveillance without court authorization.[31]

Defendants' reports often note that the activities discussed were unlawful, violated regulations, were of "serious concern," or could cause "political embarrassment."[32] Even the government's *Vaughn* submissions describe these records as relating to "significant questionable activities," Baines Decl. ¶ 4, or as discussing investigative activities "contrary to the Attorney General Guidelines . . . and/or laws, Executive Orders, or Presidential Directives which govern FBI foreign counterintelligence and international terrorism investigations." Hardy Decl. ¶ 37.

While EFF acknowledges that there may be *some* legitimately classified material within these records, given the vague and sweeping breadth of FBI, DOD and DAIG's *Vaughn* submissions, the patterns of illegal conduct documented in the records, and the context in which the reports were produced, it seems likely that at least some material has been improperly classified under E.O. 13,526. *See ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (noting that inadequate supporting affidavits "raise concern" that defendant's withholding of classified information "is less to protect intelligence activities, sources or methods than to conceal possible 'violations of law'. . . or 'inefficiency' or 'embarrassment'" to the agency); *see also ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *23-24 (finding NSA declaration failed to show how disclosure of records related to "*misuse* and abuse" of the FISA Amendments Act would pose a risk to national security (emphasis in original)). These facts only underscore the need for sufficiently specific *Vaughn* submissions and this Court's thorough *de novo* review of Defendants' exemption claims. Given the agencies' inadequate *Vaughn* submissions and the context of the

---

population settlement and resettlement in the United States . . . in that absence of any indication of wrongdoing" *Id*. at 57.

[31] *See, e.g.*, Lynch Decl. Ex. 16 (FBI IOB Matter 2006-215 at Hofmann-IOB-654-56); (IOB Matter 2006-226 at Hofmann-IOB-699-701); (FBI IOB 2006-235 at Hofmann-IOB-696); (FBI IOB Matter 2006-221 at Hofmann-IOB-693).

[32] *See, e.g.*, Lynch Decl. Ex. 16 (FBI IOB Matter 2006-215 at Hofmann-IOB-655); (IOB Matter 2006-226 at Hofmann-IOB-701); (FBI IOB 2006-235 at Hofmann-IOB-696); (FBI IOB Matter 2006-221 at Hofmann-IOB-693). *See also* Lynch Decl. Ex. 17 (FBI IOB Matter 2006-281 at Hofmann-IOB-774);  (FBI IOB Matter 2006-307 at Hofmann-IOB-769, 771); (FBI IOB Matter 2008-1194 at Cardozo-IOB-70).

16

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1   material at issue, they have not justified their withholdings under Exemption 1 and are not entitled

2   to summary judgment.

3          **3.      Defendants Have Improperly Withheld Records Under Exemption 5**

4          Defendants have withheld records under Exemption 5, claiming they are protected by the

5   deliberative process privilege, the attorney-client privilege,[33] and the presidential communication

6   privilege. *See* Def. Mot. at 10-16. Exemption 5 provides a narrow exception for "inter-agency or

7   intra-agency memorandums or letters which would not be available by law to a party other than an

8   agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). The Supreme Court has interpreted

9   Exemption 5 to protect records that fall "within the ambit of a privilege against discovery under

10  judicial standards that would govern litigation against the agency that holds it." *Dep't of the*

11  *Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Carter v. Dep't of*

12  *Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002).  For each claim, the government has failed to

13  show the records withheld fit into one of the narrow privileges available under Exemption 5;

14  therefore, Defendants have not met their burden and the records must be disclosed.

15          **(a)      Defendants Have Improperly Withheld Records Under**
             **the Deliberative Process Privilege**
16

17         Defendants have claimed Exemption 5 to withhold hundreds of pages of responsive records

18  in their entirety. *See* Hackett Decl. ¶¶ 23, 26; Fausett Decl. ¶ 16.  Because ODNI's *Vaughn*

19  submission lacks specificity, and because both ODNI and DHS' records are final opinions or

20  contain purely factual information, they must be released.

21         The deliberative process privilege protects records that reflect the "opinions,

22  recommendations and deliberations comprising part of a process by which governmental decisions

23

24  [33] On Hofmann-IOB-1070, 3487 and ODNI Bates-stamped pages 212-213, the FBI also withheld
    material based on the attorney work product privilege incorporated into Exemption 5. Hardy Decl.
25  ¶¶ 44, 73. However, Defendants' moving papers fail to discuss the privilege or the records withheld
    under this privilege. Nevertheless, the claim fails because the work product privilege only applies
26  to documents "prepared in contemplation of litigation." *Dow Jones & Co. v. Dep't of Justice*, 724
    F. Supp. 985, 989 (D.D.C. 1989). Because the FBI has failed to describe any litigation relevant to
27  the withheld records, the FBI has not satisfied its burden to withhold the records under the work
    product privilege.
28

and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal citations omitted). An agency record may be withheld pursuant to this narrow privilege only if it is "both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978)); *see also Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089, 1093 (9th Cir. 1997).

To support a deliberative process claim, an agency must "establish[] the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing *Strang v. Collyer*, 710 F. Supp. 9, 11 (D.D.C. 1989), *aff'd*, 899 F.2d 1268 (D.C. Cir. 1990) (internal quotation marks omitted)). An agency must also "*identify a specific decision* to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094 (emphasis added); *see also Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987). As detailed below, Defendants have failed to meet their burden to withhold documents under the deliberative process privilege.

(i)    ***ODNI's Vaughn Submission Fail to Satisfy the Heightened Specificity Required to Withhold Records Under the Deliberative Process Privilege***

In cases involving the deliberative process privilege, the need for specificity in defendants' *Vaughn* submissions is particularly acute. *See Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004). The "first step" in determining whether a document is properly withheld as deliberative under Exemption 5 "is to examine the context in which the materials are used." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal citations and quotations omitted); *see also NRDC v. DOD*, 388 F. Supp. 2d 1086, 1097 (C.D. Cal. 2005) (citing *Judicial Watch*, 297 F. Supp. 2d at 260). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch*, 297 F. Supp. 2d at 257.

ODNI's *Vaughn* submission fails to provide the heightened level of specificity necessary to

18

withhold hundreds of pages of responsive records under the deliberative process privilege. For example, ODNI has withheld 72 pages of responsive records under the single, non-specific description of "Interagency Emails Regarding a Reported IOB Matter." Hackett Decl. ¶ 31, Ex. J at 29 (Doc. No. 213). ODNI claims all 72 pages are deliberative because they contain a "[r]equest to an agency for additional information . . . and subsequent internal ODNI email providing views on the reported matter." *Id*. Yet ODNI's *Vaughn* entry is missing critical information concerning the nature of the IOB matter and the agency records: for example, ODNI's *Vaughn* submission does not describe the agency deliberations concerning the IOB matter, the authors and recipients of the email, the "function and significance of the document(s) in the agency's decisionmaking process, the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotations and citations omitted). Aside from broadly asserting that the emails reflect the "views" of ODNI employees, ODNI's *Vaughn* description fails to detail how the emails are even deliberative. This is a paradigmatic example of the insufficiency of ODNI's *Vaughn* submission.

In another example, ODNI has withheld a twenty-two page "Spreadsheet Tracking ODNI Actions on Reports/Allegations" in its entirety as an "email[] and Inter-agency/Intra-agency Document[]." Hackett Decl. ¶ 31, Ex. J at 10 (Doc. No. 107). The spreadsheet, according to ODNI, is an "[i]nternal tracking spreadsheet of each investigation or report by an IC element and ODNI responses, actions or outstanding questions on each incident." *Id*. ODNI's description of its "tracking spreadsheet," like its description of 72 pages of email, fails to even describe a deliberative process.

ODNI cannot withhold hundreds of pages of records in full under the deliberative process privilege, *see* Hackett Decl. ¶ 23, without providing both this Court and EFF with sufficiently specific *Vaughn* entries to allow an adequate assessment of its withholdings.

19

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

**(ii)**      ***ODNI and DHS Have Improperly Withheld Records***
***Reflecting Final Agency Positions or Opinions***

For an agency record to be withheld under the deliberative process privilege, the agency must identify "a specific decision to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094. Even if a document is predecisional at the time it is prepared, the document can "lose that status if it is adopted, formally or informally, as the agency position on an issue." *NRDC v. DOD*, 388 F.Supp. 2d at 1098 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Here, because Defendants have failed to identify a specific decision to which many of the records at issue preceded and contributed, the records should be treated as the final agency positions and, thus, may not be withheld under the deliberative process privilege.

In particular, ODNI's withholding of "Intelligence Oversight Assessments for the IOB," Hackett Decl. Ex. J at 3-8 (Doc. Nos. 14-19), is improper because the Assessments appear to constitute the agency's final position and evaluation of the Intelligence Community's reporting activity. The fact that these Assessments were then passed on to the IOB does not change their character as "final" decisions of the agency, ODNI. Because these Assessments embody the agency's final policy assessment, they may not be withheld under the deliberative process privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). One document withheld by DHS—a letter from the Acting General Counsel and Inspector General of DHS to the General Counsel of the IOB, *see* Fausett Decl. Ex. A at 8 (Doc. No. 8)—similarly appears to represent DHS' final position when reporting an incident to the IOB. As such, the information is improperly withheld under the deliberative process privilege.

ODNI has withheld other records that likely reflect final agency positions, including "talking points" memos—memos prepared for senior agency officials in preparation for meetings, hearings, or negotiations—and briefing materials. *See Elec. Privacy Info. Ctr. v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007) ("[T]he likelihood" that withheld materials "have been relied upon or adopted as official positions after their preparation . . . is particularly high in the case of" "talking points" and "briefing materials."); *see also N.Y. Times Co. v. DOD*, 499 F. Supp. 2d 501, 514-515

20

(S.D.N.Y. 2007) (holding "talking points and the formulation of responses to possible questions" prepared "to aid in briefing officials and preparing them to answer questions" not properly withheld under Exemption 5). Here, ODNI has withheld records relating to "talking points," Hackett Decl. Ex. J at 13, 42-43 (Doc. Nos. 123, 301, 304, 305) and "briefing materials," *id.* at 10, 13, 16, 30, 33, 34, 37, 42, and 46 (Doc. Nos. 104, 122, 128-29, 224, 255, 262, 279, 301, and 323) both in part and in full, under the deliberative process privilege. As ODNI acknowledges, these talking points and briefing materials were "created for the purpose of preparing the senior ODNI official for matters that he or she may need to discuss." Hackett Decl. ¶ 48. However, because senior officials are responsible for creating agency final decisions and policy, these talking points and briefing materials likely reflect the final agency policy or position, and cannot be withheld under the deliberative process privilege.

ODNI has also withheld several documents in full, claiming they are "drafts" and therefore protected by the deliberative process privilege. While a "draft" version of a document may, in certain circumstances, be legitimately withheld under the deliberative process privilege, "designation of a document as a 'draft' does not automatically trigger proper withholding[.]" *Defenders of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 58 (D.D. C. 2004); *see also Arthur Andersen*, 679 F.2d at 257 ("*Coastal States* forecloses the Agency's argument that any document identified as a "draft" is *per se* exempt.")).

In an effort to narrow the scope of the litigation for both this Court and the parties, EFF withdrew challenges to "draft" documents for which ODNI could provide a final version that had been released to EFF. *See* Hackett Decl. ¶ 26 n. 6 (noting records EFF agreed not to challenge). However, ODNI has failed to support its deliberative process claims for several remaining documents they describe as "drafts." In the absence of either a more sufficiently descriptive *Vaughn* submission or a final agency decision or record to which these "drafts" contributed, ODNI has improperly withheld these records under the deliberative process privilege.

### (iii)    *ODNI Has Improperly Withheld Purely Factual Information*

"[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context" may not be withheld under the deliberative process privilege. *EPA v. Mink*, 410 U.S. 73, 88-89 (1973); *see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1297 (N.D. Cal. 1992) (same). While the rationale behind the deliberative process privilege encourages candor in deliberative discussions, the requirement that facts must be disclosed is intended to enhance the integrity of agency deliberations. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (noting that "the prospect of disclosure is less likely to make an advisor omit or fudge raw facts").

In withholding over seven hundred pages of records in their entirety and 743 pages in part, it is a near-certainty that ODNI has withheld some purely factual material. Some records, in particular, suggest this. For example, the "Spreadsheet Tracking ODNI Actions on Reports/ Allegations," Hackett Decl. Ex. J at 10 (Doc. No. 107) contains details on "each investigation or report by an IC element and ODNI responses, actions or outstanding questions on each incident." *Id.* This spreadsheet likely consists of exactly the type of factual information that must be produced—for example, the date and nature of the investigation or report, as well as the actions taken by ODNI and the reporting agency. *See also* Hackett Decl. Ex. J. at 13 (Doc. No. 130) (withholding record containing the "reported activity [and] actions conducted to date[.]")[34]

The purposes underlying the deliberative process privilege are not served by permitting agencies to shield factual information from disclosure to the public. *See Quarles,* 893 F.2d at 392; *see also NRDC v. DOD*, 442 F. Supp. 2d at 877 (ordering defendant to "disclose the factual material referenced here and additional factual matter" withheld under Exemption 5).

### (b)    **FBI and DHS Have Improperly Withheld Records Under the Attorney-Client Privilege**

To support an Exemption 5 claim under the attorney-client privilege, an agency must demonstrate "that the information is confidential. If the information has been or is later shared with

---

[34] This is likely true for the records DHS withheld under Exemption 5 as well. *See*, *e.g.*, Fausett Decl. Ex. A at 21-9 (Doc. Nos. 18, 28, 33, 34, 2, 5, 8).

third parties, the privilege does not apply." *Mead Data Cent.*, 566 F.2d at 253; *see also In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) ("[A]ny voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege[.]"); *see also Ctr. for Biological Diversity v. OMB*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009) (citing *Mead Data Cent.*). In the case of an organizational client, the confidential communication must be "circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Coastal States*, 617 F.2d at 863 (citing *Mead Data Cent.*).

The FBI has withheld information from the released records on the grounds that the records contain "legal advice provided by OGC to Field Offices regarding actions to be taken." (Hardy Decl. ¶¶ 30, 44, 56). However, because the FBI records in this case are reports prepared for and likely forwarded to the IOB and ODNI, the "legal advice" contained within the FBI's records likely has been disclosed to either or both outside agencies, thus extinguishing the attorney-client privilege. *See Mead Data Cent.*, 566 F.2d at 253.

The one record DHS partially withheld under the attorney-client privilege was a letter to the IOB's General Counsel, Homer Pointer. Fausett Decl. Ex. A at 8 (Doc. No. 8). Like the FBI's attorney-client privilege claims, DHS' similarly fail because sharing privileged information with a third party not covered by the privilege waives it. *See In re Sealed Case*, 877 F.2d at 980.

Thus, because DHS and the FBI have improperly invoked the attorney-client privilege to withhold information for which the privilege has been waived, the records must be released.

### (c)    ODNI Has Improperly Withheld Documents Under the Presidential Communications Privilege

ODNI also asserts the presidential communications privilege to withhold records under Exemption 5. Because ODNI has failed to show that the withheld records called for "direct decisionmaking by the President" or that the President either read, relied, or otherwise made any decisions relating to the withheld records, the records are not properly withheld under Exemption 5 and must be released.

The presidential communications privilege only protects communications reflecting

23

deliberations that the President determines should remain confidential. *United States v. Nixon*, 418 U.S. 683, 708 (1974); *see also In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997) ("*Espy*"). Those communications must be used by the President "in the process of shaping policies and making decisions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977). The presidential communications privilege "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Espy*, 121 F.3d at 752.

The presidential privilege covers documents authored or solicited and received by the President. As such, the Court must "proceed on the basis that 'the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected.'" *Judicial Watch v. DOJ*, 365 F.3d 1108, 1116 (D.C. Cir. 2004) (quoting *Espy*, 121 F.3d at 752). The privilege also extends "down the chain of command" to the President's "immediate White House advisors" within the Office of the President and their staffs. *Id.* at 1115-16. However, the D.C. Circuit has "recognized that the need for the presidential communications privilege becomes more attenuated the further away the advisers are from the President." *Id.* at 1123; *see also id.* at 1115 (noting the hierarchy of presidential advisers) (citing *Espy*, 121 F.3d at 752).

ODNI states that, "because the PIAB and the IOB are presidentially-created boards specifically established to advise the President on national security matters," the records are properly withheld under the presidential communications privilege. Hackett Decl. ¶ 29; Def. Mot. at 14-16. However, "[t]he mere fact that [the record] was communicated with or solicited and reviewed by a White House adviser or his staff is merely a threshold requirement in the first analysis." *CREW v. DHS*, Civ. No. 06-0173, 2008 WL 2872183, *3 (D.D.C. July 22, 2008) (citing *Nixon*, 433 U.S. at 449 and *Judicial Watch*, 365 F.3d at 1113). ODNI's *Vaughn* submission must also show that the withheld records called for the "direct decisionmaking" of the President. *Espy*, 121 F.3d at 752. Defendant has not alleged that the President either read, relied, or otherwise made any decisions relating to the withheld records.

Moreover, as neither the PIAB nor the IOB are within the Office of the President (both are

24

listed as "Other Advisory Boards" on the Whitehouse.gov website),[35] they are not "such immediate

advisers as the Chief of Staff and the White House Counsel." *Judicial Watch v. DOJ*, 365 F.3d at

1109 n. 1. As noted in *Judicial Watch*, the more attenuated the adviser to the President, the less

compelling the need for the presidential communications privilege. *Id.* at 1123. The D.C. Circuit

has held that only records "'solicited and received' by the President or his Office" may be withheld

under the presidential communications privilege. Otherwise, "a broad array of materials in many

areas of the executive branch will become sequestered from public view." *Espy*, 121 F.3d at 749.

Extending the presidential communications privilege to information received by the IOB would be

no less "unprecedented and unwarranted" than extending it to the Office of Management and

Budget (OMB), which is an office within the Executive Office of the President. *See Ctr for

Biological Diversity v. OMB*, 625 F. Supp. 2d 885, 891 (N.D. Cal. 2009). Thus, ODNI has

improperly invoked the presidential communications privilege to withhold information under

Exemption 5.

### 4.    FBI Improperly Withheld Records Under Exemption 7(D)

FBI, the only agency redacting information under Exemption 7(D), has failed to show that

information it withheld was conveyed to the Bureau under an implied grant of confidentiality.[36] As

such it must be disclosed.

Exemption 7(D) allows the government to withhold information compiled for law

enforcement purposes if (1) it "could reasonably be expected to disclose the identity of a

confidential source," or (2) it is information provided by a confidential source and was "compiled

by criminal law enforcement authority in the course of a criminal investigation or by an agency

conducting a lawful national security intelligence investigation." 5 U.S.C. §552(b)(7)(D). The

question under (7)(D) "is not whether the requested *document* is of the type that the agency usually

---

[35] *See* www.whitehouse.gov (listing "White House Staff," "Executive Office of the President," and "Other Advisory Boards" as bodies within the White House; PIAB and IOB are listed under the "Other Advisory Boards" category)

[36] The FBI has not argued information it redacted under Exemption 7(D) was withheld based on an express grant of confidentiality. *See* Def. Mot. at 18-19 (referencing "express assurance of confidentiality" but presenting no argument on it); Hardy Decl. ¶¶ 34-35, 45, 79.

25

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993); *see also Rosenfeld v. DOJ*, 57 F.3d 803, 814 (9th Cir. 1995) (noting *Landano's* requirement that a court may "infer that the informant received an implied assurance of confidentiality" *only* if certain factors make "it reasonable to infer that the informant expected such an assurance"). Further, an agency cannot show confidentiality merely by claiming "that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (citing *Landano*, 508 U.S. at 171, 181).

The Supreme Court in *Landano* set out several factors to determine if a source "spoke with an understanding that the communication would remain confidential." 508 U.S. at 172. These include: (1) "the character of the crime at issue;"  (2) "the source's relation to the crime;" (3) whether the source received payment; and (4) whether the source has an "ongoing relationship" with the law enforcement agency and typically communicates with the agency "only at locations and under conditions which assure the contact will not be noticed." *Id.* at 179; *see also Roth*, 642 F.3d at 1186 (finding implied confidentiality, given the "brutal nature of the quadruple homicide [discussed in the case] and the source's relationship with at least some of the victims").

The FBI has failed to do more than vaguely assert that third parties "provided specific detailed information" related to "national security investigations," that disclosing their names "could have disastrous consequences," and finally that they have "placed themselves in harm's way." Hardy Decl. ¶¶ 45, 79. This is insufficient under the factors laid out in *Landano*. 508 U.S. at 179. It is also insufficient, given the facts involved in the records produced in this case. In both *Landano* and *Roth*, the court found factual situations involving violent crimes would lead most people to believe the information they provide to the FBI was provided under some form of confidentiality. *See Landano*, 508 U.S. at 179 (witness to a gang murder); *Roth*, 642 F.3d at 1186 (brutal quadruple homicide). The same cannot be said here. FBI has not argued that sources redacted from *these* records provided information to the FBI related to a violent crime or that they had a relationship to the possible criminal activity that could place them in harm's way. In fact it appears from the non-redacted text in the reports that FBI is merely attempting to withhold names

26

of communications service providers who are required by law to disclose information about their subscribers to the FBI when presented with a lawful request. *See, e.g.,* Lynch Decl. Ex. 18 (IOB Matter 2004-75 at Hofmann-IOB-317-18 ("On [redacted] contacted *the legal department at [redacted]* of [redacted] e-mail accounts being intercepted, and *informed [redacted]* that interceptions must cease at [redacted]" (emphasis added)).[37] The FBI has provided no facts to support a claim that communications service providers  (or any other "sources" in these records) provide information to the FBI under an implied grant of confidentiality. As such, this information must be released.

### 5.    Defendants Improperly Withheld Records Under Exemption 7(E)

Defendants, especially FBI, have withheld a significant amount of information pursuant to Exemption 7(E), arguing this material is protected from disclosure. *See* Def. Mot. at 19-20. Exemption 7(E) allows the government to withhold documents "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions" only if it demonstrates a reasonable risk that criminals will use them to circumvent detection, apprehension or prosecution. 5 U.S.C. § 552(b)(7)(E); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005).[38] The Ninth Circuit has held that Exemption 7(E) "only exempts investigative techniques not generally known to the public," *Rosenfeld*, 57 F.3d at 815, and does not protect policies or legal standards that regulate an agency's dealings with members of the

---

[37] *See also* Lynch Decl. Ex. 18 (IOB Matter 2004-79 at Hofmann-IOB-381("The interception of electronic communications in this case resulted from an error on the part of [redacted]")); *Id.* (IOB Matter 2005-05, Hofmann-IOB-388 ("[redacted] received the [redacted] orders and initiated collection of e-mail data on these subjects, serving orders on [redacted,][redacted] and [redacted] for multiple email accounts."))

[38] Defendants argue they are not required to show a reasonable risk of circumvention if they merely claim the withholding of law enforcement "techniques or procedures." Def. Mot. at 19. This is not the law of this Circuit. *See Gordon*, 388 F. Supp. 2d at 1035 (noting that under Exemption 7(E) the government "must make two showings: (1) that the records were compiled for a law enforcement purpose, and (2) that the records reveal law enforcement techniques or guidelines that, if disclosed, *"could reasonably be expected to risk circumvention of the law." Id.* (citing statute) (emphasis added). *See also Asian Law Caucus v. DHS*, 2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008) (noting "[t]he Ninth Circuit has not squarely addressed this issue."). However, even if it were the law of the Circuit, this "does not excuse the agency from providing the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E)." *Smith v. BATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).

27

public. *See, e.g.*, *Gordon*, 388 F. Supp. 2d at 1036-37. Defendants have failed to show that

disclosing records withheld under Exemption 7(E) would lead to circumvention, that the records

describe techniques not generally known to the public, or that the records do not contain statements

of agency policy that have the force and effect of law. As such, these records must be released.

**(a)    FBI has Failed to Show That Releasing Records Would
Allow Criminals to Circumvent Detection, Apprehension
or Prosecution**

For each of the categories of records FBI withheld under Exemption 7(E), the Bureau has

asserted only broad, speculative, and unsupported claims that disclosure would risk circumvention

of the law or that they should otherwise be withheld.[39] *See* Def. Mot. at 19-20. Mr. Hardy's

declaration in support of the FBI's redactions offers "little more than a generic assertion that

disclosure" could lead to circumvention. Such "boilerplate [is] insufficient to carry the FBI's

burden with respect to Exemption 7(E) withholdings." *ACLU v. ODNI*, 2011 U.S. Dist. LEXIS

132503 at *34-35; *see also ACLU of Wash.*, 2011 U.S. Dist. LEXIS 53523 at *5-6 (citing *Wiener*,

943 F.2d at 977). Such records must be released unless the government presents evidence or expert

testimony showing that criminals are actually likely to use the information to thwart law

enforcement efforts. *See Gerstein v. DOJ*, No. 03-04893, 2005 U.S. Dist. LEXIS 41276, *41 (N.D.

Cal. Sept. 30, 2005).

Mr. Hardy advances the same conclusory claims rejected by the court in *Gerstein* and

several other recent cases. *See*, *e.g., id.* at *39, 43 (rejecting agency's claim that providing

statistical information on where a technique is employed and with what frequency would "reveal to

all criminals which jurisdictions are 'soft' on crime" and would "allow criminals to direct [their]

efforts to a disclosed weakness and avoid a disclosed strength in the national law enforcement

system") (internal quotations omitted); *ACLU of Wash.*, 2011 U.S. Dist. LEXIS 53523 at *26

---

[39] These categories include, for example, the identity of a computer system used to conduct
national security investigations (Hardy Decl. ¶50); the type of investigation brought by FBI in
response to a given criminal activity (*Id*. ¶48); generalized "techniques used to conduct national
security and intelligence investigations" (*Id*. ¶51); techniques used "to handle information
inadvertently collected without authorization," (*Id*. ¶¶51-52); standard phraseology, terminology &
record identifiers (*Id*. ¶62); the identities and geographic locations of divisions that committed
intelligence violations (*Id*. ¶¶46, 57).

28

(rejecting FBI's redactions of information related to the system architecture of the Bureau's terrorist watchlist because "Mr. Hardy makes no effort to explain how disclosure of a system's architecture (*i.e.*, where certain pieces of information are stored in relation to others) could allow persons to circumvent" the watchlist); *id.* at *29 (finding it not plausible that "release of coding information [such as field codes] could have the negative repercussions posited by Mr. Hardy[.]"); *ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *34 (rejecting FBI's withholding under 7(E) of "internal emails, training slides, legal opinions and interpretations of techniques, Standard Operating Procedures, electronic communications concerning investigations, case write-ups and miscellaneous reports" because the Hardy Decl. offered "little more than a generic assertion that disclosure could enable targets . . . to avoid detection or develop countermeasures to circumvent law enforcement.") (internal quotations and citations omitted).

Because the FBI's claims that disclosure would risk circumvention of the law are vague, speculative and unsupported by specific facts tied directly to the material in the records themselves, the Bureau has failed to meet its burden to support its Exemption 7(E) claims on summary judgment. As such, the withheld material must be released.

### (b) Defendants Have Improperly Withheld Law Enforcement Techniques That Are Generally Known or Routine

Defendants have failed to show that the numerous records they withheld under Exemption 7(E) do not describe law enforcement techniques or procedures that are routine or well-known to the public. *See Rosenfeld v. DOJ*, 57 F.3d 803, 815 (9th Cir. 1995). As such these records must be released.

Defendants cannot withhold information about techniques or procedures that "would leap to the mind of the most simpleminded investigator." *Id.* (citing *Nat'l Sec. Archive v. FBI,* 759 F. Supp. 872, 885 (D.D.C. 1991); *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 857 (D.D.C. 1989). In *Albuquerque Publishing*, the court directed agencies to release records "pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television," including "eavesdropping, wiretapping, and surreptitious tape recording and photographing." 726 F. Supp. at 858; *see also Hamilton v. Weise*, No. 95-1161, 1997

29

U.S. Dist. LEXIS 18900, at *30-32 (M.D. Fla. Oct. 1, 1997) (generally known techniques include those discussed in judicial opinions); *Rosenfeld*, 57 F.3d at 815 (details about a pretextual phone call were not protected because the technique would "leap to the mind of the most simpleminded investigator"). *See also Warshak v. U.S.*, 532 F.3d 521, 524-25 (6th Cir. 2008) (describing law enforcement technique for gaining access to suspects' email); *Dunaway v. Webster*, 519 F. Supp. 1059, 1082-83 (C.D. Cal. 1981) (describing law enforcement technique for gaining access to suspects' physical mail as "commonly known").

Defendants have generally failed to even argue that the law enforcement techniques they have withheld under Exemption 7(E) are not routine or well-known to the public.[40] However, by reviewing the unredacted text within the documents themselves, it is clear that at least some, if not all of the techniques withheld are widely known. For example, DHS withheld information under Exemption 7(E) in a letter from Senators Feingold and Rockefeller about the agency's improper collection of information on Americans' First Amendment-protected activities. *See* Lynch Decl. Ex. 15 (DHS Doc. No. 25 at Bates pp. 55-58). DHS states in its *Vaughn* submission that the redactions reference "a collection technique," or an "intelligence technique," and that "[t]he redacted information would permit the reader to infer analytic techniques used by the DHS Office of Intelligence & Analysis." Fausett Decl. Ex. A (Doc. No. 25 at pp. 55-58). However, it appears from the context of the text that these techniques involve merely talking to people who might have information on suspected persons; the surrounding text notes that that DHS "gleaned derogatory information" from people "with obvious political motivations" whose "criticisms" became the basis for "assessments by U.S. government analysts." *Id.* at 56. It is highly likely, given the unredacted text of the letter, that DHS obtained the information forming the basis of its assessments through routine and widely known law enforcement techniques such as eavesdropping, wiretapping, and surreptitious tape recording and photographing. *See Albuquerque Publ'g Co.,* 726

---

[40] *See, e.g.*, Hardy Decl. ¶ 51 (withholding information in approximately 160 documents because it describes "specific law enforcement techniques used to conduct national security and intelligence investigations"); Fausett Decl. Ex. A (describing material withheld in Doc. No. 5 under 7(E) as "a technique used by the National Counterterrorism Center . . . the release of which could reasonably expected to lead to circumvention of criminal laws.")

F. Supp. at 857-58.[41]

FBI's records similarly describe law enforcement techniques that are widely known. For example, the Hardy Declaration notes that Exemption 7(E) was claimed on Hofmann-IOB-940 to withhold "details of specific law enforcement techniques utilized by the FBI to conduct national security and intelligence investigations." Hardy Decl. ¶ 51. Yet one report describes a court authorized search of a non-U.S. person and a corresponding item, which was withheld from the released record. *See* Lynch Decl. Ex. 20. That the FBI conducts searches of non-human objects is not a well-kept secret in law enforcement; thus the object searched is exactly the type of information that must be disclosed. Additionally, Hofmann-IOB-323 discusses "calls" that "three FBI employees heard," yet the word "wiretap" is conspicuously absent from the report. *See* Lynch Decl. Ex. 20. Again, this is precisely the type of information that may not be withheld under Exemption 7(E).[42]

Because the public—including criminals—already know about the techniques discussed in Defendants' records, disclosing this information will not create a circumvention risk. As such it, it may not properly be withheld.

### 6. DHS and FBI Have Improperly Withheld Guidelines and Policies that Regulate an Agency's Dealings With the Public

Finally, DHS and FBI have inappropriately withheld guidelines, policy documents, and legal standards under Exemptions 5 and 7(E) that establish rules for whether and how the agencies may take action affecting the public. Courts have repeatedly rejected attempts to withhold this type of information from FOIA requesters. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153 (1975) (holding that Exemption 5 does not protect statements of agency policy or other documents

---

[41] *See also* Lynch Decl. Ex. 19 (DHS Doc. No. 33) redacting a significant amount of information under Exemption 7(E) on pages 52-54 but noting that all information collected and disseminated on the Nation of Islam "came from open sources." It is hard to imagine that a technique such as searching for information through Google could be considered non-routine or not widely known. *See also, id.* (DHS Doc. 8) (discussing information posted on a flyer outside a mosque).

[42] *See also* Lynch Decl. Ex. 20 (IOB Matter 2005-05 at Hofmann-IOB-388) (discussing collection of email); (IOB Matter 2007-523 at Hofmann-IOB-998) (discussing collection of incoming email, web activity, and log-in information for chat).

that have the "force and effect of law"); *Jordan v. DOJ,* 591 F.2d 753, 781 (D.C. Cir. 1978) (en banc) (recognizing that one of the fundamental purposes of the FOIA is to ensure that agencies do not maintain a secret body of law that regulates their dealings with the public); *Gordon*, 388 F. Supp. 2d at 1036-37 (holding 7(E) inapplicable to documents describing the legal basis for detaining someone on the FBI's "no-fly" watch list); *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993) (rejecting a similar DOJ argument about a "step by step analysis" and prosecutorial guidelines concerning obscenity crimes, explaining that such standards are "precisely the type of information appropriate for release under FOIA").

Here, DHS and FBI have withheld records that have the "force and effect of law" and must be disclosed. *See* DHS Doc. No 25 ("analytic guidelines used by DHS Office of Intelligence and Analysis"); *see also* Lynch Decl. Ex. 19 (DHS Doc. 9 at 21) (section titled "new interim guidance" on procedures for the office of intelligence and analysis); Hardy Decl. ¶ 80 (describing ODNI Bates-stamped pages 242-268 as "a policy guide prepared by FBI OGC"). The documents are analogous to those withheld in the cases cited above, in that they either describe the general legal standards for when and how to conduct investigations or regulate other aspects of the Defendants' dealings with the public. As such, the documents must be released.

### 7. Defendants Have Failed to Segregate and Release All Non-Exempt Information

The FOIA explicitly requires that "[a]ny reasonably segregable potion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b); *see also Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979) ("[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof."). The duty to segregate extends to material withheld under any of the FOIA's nine exemptions. *Id.*

"In the Ninth Circuit, the district court must review the agency's 'segregability' decisions on a document-by-document basis." *NRDC v. DOD*, 388 F. Supp. 2d at 1096 (citing *Wiener*, 943 F.2d at 988). To satisfy its burden, the agency must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead*

*Data Cent.*, 566 F.2d at 261; *see also NRDC v. DOD*, 388 F. Supp. 2d at 1105 (finding an agency declaration inadequate on segregability grounds when it stated merely that "none of the withheld documents contain reasonably segregable information that is not exempt")

Defendants state that they "have reviewed the withheld material and have disclosed all non-exempt information that reasonably could be disclosed." (Def. Mot. at 21; Baines Decl. Ex. A; Fausett Decl. ¶ 8 & Ex. A; Hackett Decl. ¶ 23 & Ex. J; Hardy Decl. ¶ 101; Hargrave Decl. Ex. A.) Despite these assurances, hundreds of records at issue in this case have either been withheld in their entirety or have large blocks of redacted text, thus concealing entire sentences, paragraphs, and pages, from public disclosure. Given the broad brush with which Defendants have painted exempt material, it is almost a certainty that Defendants have withheld more information than is otherwise justifiable.

Three IOB reports—IOB Matters 2003-115, 2006-305, and 2007-717—released to EFF by the FBI in response to this request and a separate, but overlapping, FOIA request demonstrate this argument. *See* Lynch Decl. Ex. 21 (Hofmann-IOB-572, Hofmann-IOB-809, and Hofmann-IOB-1075 (reports released in this case)); Ex. 22 (NSL VIO-18194, NSL VIO-24059, and NSL VIO-1708 (reports released in *EFF. v. DOJ*, Civ. No. 07-00656 (D.D.C. April 10, 2007)).[43] When the versions of the reports released in *EFF v. DOJ* are compared with the versions released by the FBI in this case, the results show that the FBI has not fulfilled its obligation to release all "reasonably segregable" material. *See* 5 U.S.C. § 552(b).

Two aspects of these reports are particularly notable. First, IOB Matter 2003-115 shows that the FBI's practice of redacting large blocks of text arbitrarily hides information that is both innocuous and not justifiably withheld under another exemption. As an example, the FBI withheld this sentence in its entirety: "Foreign Intelligence Surveillance Act of 1978 (FISA) requires that the Attorney General approve any use of FISA-derived information in a criminal proceeding." *Compare* Lynch Decl. Ex. 21 (Hofmann-IOB-572), *with* Ex. 22 (NSL VIO-18194). Here, the FBI

---

[43] These reports were released to EFF in response to a previous FOIA request and litigation involving the FBI's abuse of its national security letter authority; however, because the NSL violations were also reported to the IOB, the FBI released the same records in response to the FOIA requests at issue in this case.

33

Case No. 09-CV-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1 has withheld a simple statement of the law—one that is both uncontroversial and not subject to

2 withholding under any applicable exemption.

3       The second and third reports, IOB Matters 2006-305 and 2007-717, demonstrate a second

4 alarming practice in the FBI's segregability determinations: the withholding of illegal conduct. The

5 previously released version of IOB Matter 2006-305 shows that the FBI withheld the fact that the

6 "Field Office drafted a [national security letter ("NSL")] requesting transactional records and all

7 images uploaded," despite the fact that "the information that is allowed to be obtained pursuant to

8 an NSL is very specific, and 'all images uploaded' is not specifically allowed[.]" *Compare* Lynch

9 Decl. Ex. 21 (Hofmann-IOB-809), *with* Ex. 22 (NSL VIO-24059). Thus, in the version of the

10 report released in this case, the FBI withheld from IOB Matter 2006-305 the very conduct that was

11 deemed to be improper. *Id.* IOB Matter 2007-717 demonstrates a similar practice: the FBI redacted

12 the fact that the Bureau had requested "educational records" from a "state university" through the

13 issuance of an NSL. *Compare* Lynch Decl. Ex. 21 (Hofmann-IOB-1075), *with* Lynch Decl. Ex. 22

14 (NSL VIO-1708). Again, the version of the report released in this case withheld the nature of the

15 NSL request and the institution from which the FBI sought the records—the information that made

16 the NSL illegal in the first instance.

17       Several documents produced by DOD show similarly that the agency withheld more

18 information than is justifiable. Earlier this year, in response to *Milner v. Dept. of Navy*, 131 S.Ct.

19 1259 (2011), the DOD re-processed records it originally withheld under a now-overruled

20 interpretation of Exemption 2 and released several pages. The earlier interpretation of Exemption 2

21 allowed agencies to withhold "predominantly internal" materials whose disclosure would

22 "significantly risk[] circumvention of agency regulation or statutes[.]" *Crooker v. ATF*, 670 F.2d

23 1051, 1074 (D.C. Cir. 1981). Comparing the redacted pages with the newly released pages, it is

24 clear that DOD withheld more information than it was entitled to—even under the prior

25 interpretation of Exemption 2. In one example, DOD withheld all information about three NSLs an

26 Army special agent issued in violation of the NSL statute. Lynch Decl. Ex. 23 (Bates p. 1241). In

27 another example, DOD withheld all information about an Army investigation of attendees at a

28 conference on Islamic Law at the University of Texas. *Id.* Ex. 24 (Bates pp. 1234-35).

These examples only underscore the need for this Court's searching review of the Defendants' compliance with FOIA's obligation to provide "[a]ny reasonably segregable potion" of the records at issue in this case. *See* 5 U.S.C. § 552(b). Given that all Defendants in this case employed similar block-redaction techniques, and given the subject of the withheld records in general, it is extremely likely that FBI and DOD's practices were not isolated; unjustifiably withholding non-exempt information and withholding the very nature of the illegal conduct described in the reports likely permeates all records at issue in this case.

Thus, despite Defendants' assertions that they have complied with FOIA's segregability requirement, Defendants have not satisfied their burden and are not entitled to summary judgment.

**IV.      CONCLUSION**

For the foregoing reasons, the government's consolidated motion for summary judgment should be denied, and EFF's cross motion for summary judgment should be granted.

DATED:  December 20, 2011                    Respectfully submitted,


 */s/ Jennifer Lynch*
Jennifer Lynch, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

 Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2011, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on December 20, 2011, in San Francisco, California.

*/s/ Jennifer Lynch*
Jennifer Lynch