1

Jennifer Lynch (SBN 240701)
*jlynch@eff.org*

2

ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street

3

San Francisco, CA 94110
Telephone:   (415) 436-9333

4

Facsimile:    (415) 436-9993

5

David L. Sobel *(pro hac vice)*
*sobel@eff.org*

6

ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410

7

Washington, DC  20036
Telephone: (202) 797-9009 x104

8

Facsimile: (202) 707-9066

9

Attorneys for Plaintiff
Electronic Frontier Foundation

10

11

**UNITED STATES DISTRICT COURT**

12

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13

**OAKLAND DIVISION**

14

ELECTRONIC FRONTIER FOUNDATION,   )

15

                           Plaintiff,  )

16

    v.                                 )

17

                                 )

18

CENTRAL INTELLIGENCE AGENCY,    )
ET AL.                                )

19

                      Defendants.   )

20

21

22

23

24

25

26

27

28

Case No. 4:09-cv-03351-SBA

**NOTICE OF CROSS MOTION AND
CROSS MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF CROSS MOTION FOR
SUMMARY JUDGMENT**

**AND**

**OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Date:       March 27, 2012
Time:      1:00 p.m.
Place:     Ctrm. 1, 4th Floor
Hon. Saundra Brown Armstrong

1

# TABLE OF CONTENTS

2
3
I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 1

      A.   Intelligence Violations In Post-9/11 America ..............................................1

      B.   The Intelligence Oversight Board...............................................................2

III.  ARGUMENT .............................................................................................................. 3

      A.   The Freedom of Information Act and the Standard of Review ...........................3

      B.   EFF is Entitled to Summary Judgment Because the Government Has
           Improperly Withheld Agency Records .........................................................4

           1.   Defendants Have Failed to Meet the Procedural Requirements Necessary to
                Sustain Their Burden Under the FOIA ...................................................................4

           2.   DOD, FBI and DHS Have Improperly Withheld Records Under Exemption 1 ........4

                (a)   DOD and FBI Have Failed to Support Their Exemption 1 Claims with
                      Sufficiently Detailed Justification ........................................................ 5

                      (i)    DOD and Its Component DAIG's Exemption 1 Claims Fail for Lack
                             of Specificity ......................................................................................... 5

                      (ii)   FBI's Exemption 1 Claims Fail for Lack of Specificity......................... 7

                (b)   Records Concerning Illegality and Misconduct Are Not Properly Classified
                      and Must Be Released ........................................................................... 9

           3.   Defendants Have Improperly Withheld Records Under Exemption 5.....................11

                (a)   Defendants Have Improperly Withheld Records Under the Deliberative
                      Process Privilege .................................................................................. 11

                      (i)    ODNI's Vaughn Submission Fails to Meet the Heightened
                             Specificity Requirement ...................................................................... 12

                      (ii)   ODNI and DHS Have Improperly Withheld Records Reflecting
                             Final Agency Positions or Opinions .................................................... 13

                      (iii)  ODNI Has Improperly Withheld Purely Factual Information.............. 15

                (b)   FBI and DHS Have Improperly Withheld Records Under the Attorney-
                      Client Privilege .................................................................................... 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(c)   ODNI Has Improperly Withheld Documents Under the Presidential
      Communications Privilege ................................................................................. 16

4.   FBI Improperly Withheld Records Under Exemption 7(D) ..................................... 17

5.   Defendants Improperly Withheld Records Under Exemption 7(E) .......................... 19

     (a)   FBI has Failed to Show That Releasing Records Would Allow Criminals to
           Circumvent Detection, Apprehension or Prosecution ..................................... 20

     (b)   Defendants Have Improperly Withheld Law Enforcement Techniques That
           Are Generally Known or Routine ................................................................... 21

6.   DHS and FBI Have Improperly Withheld Guidelines and Policies that Regulate
     an Agency's Dealings With  the Public ................................................................. 22

7.   Defendants Have Failed to Segregate and Release All Non-Exempt Information ... 23

IV.   CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES
## CASES

*ACLU of Wash. v. DOJ,*
   No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011) ......................7, 8

*ACLU v. Dep't of Defense,*
   389 F. Supp. 2d 547 (S.D.N.Y. 2005)........................................................................11

*ACLU v. ODNI,*
   No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011).................7, 11, 20

*Albuquerque Publ'g Co. v. DOJ,*
   726 F. Supp. 851 (D.D.C. 1989) .................................................................21, 22

*Arthur Andersen & Co. v. IRS,*
   679 F.2d 254 (D.C. Cir. 1982) .................................................................13, 14

*Asian Law Caucus v. DHS,*
   2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008)...................................19

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
   818 F. Supp. 1291 (N.D. Cal. 1992) .....................................................15

*Campbell v. DOJ,*
   164 F.3d 20 (D.C. Cir. 1998) .................................................................5, 9

*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) .......................................................13, 14, 16

*Coldiron v. DOJ,*
   310 F. Supp. 2d 44 (D.D.C. 2004) .................................................................9

*CREW v. DHS,*
   Civ. No. 06-0173, 2008 WL 2872183 (D.D.C. July 22, 2008)..............................17

*Crooker v. ATF,*
   670 F.2d 1051 (D.C. Cir. 1981) ..................................................................25

*Ctr. for Biological Diversity v. OMB,*
   625 F. Supp. 2d 885 (N.D. Cal. 2009) .................................................15, 17

*Davin v. DOJ,*
   60 F.3d 1043 (3rd Cir. 1995) .................................................................. 19

*Defenders of Wildlife v. Dep't of Agric.,*
   311 F. Supp. 2d 44 (D.D. C. 2004) ..................................................................14

iii

*Dept. of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ..................................................................................................3, 11

*DOJ v. Landano,*
  508 U.S. 165 (1993) ......................................................................................................18

*DOJ v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ........................................................................................................3

*Dow Jones & Co. v. DOJ,*
  724 F. Supp. 985 (D.D.C. 1989) ..................................................................................11

*EPA v. Mink,*
  410 U.S. 73 (1973) ........................................................................................................15

*EPIC v. DOJ,*
  511 F. Supp. 2d 56 (D.D.C. 2007) ...............................................................................14

*Feshbach v. SEC,*
  5 F. Supp. 2d 774 (N.D. Cal. 1997) ............................................................................. 19

*Gerstein v. DOJ,*
  No. 03-04893, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005) ...........................20

*Goldberg v. Dep't of State,*
  818 F.2d 71 (D.C. Cir. 1987) ..........................................................................................9

*Gordon v. FBI,*
  388 F. Supp. 2d 1028 (N.D. Cal. 2005) ..................................................................19, 22

*In re Sealed Case,*
  121 F.3d 729 (D.C. Cir. 1997) ("*Espy*") ...............................................................16, 17

*In re Sealed Case,*
  877 F.2d 976 (D.C. Cir. 1989) ......................................................................................16

*Int'l Counsel Bureau v. DOD,*
  723 F. Supp. 2d 54 (D.D.C. 2010) .................................................................................5

*Jordan v. DOJ,*
  591 F.2d 753 (D.C. Cir. 1978) (en banc) .....................................................................22

*Judicial Watch v. DOJ,*
  365 F.3d 1108 (D.C. Cir. 2004) ..............................................................................16, 17

*Judicial Watch v. USPS,*
  297 F. Supp. 2d 252 (D.D.C. 2004) ..............................................................................12

*King v. DOJ,*
  830 F.2d 210 (D.C. Cir. 1987) .........................................................................................7

iv

*Maricopa Audubon Soc'y v. U.S. Forest Service,*
    108 F.3d 1089 (9th Cir. 1997).................................................................12, 13

*Mead Data Cent., Inc. v. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ..........................................................4, 15, 16

*Milner v. Dept. of Navy,*
    131 S.Ct. 1259 (2011) ...................................................................................25

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ....................................................................4

*N.Y. Times Co. v. DOD,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007)..........................................................14

*Nat'l Sec. Archive v. FBI,*
    759 F. Supp. 872 (D.D.C. 1991) ..............................................................8, 21

*Nat'l Wildlife Fed'n v. U.S. Forest Service,*
    861 F.2d 1114 (9th Cir. 1988)..................................................................3, 12

*Nixon v. Adm'r of Gen. Servs.,*
    433 U.S. 425 (1977)...............................................................................16, 17

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978)........................................................................................3

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975)......................................................................11, 13, 22

*NRDC v. DOD,*
    388 F. Supp. 2d 1086 (C.D. Cal. 2005).......................................................13

*Petroleum Info. Corp. v. Dep't of Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) ...................................................................12

*PHE, Inc. v. DOJ,*
    983 F.2d 248 (D.C. Cir. 1993) .....................................................................23

*Quarles v. Dep't of Navy,*
    893 F.2d 390 (D.C. Cir. 1990) .....................................................................15

*Rosenfeld v. DOJ,*
    57 F.3d 803 (9th Cir. 1995)..............................................................18, 19, 21

*Roth v. DOJ,*
    642 F.3d 1161(D.C. Cir. 2011) ....................................................................18

*Smith v. BATF,*
    977 F. Supp. 496 (D.D.C. 1997) ..................................................................19

v

Case No. 09-cv-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

*United States v. Nixon*,
    418 U.S. 683 (1974) ........................................................................................................16

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ...................................................................................12

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ...............................................................................*passim*

*Wiener v. FBI*,
    943 F.2d 972 (9th Cir. 1991) ....................................................................................5, 7

**STATUTES**

5 U.S.C. § 552 ......................................................................................................................*passim*

18 U.S.C. § 2709 ........................................................................................................................10

50 U.S.C. § 401 ............................................................................................................................3

**EXECUTIVE ORDERS**

E.O. No. 11,905 ...........................................................................................................................3

E.O. No. 12,333 ...........................................................................................................................3

E.O. No. 12,863 ......................................................................................................................3, 9

E.O. No. 12,958 ......................................................................................................................4, 9

E.O. No. 13,462 ...........................................................................................................................3

**OTHER AUTHORITIES**

ACLU*, Fact Sheet: Extraordinary Rendition* (Dec. 6, 2005) .....................................................2

Lynette Clemetson, "Homeland Security Given Data on Arab-Americans," *NY Times* (July 30,
    2004) ..............................................................................................................................1

DOJ, Office of Inspector General (OIG), *A Review of the FBI's Use of National Security Letters:
    Assessment of Corrective Actions and Examination of NSL Usage in 2006,* Special Report
    (March 2008)...................................................................................................................1

DOJ, Office of Inspector General (OIG), *A Review of the Federal Bureau of Investigation's Use of
    Exigent Letters and Other Informal Requests for Telephone Records* (January 2010) ..........1

DOJ, Office of Inspector General (OIG), *A Review of the Federal Bureau of Investigation's Use of
    National Security Letters*, Special Report (March 2007).......................................................1

vi

Case No. 09-cv-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1

Stephen Grey, "Extraordinary Rendition," *Frontline*, PBS (Nov. 6, 2007).........................................2

2

Lisa Myers, *et al*., "Is the Pentagon spying on Americans?," *NBCNews.com* (Dec. 14, 2005) .........2

3

4

"PIAB History," *President's Intelligence Advisory Board & Intelligence Oversight Board, www.whitehouse.gov* ...........................................................................................................................3

5

Dana Priest, "CIA Avoids Scrutiny of Detainee Treatment," *Wash. Post* (March 3, 2005)..............2

6

7

*President's Intelligence Advisory Board and Intelligence Oversight Board*, "About the PIAB," *www.whitehouse.gov* ..........................................................................................................................2

8

James Risen & Eric Lichtblau, "Bush Lets U.S. Spy on Callers Without Courts," *N.Y. Times* (Dec. 16, 2005) ........................................................................................................................................2

9

Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo," *Wash. Post* (July 27, 2005) .......2

10

11

Josh White, *et al*., "A Prison on the Brink: Usual Military Checks and Balances Went Missing," *Wash. Post* (May 9, 2004)...............................................................................................................2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on March 27, 2012, or as soon thereafter as the matter may

4

be heard in Courtroom 1 on the 4th Floor at 1301 Clay Street in Oakland, California, plaintiff

5

Electronic Frontier Foundation (EFF) will, and hereby does, cross move for summary judgment.

6

Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring the

7

Department of Defense (DOD) and its components, Department of Justice (DOJ)'s component

8

Federal Bureau of Investigation (FBI), Department of Homeland Security (DHS), and Office of the

9

Director of National Intelligence (ODNI) to release records under the Freedom of Information Act

10

(FOIA). EFF respectfully asks that this Court issue an order requiring the government to release all

11

records improperly withheld from the public. This cross motion is based on this notice of cross

12

motion, the memorandum of points and authorities in support of this cross motion, the declaration

13

of Jennifer Lynch and attached exhibits in support of this cross motion, and all papers and records

14

on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any

15

further evidence which may be offered.

16

DATED:  April 11, 2012                         Respectfully submitted,

17

18

_/s/ Jennifer Lynch_____
Jennifer Lynch, Esq.
ELECTRONIC FRONTIER FOUNDATION

19

454 Shotwell Street

20

San Francisco, CA  94110
Telephone:  (415) 436-9333

21

Facsimile:  (415) 436-9993

22

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION

23

1818 N Street, N.W., Suite 410
Washington, DC  20036

24

Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

25

Attorneys for Plaintiff

26

ELECTRONIC FRONTIER FOUNDATION

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeks records held by Defendants Department of Homeland Security (DHS), Department of Defense (DOD) and its components, Federal Bureau of Investigation (FBI) (a component of Department of Justice (DOJ)), and Office of the Director of National Intelligence (ODNI) (collectively "Defendants") concerning reports to the Intelligence Oversight Board (IOB) and ODNI of actual and suspected intelligence violations that occurred in the years following September 11, 2001. Because the agencies have failed to meet their burden on summary judgment—both procedurally and substantively—the Court should deny their motion, grant EFF's cross-motion and enter an order compelling Defendants immediately to disclose all improperly withheld records.

## II.     STATEMENT OF FACTS

This case arises from two FOIA requests submitted by EFF to Intelligence Community agencies. The procedural history is discussed in Plaintiff's Complaint (Dkt. 1).

### A.      Intelligence Violations In Post-9/11 America

In the years following September 11, 2001, the public learned of extensive abuses conducted by members of the US intelligence community. In three separate, scathing reports published between 2007 and 2010, the Department of Justice Inspector General described the FBI's illegal use of NSLs, exigent letters and other investigative authority.[1] In 2004, the *New York Times* reported that DHS sought and obtained specially tabulated population statistics on Arab-Americans from the Census Bureau, "including detailed information on how many people of Arab backgrounds live in certain ZIP codes."[2] In late 2005, evidence emerged that the DOD was spying

---

[1] *See* DOJ, Office of Inspector General (OIG), *A Review of the Federal Bureau of Investigation's Use of National Security Letters*, Special Report (March 2007) www.justice.gov/oig/special/s0703b/final.pdf; *id.*, *A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006,* Special Report, (March 2008) www.justice.gov/oig/special/s0803b/final.pdf; *id. A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records* (January 2010) www.justice.gov/oig/special/s1001r.pdf.

[2] Lynette Clemetson, "Homeland Security Given Data on Arab-Americans," *NY Times* (July 30, 2004) www.nytimes.com/2004/07/30/politics/30census.html.

1

Case No. 09-cv-03351 SBA     OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

on domestic anti-war groups exercising their First Amendment rights.[3] Also in 2005, the *New York Times* broke the story that the NSA was conducting warrantless wiretapping of Americans' phone and electronic communications.[4] The CIA and DOD engaged in "enhanced interrogation techniques" and out-right torture of detainees in Iraq, Afghanistan, and Guantanamo Bay, Cuba.[5] The CIA also kidnapped and placed foreign nationals suspected of involvement in terrorism on secret "extraordinary rendition" flights to countries well known for their human rights abuses where they could be interrogated and tortured.[6] And the agency operated its own secret jails or "black sites" in countries such as Afghanistan, Poland, Romania, and Ethiopia.[7]

Throughout this time, the Intelligence Oversight Board (IOB) had a mandate to "oversee the Intelligence Community's compliance with the Constitution and all applicable laws, Executive Orders, and Presidential Directives."[8]

**B.**     **The Intelligence Oversight Board**

President Ford created the IOB by Executive Order in 1976 to combat the abuses uncovered by the Rockefeller Commission's investigation in the mid-1970s, which found that intelligence

---

[3] *See, e.g.*, Lisa Myers, *et al.*, "Is the Pentagon spying on Americans?," *NBCNews.com* (Dec. 14, 2005) www.msnbc.msn.com/id/10454316/ns/nightly_news-nbc_news_investigates/t/pentagon-spying-americans/ (describing a "secret 400-page Defense Department document" that included information collected on "nearly four dozen anti-war meetings or protests" in contravention of strict guidelines that limit the extent to which DOD can collect information on U.S. persons).

[4] *See* James Risen & Eric Lichtblau, "Bush Lets U.S. Spy on Callers Without Courts," *N.Y. Times* (Dec. 16, 2005) www.nytimes.com/2005/12/16/politics/16program.html.

[5] *See, e.g.,* Josh White, *et al.*, "A Prison on the Brink: Usual Military Checks and Balances Went Missing," *Wash. Post*, A1 (May 9, 2004) www.washingtonpost.com/wp-dyn/articles/A11413-2004May8.html; Dana Priest, "CIA Avoids Scrutiny of Detainee Treatment," *Wash. Post*, A1 (March 3, 2005) www.washingtonpost.com/wp-dyn/articles/A2576-2005Mar2.html; Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo," *Wash. Post* (July 27, 2005) www.washingtonpost.com/wp-dyn/content/article/2005/07/26/AR2005072601792_pf.html.

[6] *See* ACLU, *Fact Sheet: Extraordinary Rendition* (Dec. 6, 2005) www.aclu.org/national-security/fact-sheet-extraordinary-rendition.

[7] *See* Stephen Grey, "Extraordinary Rendition," *Frontline*, PBS (Nov. 6, 2007) www.pbs.org/frontlineworld/stories/rendition701/.

[8] *President's Intelligence Advisory Board and Intelligence Oversight Board*, "About the PIAB," www.whitehouse.gov/administration/eop/piab/about.

2

agencies had intercepted and read Americans' mail, performed surveillance on civil rights leaders and other dissidents, and had orchestrated assassination attempts on foreign leaders.[9]

One of the IOB's chief functions has been to review reports of intelligence violations submitted by members of the Intelligence Community. *See* 50 U.S.C. § 401a(4); Exec. Order ("E.O.") No. 12,863 § 2.4. From September 13, 1993 through February 29, 2008, Executive Order 12,863 required the intelligence agencies to "report to the IOB at least on a quarterly basis and from time to time as necessary or appropriate, concerning intelligence activities that they have reason to believe may be unlawful or contrary to Executive order or Presidential directive." *Id.* § 2.4. On February 29, 2008, Executive Order 13,462 replaced Executive Order 12,863 and significantly modified the intelligence oversight role of the IOB. Of particular importance—the Intelligence Community agencies were no longer required to report to IOB and ODNI regularly. *See* E.O. No. 12,333 § 1.7(d), as referenced by E.O. 13,462 § 7(a)(i).

## III.    ARGUMENT

### A.    The Freedom of Information Act and the Standard of Review

The FOIA is intended to safeguard the American public's right to know "what [its] Government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). It requires an agency to disclose records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). It is well established that these "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act," *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). If the requested information does not fit squarely into one of the categories, agencies must make it available to the public. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 221 (1978).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n v. U.S. Forest Service,* 861 F.2d 1114, 115 (9th Cir. 1988). A court reviews the government's withholding of agency records *de novo*, and the

---

[9] E.O. No. 11,905; "PIAB History," *President's Intelligence Advisory Board & Intelligence Oversight Board*, www.whitehouse.gov/administration/eop/piab/history.

government bears the burden of proving that a particular document falls within one of the nine exemptions to the FOIA's broad presumption of disclosure. 5 U.S.C. § 552(a)(4)(B).

**B.    EFF is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records**

**1.    Defendants Have Failed to Meet the Procedural Requirements Necessary to Sustain Their Burden Under the FOIA**

"When an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977) (citing *Vaughn v. Rosen,* 484 F.2d 820, 828 (D.C. Cir. 1973)). The purpose of an agency's *Vaughn* Index and accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* (citation omitted).  When an agency seeks to withhold information, it must "specifically identify[] the reasons why a particular exemption is relevant and *correlat[e] those claims with the particular part of a withheld document* to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (emphasis added) (citations and internal quotation marks omitted).

**2.    DOD, FBI and DHS Have Improperly Withheld Records Under Exemption 1**

DOD, FBI and DHS have invoked Exemption 1 to withhold information from several hundred pages of records.[10] *See* Def. Mot. for Summ. J. ("Def. Mot.") at 6-8. Exemption 1 allows agencies to withhold records that are specifically authorized to be kept secret—such as intelligence activities, intelligence sources or methods, and cryptology—and "are in fact properly classified" pursuant to Executive Order. 5 U.S.C. 552(b)(1); E.O. 12,958 § 1.5. The government may not classify information to "conceal violations of the law, inefficiency, or administrative error;" to "prevent embarrassment;" or "to prevent or delay the release of information that does not require protection." E.O. 12,958 § 1.8.

---

[10] Plaintiff does not challenge records ODNI withheld under Exemption 1. *See* Dkt. No. 62.

4

FOIA requires the district court to review the propriety of the government's classification decisions under (b)(1). *Wiener v. FBI*, 943 F.2d 972, 980 (9th Cir. 1991). Although these decisions are accorded "substantial weight," *id.*, the government still has the burden to sustain its claims by providing declarations that are "sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Int'l Counsel Bureau v. DOD*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (citing *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) and noting "deference is not equivalent to acquiescence").

### (a)    DOD and FBI Have Failed to Support Their Exemption 1 Claims with Sufficiently Detailed Justification

*Vaughn* submissions that offer nothing more than a "categorical description of redacted material coupled with [a] categorical indication of anticipated consequences" fall "short of establishing that release could reasonably be expected to harm national security." *Int'l Counsel Bureau,* 723 F. Supp. 2d at 60 (citing *Campbell*, 164 F.3d at 30). DOD and FBI's *Vaughn* submissions[11] here provide the same boilerplate justifications for withholding records that courts have refused to accept in many past cases. As such, their Exemption 1 claims must fail.

### (i)    DOD and Its Component DAIG's Exemption 1 Claims Fail for Lack of Specificity

DOD and its component DAIG's *Vaughn* submissions are precisely the "sort of overly vague and sweeping declaration[s] that will not, standing alone, carry the government's burden." *Id*. at 64 (citations omitted). The agencies use the same short, non-descriptive text to describe multiple and varied intelligence violations. For example, in a 9-page DAIG 2008 quarterly report discussing questionable intelligence activities, there are no fewer than 14 separate Exemption 1 claims representing possibly as many individual intelligence violations. *See* Decl. of Jennifer Lynch (Lynch Decl.) Ex. 1 (Bates pages 1485-93). Yet, the *Vaughn* entry is almost word-for-word the same as every other *Vaughn* entry in the DAIG's submission. *See* Baines Decl. Ex. A at 18. The only somewhat specific phrase in the entry notes that the "information redacted [in the 2008 report]. . . discusses electronic intelligence collection methods, human intelligence sources, and

---

[11] EFF refers to each agency's affidavits and indices together as its "*Vaughn* submission."

counter-intelligence methods." *Cf. e.g., id.* at 20 (using the same terms but changing the word order: "counter-intelligence methods, human intelligence sources, and electronic intelligence collection methods"); *id.* at 16 (adding "methods for collecting human intelligence").[12]

DOD's *Vaughn* entries are similarly non-specific. For example, the second quarter 2006 ASTD(IO) report includes several large block redactions, yet the *Vaughn* entry for the report merely quotes the relevant statutory language and notes generally that the information redacted "pertains to the location of clandestine facilities, electronic intelligence collection methods, the details of a particular clandestine foreign operation, and human intelligence sources." *See* Lynch Decl. Ex. 3; Hargrave Decl. Ex. A (Bates pages 41-49). *Cf. id.* (Bates pages 19-23) (adding "methods for collecting human intelligence"); *id.* (Bates pages 1257-60) (adding "identifying information regarding a clandestine agent").[13]

DOD and DAIG's lack of specificity is particularly problematic given that EFF has waived its claims to material withheld under Exemption 3. *See* Hargrave Decl. ¶ 10. In some cases, DOD has withheld material solely under Exemption 1, while in other cases the agency withheld material under both Exemptions 1 and 3. And yet the *Vaughn* entries make it impossible to tell which reasons cited pertain to which material withheld. *See, e.g.,* Lynch Decl. Ex. 4 (Bates pages 1218-22) (redacting several paragraphs under both (b)(1) and (b)(3), one paragraph under (b)(1) and (b)(5), and one paragraph solely under (b)(1)). DOD's *Vaughn* submission thus fails to provide EFF "a meaningful opportunity to contest, and the district court an adequate foundation to review,

---

[12] Similarly, in a 2007 32-page report, DAIG redacted approximately 25 paragraphs relating to 11 separate instances of intelligence violations. *See* Lynch Decl. Ex. 2 (DAIG Q1 2007 Report, Bates 864-895). However, the *Vaughn* entry for this report notes merely that the information redacted "discusses human intelligence sources, methods for collecting human intelligence, and the details of clandestine foreign operation." *See* Baines Decl. Ex. A at 4; *cf. id.* at 6 (using the same terms and adding "electronic intelligence collection methods"); *id.* at 8 (removing "electronic intelligence collection methods" and adding "counter-intelligence methods").

[13] DOD's other *Vaughn* entries are no better. For example, DOD's fourth quarter 2005 report includes several large block redactions, *see* Lynch Decl. Ex. 5, but the *Vaughn* entry notes merely that the information "pertains to the oversight of intelligence activities; electronic intelligence collection methods; and details of a particular clandestine foreign operation." Hargrave Decl. Ex. A (Bates pages 9-14). This entry is almost exactly the same as entries for Bates pages 19-23, 41-49, 1212-17, and 1227-32, and very similar to almost all of DOD's other *Vaughn* entries.

the soundness of the withholding." *Wiener*, 943 F.2d at 977 (citing *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)).

Given DOD and its component DAIG's failure to produce a sufficiently detailed *Vaughn* submission, the Court should order the agency to release the withheld records.

**(ii)** ***FBI's Exemption 1 Claims Fail for Lack of Specificity***

FBI's categorical *Vaughn* submission also fails. Two recent district court opinions have harshly criticized FBI *Vaughn* declarations that use the same or very similar language as used here. *See ACLU v. ODNI*, No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011); *ACLU of Wash. v. DOJ*, No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011).[14] The *ACLU v. ODNI* court held "[w]ith respect to the balance of [FBI's] Exemption 1 withholdings . . . the Hardy Declaration makes little effort to describe the documents at issue or explain why they reflect intelligence 'methods,' 'activities,' or 'capabilities.'" 2011 U.S. Dist. LEXIS 132503 at *33 (specifically criticizing Hardy Decl. submitted in that case at ¶¶ 40, 41); *cf.* Hardy Decl. (filed in this case) at ¶¶ 26, 27 (using the same or very similar language). The court concluded the declaration "fail[ed] to fulfill the 'functional purpose' of the *Vaughn* affidavit" and therefore the FBI failed to carry its burden on most of its Exemption 1 claims. 2011 U.S. Dist. LEXIS 132503 at *33-34. In *ACLU of Wash. v. DOJ*, the court criticized the FBI for "in effect, parrot[ing] the language of the Executive Order (in the disjunctive) and declar[ing] that the redacted information falls within one or more of the categories covered by the order." 2011 U.S. Dist. LEXIS 26047 at *10 (referencing *ACLU of Wash.* Hardy Decl. at ¶¶ 31, 32, 34, 35, 39); *cf.* Hardy Decl. (filed in this case) at ¶¶ 26, 27, 28, 39, 62, 85. The court held "[t]his categorical approach is 'clearly inadequate.'" *Id.* (citing *Wiener*, 943 F.2d at 978-79).

The Hardy Declaration submitted in this case similarly fails to adequately tie the harms claimed to the release of a specific document. *See Wiener*, 943 F. 2d at 981. The vast majority of the FBI's documents discuss an individual intelligence violation—such as improper use of an NSL,

[14] To aid the court, EFF has attached relevant pages from the Hardy Declarations submitted in these cases and a table comparing the three declarations. Lynch Decl. Ex. 6-8.

7

over-collection of intercepts unrelated to a suspect, or making false statements in court declarations—that the FBI reported to the IOB. Lynch Decl. Ex. 10 (Hofmann-IOB-1075, -594, -374). As such the material discussed varies significantly from document to document. The FBI's categorical declaration fails to account for this variation. For example, in a four-page 2008 IOB Report concerning "a highly sensitive joint investigation of the FBI and US Army," Hardy Decl. Ex. I at 1, there are no fewer than nine full paragraphs redacted in whole or part, including almost the entire page on Cardozo-IOB-69. *See* Lynch Decl. Ex. 9 (Cardozo-IOB-67-70). However, Mr. Hardy's description notes merely that the sections redacted under Exemption 1 discuss *either* "standard terminology / phraseology," Hardy Decl. ¶ 39, *or* the "character of the case." Hardy Decl. ¶ 40.[15] It is not clear which claim applies to which redacted section; nor is it clear, given Mr. Hardy's use of the disjunctive, what the information in the document includes and what the true harm of disclosing it would be. *See ACLU of Wash.*, 2011 U.S. Dist. LEXIS 26047 at *11 (criticizing Hardy Decl. specifically on its *Vaughn* entry describing "standard terminology/ phraseology" and "unique record identifiers"); *see also Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 878-879 (D.D.C. 1991) (same).

FBI also provided insufficient *Vaughn* entries for the documents it referred to the Army and to an undisclosed "other government agency," [16] Hardy Decl. ¶¶ 99-100. The *Vaughn* entry for the eight pages (three documents) FBI referred to the undisclosed "OGA" and withheld in full is particularly glaring. *See* Hardy Decl. ¶ 100. Not only does FBI fail to disclose the name of the "OGA," but it fails to describe with any specificity the subject matter of the classified information or who the original classification authority was. *See id*. Given the dearth of information, it is impossible for EFF to meaningfully contest the soundness of the withholding.

The entry for the Army document is not much better; it merely restates the language of the Executive Order—the entry literally states that the document "relates to intelligence activities, sources or methods, and crypto logic," Hardy Decl. ¶ 99. It fails to draw any connection between

---

[15] FBI withholds information on no fewer than 108 individual IOB reports describing potentially as many individual intelligence violations based solely on a non-specific 7-line paragraph about FBI's term "character of the case."

[16] EFF does not challenge the document referred to the CIA. *See* Hardy Decl. ¶¶ 91-98.

the document at issue and the "general standards that govern the national security exemption." *Campbell*, 164 F. 3d at 31.

As the court noted in *Coldiron v. DOJ*, 310 F. Supp. 2d 44 (D.D.C. 2004), "[i]t might be just as vacuous—and just as much an abdication of the court's *de novo* review duty—to allow the FBI to prevail time and time again on the same, 50-word boilerplate language instead of just two words ('national security'), regardless of the content of the withheld information." 310 F. Supp. 2d at 53. The Court should not abdicate its duty here, but must engage in true *de novo* review of the Bureau's withholdings and order FBI to disclose records improperly withheld under Exemption 1.

### (b)  Records Concerning Illegality and Misconduct Are Not Properly Classified and Must Be Released

The government may not classify information—and thus may not withhold it under Exemption 1—to "conceal violations of the law, inefficiency, or administrative error;" to "prevent embarrassment;" or "to prevent or delay the release of information that does not require protection[.]" E.O. No. 12,958 § 1.8(a); *see, e.g.*, *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (stating court's obligation to "ensure that information *not* be classified . . . to conceal violations of law . . . [or] to prevent embarrassment to a person, organization, or agency").

The Intelligence Community agencies are required to submit reports of intelligence activities that "they have reason to believe may be unlawful or contrary to Executive order or Presidential directive." E.O. No. 12,863 § 2.4. The records Defendants produced in this case are those reports; as such, they necessarily describe intelligence activities that Defendants believe are reports of violations of the law, misconduct, and activities that have embarrassed the federal government. For this reason alone, they should be carefully scrutinized by the Court.

The unredacted portions of Defendants' documents only reinforce the concern that Defendants are improperly classifying information to cover up illegal or embarrassing activities. For example, DOD's documents shows the DOD components consistently engaged in illegal surveillance of Americans and civilians in the years following September 11, 2001[17] and in

---

[17] Reports from 2005 and 2006 discuss DOD surveillance of and collection of information on US organizations such as Planned Parenthood and persons who were engaging in First Amendment-protected activity, including anti-war and anti-recruiting activities in Alaska, Ohio, and Florida. *See*

extensive abuses of detainees and civilians in Iraq and Afghanistan.[18] Similarly, the unredacted

portions of DHS records discuss Senators Feingold and Rockefeller's concerns over DHS's use of

"derogatory information" and "criticisms of Americans' First Amendment-protected political and

academic views" as a basis for collecting information on U.S. Persons. Lynch Decl. Ex. 15 (DHS

Doc. Nos. 25, 27, 28).[19] The FBI's records, too, include evidence of rampant abuse of the Bureau's

national security letter ("NSL") authority and multiple instances of FBI agents conducting

surveillance without court authorization.[20]

Defendants' reports often note that the activities discussed were unlawful, violated

regulations, were of "serious concern," or could cause "political embarrassment."[21] Even the

government's *Vaughn* submissions describe these records as relating to "significant questionable

activities," Baines Decl. ¶ 4, or as discussing investigative activities "contrary to the Attorney

General Guidelines . . . and/or laws, Executive Orders, or Presidential Directives which govern FBI

foreign counterintelligence and international terrorism investigations." Hardy Decl. ¶ 37.

---

Lynch Decl. Ex. 5 (2005 Q4 ASTD(IO) Rept. at 10, 12); (2006 Q1 ASTD(IO) Rept. at 39); (2006 Q2 ASTD(IO) Rept. at 47). Another report from 2004 describes illegal intelligence gathering on US persons attending a conference on Islamic law at University of Texas Law School. *See* Lynch Decl. Ex. 12 (2004 Q1 ASTD(IO) Rept. at 1234-35). Another report discusses three NSLs an Army special agent issued for customer phone records, contrary to 18 U.S.C. § 2709. *See* Lynch Decl. Ex. 13 (2004 Q2 ASTD(IO) Rept. at 1240).

[18] Several reports discuss widespread detainee abuse and torture during interrogations; unauthorized detention, interrogation and prisoner transfer operations; and the assault and death of an Afghan citizen in Army custody. *See, e.g.*, Lynch Decl. Ex. 11 (Q1 2006 ASTD(IO) Rept. at 38); Ex. 5 (Q4 2005 ASTD(IO) Rept. at 14); Ex. 3 (Q2 2006 ASTD(IO) Rept. at 48-49); Ex. 14 (Q3 2006 ASTD(IO) Rept. at 65).

[19] The Senators' letter also expresses concern with "DHS/I&A's overbroad efforts to seek information on U.S. Organizations conducting legal activities with immigrant communities . . . in the absence of any indication of wrongdoing" *Id*. at 57.

[20] *See, e.g.*, Lynch Decl. Ex. 16 (FBI IOB Matter 2006-215 at Hofmann-IOB-654-56); (IOB Matter 2006-226 at Hofmann-IOB-699-701); (FBI IOB 2006-235 at Hofmann-IOB-696); (FBI IOB Matter 2006-221 at Hofmann-IOB-693).

[21] *See, e.g.*, Lynch Decl. Ex. 16 (FBI IOB Matter 2006-215 at Hofmann-IOB-655); (IOB Matter 2006-226 at Hofmann-IOB-701); (FBI IOB 2006-235 at Hofmann-IOB-696); (FBI IOB Matter 2006-221 at Hofmann-IOB-693). *See also* Lynch Decl. Ex. 17 (FBI IOB Matter 2006-281 at Hofmann-IOB-774);  (FBI IOB Matter 2006-307 at Hofmann-IOB-769, 771); (FBI IOB Matter 2008-1194 at Cardozo-IOB-70).

10

While EFF acknowledges that there may be some legitimately classified material within these records, given the vague and sweeping breadth of FBI, DOD and DAIG's *Vaughn* submissions, the patterns of illegal conduct documented in the records, and the context in which the reports were produced, it seems likely that at least some material has been improperly classified. *See ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (noting that inadequate supporting affidavits "raise concern" that defendant's withholding of classified information "is less to protect intelligence activities, sources or methods than to conceal possible 'violations of law'. . .  or 'inefficiency' or 'embarrassment'" to the agency); *see also ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *23-24 (finding NSA declaration failed to show how disclosure of records related to "*misuse* and abuse" of the FISA Amendments Act would pose a risk to national security). These facts only underscore the need for sufficiently specific *Vaughn* submissions and this Court's thorough *de novo* review of Defendants' claims.

### 3. Defendants Have Improperly Withheld Records Under Exemption 5

Defendants have withheld records under Exemption 5, claiming they are protected by the deliberative process privilege, the attorney-client privilege,[22] and the presidential communication privilege. *See* Def. Mot. at 10-16. The Supreme Court has interpreted Exemption 5 to protect records that fall "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8.

#### (a) Defendants Have Improperly Withheld Records Under the Deliberative Process Privilege

Defendants withhold hundreds of pages of responsive records in their entirety under Exemption 5. *See* Hackett Decl. ¶¶ 23, 26; Fausett Decl. ¶ 16.  The deliberative process privilege protects "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S.

---

[22] On Hofmann-IOB-1070, 3487 and ODNI Bates page 215. the FBI also withheld material based on the work product privilege. Hardy Decl. ¶¶ 44, 73. However, Defendants' moving papers fail to discuss the privilege or the records withheld. Because the FBI has failed to describe any litigation relevant to the withheld records, the FBI has not satisfied its burden to withhold the records. *Dow Jones & Co. v. DOJ*, 724 F. Supp. 985, 989 (D.D.C. 1989).

11

Case No. 09-cv-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

132, 150 (1975) (internal citations omitted). An agency record may be withheld only if it is "both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quotation omitted).

To support a deliberative process claim, an agency must "establish[] the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citations omitted). An agency must also "*identify a specific decision* to which the document is predecisional." *Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089, 1094 (9th Cir. 1997) (emphasis added).

### (i)   *ODNI's Vaughn Submission Fails to Meet the Heightened Specificity Requirement*

In cases involving the deliberative process privilege, the need for specificity is particularly acute. *See Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004). The "first step" in determining whether a document is properly withheld as deliberative "is to examine the context in which the materials are used." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal citations and quotations omitted). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch*, 297 F. Supp. 2d at 257.

ODNI's *Vaughn* submission fails to provide the heightened level of specificity necessary to withhold records under the privilege. For example, ODNI has withheld 72 pages of records under the single, non-specific description of "Interagency Emails Regarding a Reported IOB Matter." Hackett Decl. ¶ 31, Ex. J at 29 (Doc. No. 213). ODNI claims all 72 pages are deliberative because they contain a "[r]equest to an agency for additional information . . . and subsequent internal ODNI email providing views on the reported matter." *Id*. Yet ODNI's *Vaughn* entry lacks critical information concerning the nature of the IOB matter and the agency records: for example, the entry does not describe the agency deliberations concerning the IOB matter, the authors and recipients of the email, the "function and significance of the document(s) in the agency's decisionmaking process, the nature of the decisionmaking authority vested in the office or person issuing the

12

Case No. 09-cv-03351 SBA      OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

disputed document(s), and the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotations and citations omitted). Aside from broadly asserting that the emails reflect the "views" of ODNI employees, ODNI's *Vaughn* description fails to detail how the emails are deliberative. This is a paradigmatic example of the insufficiency of ODNI's *Vaughn* submission.

In another example, ODNI has withheld a twenty-two page "Spreadsheet Tracking ODNI Actions on Reports/Allegations" in its entirety as an "email[] and Inter-agency/Intra-agency Document[]." Hackett Decl. ¶ 31, Ex. J at 10 (Doc. No. 107). The spreadsheet, according to ODNI, is an "[i]nternal tracking spreadsheet of each investigation or report by an IC element and ODNI responses, actions or outstanding questions on each incident." *Id*. This description fails to even describe a deliberative process.

**(ii)    *ODNI and DHS Have Improperly Withheld Records Reflecting Final Agency Positions or Opinions***

For an agency record to be withheld under the deliberative process privilege, the agency must identify "a specific decision to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094. Even if a document is predecisional at the time it is prepared, the document can "lose that status if it is adopted, formally or informally, as the agency position on an issue." *NRDC v. DOD*, 388 F. Supp. 2d 1086, 1098 (C.D. Cal. 2005) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Here, because Defendants have failed to identify a specific decision to which many of the records at issue preceded and contributed, the records should be treated as the final agency positions and ordered released.

For example, ODNI's withholding of "Intelligence Oversight Assessments for the IOB," Hackett Decl. Ex. J at 3-8 (Doc. Nos. 14-19), is improper because the Assessments appear to constitute the agency's final position and evaluation of the Intelligence Community's reporting activity. *See NLRB v. Sears*, 421 U.S. at 153. The fact that these Assessments were then passed on to the IOB does not change their character as "final" decisions of the agency, ODNI. Similarly, a document withheld by DHS—a letter from DHS's Acting General Counsel and Inspector General

13

to IOB's General Counsel appears to represent DHS' final position when reporting an incident to the IOB. *See* Fausett Decl. Ex. A at 8 (Doc. No. 8).

ODNI has withheld other records that likely reflect final agency positions, including "talking points" memos—memos prepared for senior agency officials in preparation for meetings, hearings, or negotiations—and briefing materials. *See EPIC v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007) ("[T]he likelihood" that withheld materials "have been relied upon or adopted as official positions . . . is particularly high in the case of" "talking points" and "briefing materials."); *see also N.Y. Times Co. v. DOD*, 499 F. Supp. 2d 501, 514-515 (S.D.N.Y. 2007) (holding "talking points and the formulation of responses to possible questions" prepared "to aid in briefing officials and preparing them to answer questions" not properly withheld). Here, ODNI has withheld "talking points" records and briefing materials [23] both in part and in full, under the deliberative process privilege. These records were created to prepare "senior ODNI official[s] for matters that he or she may need to discuss." Hackett Decl. ¶ 48.  Because senior officials are responsible for creating agency final decisions and policy, these records likely reflect final agency policy or position and cannot be withheld.

ODNI has also withheld several documents in full as "drafts." While a "draft" version of a document may, in certain circumstances, be legitimately withheld under the deliberative process privilege, "designation of a document as a 'draft' does not automatically trigger proper withholding[.]" *Defenders of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 58 (D.D. C. 2004); *see also Arthur Andersen*, 679 F.2d at 257 ("*Coastal States* forecloses the Agency's argument that any document identified as a "draft" is *per se* exempt.")). In an effort to narrow the scope of the litigation, EFF withdrew challenges to "draft" documents for which ODNI could provide a final version. *See* Hackett Decl. ¶ 26 n. 6. However, ODNI has failed to support its deliberative process claims for several remaining documents described as "drafts." In the absence of either a more sufficiently descriptive *Vaughn* submission or a final agency decision or record to which these "drafts" contributed, ODNI has improperly withheld these records.

---

[23] *See* Hackett Decl. Ex. J at 13, 42-43 (Doc. Nos. 123, 301, 304, 305) and "briefing materials," *id.* at 10, 13, 16, 30, 33, 34, 37, 42, and 46 (Doc. Nos. 104, 122, 128-29, 224, 255, 262, 279, 301, 323).

1

### (iii)   ODNI Has Improperly Withheld Purely Factual Information

2

"[M]emoranda consisting only of compiled factual material or purely factual material

3

contained in deliberative memoranda and severable from its context" may not be withheld under

4

the deliberative process privilege. *EPA v. Mink*, 410 U.S. 73, 88-89 (1973); *see also Bay Area*

5

*Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1297 (N.D. Cal.

6

1992) (same). While the rationale behind the deliberative process privilege encourages candor in

7

deliberative discussions, the requirement that facts must be disclosed is intended to enhance the

8

integrity of agency deliberations. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)

9

(noting that "the prospect of disclosure is less likely to make an advisor omit or fudge raw facts").

10

In withholding over seven hundred pages of records in their entirety and 743 pages in part,

11

it is a near-certainty that ODNI has withheld some purely factual material. Some records, in

12

particular, suggest this. For example, the "Spreadsheet Tracking ODNI Actions on Reports/

13

Allegations," Hackett Decl. Ex. J at 10 (Doc. No. 107) contains details on "each investigation or

14

report by an IC element and ODNI responses, actions or outstanding questions on each incident."

15

*Id.* This spreadsheet likely consists of exactly the type of factual information that must be

16

produced—for example, the date and nature of the investigation or report, as well as the actions

17

taken by ODNI and the reporting agency. *See also* Hackett Decl. Ex. J. at 13 (Doc. No. 130)

18

(withholding record containing the "reported activity [and] actions conducted to date[.]")[24]

19

20

### (b)   FBI and DHS Have Improperly Withheld Records Under the Attorney-Client Privilege

21

To support an Exemption 5 claim under the attorney-client privilege, an agency must

22

demonstrate "that the information is confidential. If the information has been or is later shared with

23

third parties, the privilege does not apply." *Mead Data Cent.*, 566 F.2d at 253; *see also Ctr. for*

24

*Biological Diversity v. OMB*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009). When the client is an

25

organization, the confidential communication must be "circulated no further than among those

26

27

---

[24] This is likely true for the records DHS withheld under Exemption 5 as well. *See, e.g.*, Fausett

28

Decl. Ex. A at 21-9 (Doc. Nos. 18, 28, 33, 34, 2, 5, 8).

members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" *Coastal States*, 617 F.2d at 863 (citing *Mead*).

The FBI has withheld information from the released records on the grounds that the records contain "legal advice provided by OGC to Field Offices regarding actions to be taken." (Hardy Decl. ¶¶ 30, 44, 56). However, because the FBI records in this case are reports prepared for and likely forwarded to the IOB and ODNI, the "legal advice" contained within the FBI's records likely has been disclosed to either or both outside agencies, thus extinguishing the attorney-client privilege. *See Mead Data Cent.*, 566 F.2d at 253.

DHS partially withheld a letter to the IOB's General Counsel, Homer Pointer under the attorney-client privilege. Fausett Decl. Ex. A at 8 (Doc. No. 8). Like the FBI, DHS's claims fail because sharing privileged information with a third party not covered by the privilege (the IOB) waives it. *See In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

### (c)   ODNI Has Improperly Withheld Documents Under the Presidential Communications Privilege

The presidential communications privilege only protects communications reflecting deliberations that the President determines should remain confidential. *United States v. Nixon*, 418 U.S. 683, 708 (1974). Those communications must be used by the President "in the process of shaping policies and making decisions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977). The presidential communications privilege "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) ("*Espy*").

The presidential privilege covers documents authored or solicited and received by the President. As such, the Court must "proceed on the basis that 'the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected.'" *Judicial Watch v. DOJ*, 365 F.3d 1108, 1116 (D.C. Cir. 2004) (quoting *Espy*, 121 F.3d at 752). The privilege also extends "down the chain of command" to the President's "immediate White House advisors" within the Office of the President and their staffs. *Id*. at 1115-16. However, the need for the presidential communications

16

privilege becomes more attenuated the further away the advisers are from the President." *Id*. at

1123; *see also id.* at 1115 (noting the hierarchy of presidential advisers) (citing *Espy*, 121 F.3d at

752).

ODNI has not shown that President's Intelligence Advisory Board (PIAB) and IOB records

are properly withheld under the presidential communications privilege. "The mere fact that [the

record] was communicated with or solicited and reviewed by a White House adviser or his staff is

merely a threshold requirement in the first analysis." *CREW v. DHS*, Civ. No. 06-0173, 2008 WL

2872183, *3 (D.D.C. July 22, 2008) (citing *Nixon*, 433 U.S. at 449 and *Judicial Watch*, 365 F.3d at

1113). ODNI's *Vaughn* submission must also show that the withheld records called for the "direct

decisionmaking" of the President. *Espy*, 121 F.3d at 752. ODNI has not alleged that the President

either read, relied, or otherwise made any decisions relating to the withheld records.

Moreover, as neither the PIAB nor the IOB are within the Office of the President (both are

listed as "Other Advisory Boards" on the Whitehouse.gov website), they are not "such immediate

advisers as the Chief of Staff and the White House Counsel." *Judicial Watch v. DOJ*, 365 F.3d at

1109 n. 1 (noting the more attenuated the adviser to the President, the less compelling the need for

the privilege. *Id*. at 1123). Only records "'solicited and received' by the President or his Office"

may be withheld under the presidential communications privilege. *Id.* at 1112. Otherwise, "a broad

array of materials in many areas of the executive branch will become sequestered from public

view." *Espy*, 121 F.3d at 749. Extending the presidential communications privilege to information

received by IOB would be no less "unprecedented and unwarranted" than extending it to the Office

of Management and Budget (OMB), an office within the Executive Office of the President, which

was rejected in *Ctr. for Biological Diversity*, 625 F. Supp. 2d at 891.

### 4.    FBI Improperly Withheld Records Under Exemption 7(D)

FBI has failed to show that information it withheld under Exemption 7(D) was conveyed to

the Bureau under an implied grant of confidentiality.[25] As such the information must be disclosed.

---

[25] The FBI has not argued information it redacted under Exemption 7(D) was withheld based on an
express grant of confidentiality. *See* Def. Mot. at 18-19; Hardy Decl. ¶¶ 34-35, 45, 79.

Exemption 7(D) allows the government to withhold information compiled for law enforcement purposes if (1) it "could reasonably be expected to disclose the identity of a confidential source," or (2) it is information provided by a confidential source and was "compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation." 5 U.S.C. § 552(b)(7)(D). The question under (7)(D) is "whether the particular *source* spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993); *see also Rosenfeld v. DOJ*, 57 F.3d 803, 814 (9th Cir. 1995) (noting *Landano's* requirement that a court may infer implied confidentiality *only* if certain factors make "it reasonable to infer that the informant expected such an assurance"). An agency cannot show confidentiality merely by claiming "that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).

The Supreme Court in *Landano* set out several factors to determine if a source "spoke with an understanding that the communication would remain confidential." 508 U.S. at 172. These include: (1) "the character of the crime at issue;" (2) "the source's relation to the crime;" (3) whether the source received payment; and (4) whether the source has an "ongoing relationship" with the law enforcement agency and typically communicates with the agency "only at locations and under conditions which assure the contact will not be noticed." *Id.* at 179.

The FBI has failed to do more than vaguely assert that third parties have "placed themselves in harm's way" and that disclosing their names "could have disastrous consequences." Hardy Decl. ¶¶ 45, 79. This is insufficient under *Landano*. 508 U.S. at 179. It is also insufficient, given the facts involved in these records. In both *Roth* and *Landano*, the court found factual situations involving violent crimes were more likely to involve some form of confidentiality. *See Roth*, 642 F.3d at 1186  (finding implied confidentiality, given "brutal nature of the quadruple homicide and the source's relationship with at least some of the victims"); *Landano*, 508 U.S. at 179 (same for witness to a gang murder). The same cannot be said here. FBI has not argued that sources redacted from these records provided information related to a violent crime or that they had a relationship to possible criminal activity that could place them in harm's way. Instead, it appears

18

from the non-redacted text in the reports that FBI is attempting to withhold names of communications service providers who are required by law to disclose information when presented with a lawful request.[26] The FBI has provided no facts to support a claim that communications service providers  (or any other "sources" in these records) provide information to the FBI under an implied grant of confidentiality. As such, this information must be released.

### 5.    Defendants Improperly Withheld Records Under Exemption 7(E)

Exemption 7(E) allows the government to withhold documents "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions" only if it demonstrates a reasonable risk that criminals will use them to circumvent detection, apprehension or prosecution. 5 U.S.C. § 552(b)(7)(E); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005).[27] The Ninth Circuit has held that Exemption 7(E) "only exempts investigative techniques not generally known to the public," *Rosenfeld*, 57 F.3d at 815, and does not protect policies or legal standards that regulate an agency's dealings with members of the public. *See, e.g.*, *Gordon*, 388 F. Supp. 2d at 1036-37. Defendants have failed to

---

[26] *See, e.g.,* Lynch Decl. Ex. 18 (IOB Matter 2004-75 at Hofmann-IOB-317-18 ("On [redacted] contacted *the legal department at [redacted]* of [redacted] e-mail accounts being intercepted, and *informed [redacted]* that interceptions must cease at [redacted]" (emphasis added)); s*ee also* Lynch Decl. Ex. 18 (IOB Matter 2004-79 at Hofmann-IOB-381 ("The interception of electronic communications in this case resulted from an error on the part of [redacted]")); *Id.* (IOB Matter 2005-05, Hofmann-IOB-388 ("[redacted] received the [redacted] orders and initiated collection of e-mail data on these subjects, serving orders on [redacted,][redacted] and [redacted] for multiple email accounts.")).

[27] Defendants argue they are not required to show a reasonable risk of circumvention if they withhold law enforcement "techniques or procedures." Def. Mot. at 19. This is not the law of this Circuit. *See, e.g. Feshbach v. SEC*, 5 F. Supp. 2d 774, 786 n.11 (N.D. Cal. 1997) (relying on *Davin v. DOJ*, 60 F.3d 1043, 1064 (3rd Cir. 1995) and specifically discrediting the government's argument that it need not show risk of circumvention for techniques and procedures); *Gordon*, 388 F. Supp. 2d at 1035 (noting that under Exemption 7(E) the government "must make two showings: (1) that the records were compiled for law enforcement purpose, and (2) that the records reveal law enforcement techniques or guidelines that, if disclosed, *"could reasonably be expected to risk circumvention of the law." Id.* (citing statute) (emphasis added). *See also Asian Law Caucus v. DHS*, 2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008) (noting "[t]he Ninth Circuit has not squarely addressed this issue."). However, even if it were the law, this "does not excuse the agency from providing the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E)." *Smith v. BATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).

19

show that disclosing records would lead to circumvention or that the records describe techniques not generally known to the public. As such, these records must be released.

### (a)   FBI has Failed to Show That Releasing Records Would Allow Criminals to Circumvent Detection, Apprehension or Prosecution

For each of the categories of records FBI withheld under 7(E),[28] it has asserted only broad, speculative, and unsupported claims that disclosure would risk circumvention of the law or that the records should otherwise be withheld. *See* Def. Mot. at 19-20. Mr. Hardy's declaration offers "little more than a generic assertion that disclosure" could lead to circumvention. *ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *34-35. Such "boilerplate [is] insufficient to carry the FBI's burden with respect to Exemption 7(E) withholdings." *Id.* These records must be released unless the government presents evidence or expert testimony showing that criminals are actually likely to use the information to thwart law enforcement efforts. *See Gerstein v. DOJ*, No. 03-04893, 2005 U.S. Dist. LEXIS 41276, *41 (N.D. Cal. Sept. 30, 2005).

Mr. Hardy advances the same conclusory claims rejected by the court in *Gerstein* and several other recent cases. *See, e.g., id.* at *39, 43 (rejecting agency's claim that providing information on where and with what frequency a technique is used would "allow criminals to direct [their] efforts to a disclosed weakness and avoid a disclosed strength in the national law enforcement system"); *ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *34 (rejecting FBI's withholding of similar materials under 7(E) because the Hardy Decl. offered "little more than a generic assertion that disclosure could enable targets . . . to avoid detection or develop countermeasures to circumvent law enforcement").

Because the FBI's claims that disclosure would risk circumvention of the law are vague, speculative and unsupported by specific facts tied directly to the material in the records themselves,

---

[28] These categories include, for example, the identity of a computer system used to conduct national security investigations (Hardy Decl. ¶ 50); the type of investigation brought by FBI in response to a given criminal activity (*Id.* ¶ 48); generalized "techniques used to conduct national security and intelligence investigations" (*Id.* ¶ 51); techniques used "to handle information inadvertently collected without authorization," (*Id.* ¶¶ 51-52); standard phraseology, terminology & record identifiers (*Id.* ¶ 62); the identities and geographic locations of divisions that committed intelligence violations (*Id.* ¶¶ 46, 57).

20

Case No. 09-cv-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

the Bureau has failed to meet its burden to support its Exemption 7(E) claims on summary judgment. As such, the withheld material must be released.

(b)     **Defendants Have Improperly Withheld Law Enforcement Techniques That Are Generally Known or Routine**

Defendants cannot withhold information about techniques or procedures that "would leap to the mind of the most simpleminded investigator." *See Rosenfeld,* 57 F.3d at 815 (citing *Nat'l Sec. Archive v. FBI,* 759 F. Supp. at 885; *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 857 (D.D.C. 1989). In *Albuquerque Publishing*, the court directed agencies to release records "pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television," including "eavesdropping, wiretapping, and surreptitious tape recording and photographing." 726 F. Supp. at 858.

Defendants have generally failed to even argue that the law enforcement techniques they withheld under Exemption 7(E) are not routine or well known to the public. However, by reviewing the unredacted text within the documents, it is clear that at least some, if not all of the techniques withheld are widely known. For example, DHS withheld information in a letter from Senators Feingold and Rockefeller about the agency's improper collection of information on Americans' First Amendment-protected activities. *See* Lynch Decl. Ex. 15 (DHS Doc. No. 25 at Bates pp. 55-58). DHS states that the redactions reference "a collection technique," or an "intelligence technique," and that "[t]he redacted information would permit the reader to infer analytic techniques" used by DHS. Fausett Decl. Ex. A (Doc. No. 25 at pp. 55-58). However, it appears from the context of the text that these techniques involve merely talking to people who might have information on suspected persons; the surrounding text notes that that DHS "gleaned derogatory information" from people "with obvious political motivations" whose "criticisms" became the basis for "assessments by U.S. government analysts." *Id.* at 56. It appears that DHS obtained the information forming the basis of its assessments through routine and widely known

techniques such as eavesdropping, wiretapping, and surreptitious tape recording and

photographing. *See Albuquerque Publ'g Co.,* 726 F. Supp. at 857-58.[29]

      FBI's records similarly describe widely known law enforcement techniques. For example,

FBI claimed Exemption 7(E) on Hofmann-IOB-940 to withhold "details of specific law

enforcement techniques utilized by the FBI to conduct national security and intelligence

investigations." Hardy Decl. ¶ 51. Yet one report describes a court authorized search of a non-U.S.

person and a corresponding item, which was withheld from the released record. *See* Lynch Decl.

Ex. 20. That the FBI searches non-human objects is not a well-kept secret in law enforcement; thus

the object searched is exactly the type of information that must be disclosed. Additionally,

Hofmann-IOB-323 discusses "calls" that "three FBI employees heard," yet the word "wiretap" is

conspicuously absent. *See* Lynch Decl. Ex. 20. Again, this is precisely the type of information that

may not be withheld under Exemption 7(E).[30]

### 6. DHS and FBI Have Improperly Withheld Guidelines and Policies that Regulate an Agency's Dealings With the Public

      Finally, DHS and FBI have inappropriately withheld guidelines, policy documents, and

legal standards under Exemptions 5 and 7(E) that establish rules for whether and how the agencies

may take action affecting the public. Courts have repeatedly rejected attempts to withhold this type

of information from FOIA requesters. *See NLRB v. Sears,* 421 U.S. at 153 (Exemption 5 does not

protect statements of agency policy or other documents that have the "force and effect of

law"); *Jordan v. DOJ,* 591 F.2d 753, 781 (D.C. Cir. 1978) (en banc) (recognizing that one of the

fundamental purposes of the FOIA is to ensure that agencies do not maintain a secret body of law

that regulates their dealings with the public); *Gordon,* 388 F. Supp. 2d at 1036-37 (holding 7(E)

inapplicable to documents describing the legal basis for detaining someone on the FBI's "no-fly"

---

[29]*See also* Lynch Decl. Ex. 19 (DHS Doc. No. 33) redacting information on pages 52-54 but noting that all information collected and disseminated "came from open sources." It is hard to imagine that a technique such as "Googling" could be considered non-routine or not widely known. *See also, id.* (DHS Doc. 8) (discussing information posted on a flyer outside a mosque).

[30] *See also* Lynch Decl. Ex. 20 (IOB Matter 2005-05 at Hofmann-IOB-388) (discussing collection of email); (IOB Matter 2007-523 at Hofmann-IOB-998) (discussing collection of incoming email, web activity, and log-in information for chat).

22

Case No. 09-cv-03351 SBA    Opp. to Defs.' Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

watch list); *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993) (rejecting a similar DOJ argument about a "step by step analysis" and prosecutorial guidelines concerning obscenity crimes, explaining that such standards are "precisely the type of information appropriate for release under FOIA").

Here, DHS and FBI have withheld records that have the "force and effect of law" and must be disclosed. *See* DHS Doc. No 25 ("analytic guidelines used by DHS Office of Intelligence and Analysis"); *see also* Lynch Decl. Ex. 19 (DHS Doc. 9 at 21) (section titled "new interim guidance" on procedures for the office of intelligence and analysis); Hardy Decl. ¶ 80 (describing ODNI Bates pages 242-268 as "a policy guide prepared by FBI OGC"). The documents are analogous to those withheld in the caselaw, in that they either describe the general legal standards for when and how to conduct investigations or regulate other aspects of the Defendants' dealings with the public. As such, they must be released.

### 7.    Defendants Have Failed to Segregate and Release All Non-Exempt Information

Despite Defendants' assurances that they have released all segregable records, they continue to withhold hundreds of pages of records in part or full, thus concealing entire sentences, paragraphs, and pages, from public disclosure. Given the broad brush with which Defendants have painted exempt material, it is almost a certainty that Defendants have withheld more information than is otherwise justifiable.

The FOIA explicitly requires that "[a]ny reasonably segregable potion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). "In the Ninth Circuit, the district court must review the agency's 'segregability' decisions on a document-by-document basis." *NRDC v. DOD*, 388 F. Supp. 2d at 1096 (citing *Wiener*, 943 F.2d at 988). To satisfy its burden, the agency must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent.*, 566 F.2d at 261.

Three IOB reports—IOB Matters 2003-115, 2006-305, and 2007-717—released to EFF by the FBI in response to this request and an earlier, overlapping, FOIA request demonstrate this

23

Case No. 09-cv-03351 SBA    OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

argument. *See* Lynch Decl. Ex. 21 (Hofmann-IOB-572, Hofmann-IOB-809, and Hofmann-IOB-1075 (reports released in this case)); Ex. 22 (NSL VIO-18194, NSL VIO-24059, and NSL VIO-1708 (reports released in *EFF. v. DOJ*, Civ. No. 07-00656 (D.D.C. April 10, 2007)).[31] When the versions of the reports released in *EFF v. DOJ* are compared with the versions released by the FBI in this case, the results show that the FBI has not fulfilled its obligation to release all "reasonably segregable" material. *See* 5 U.S.C. § 552(b).

Two aspects of these reports are particularly notable. First, IOB Matter 2003-115 shows that the FBI's practice of redacting large blocks of text arbitrarily hides information that is both innocuous and not justifiably withheld under any exemption. As an example, the FBI withheld this sentence in its entirety: "Foreign Intelligence Surveillance Act of 1978 (FISA) requires that the Attorney General approve any use of FISA-derived information in a criminal proceeding." *Compare* Lynch Decl. Ex. 21 (Hofmann-IOB-572), *with* Ex. 22 (NSL VIO-18194). Here, the FBI has withheld a simple statement of the law—one that is both uncontroversial and not exempt.

The second and third reports, IOB Matters 2006-305 and 2007-717, demonstrate a second issue: the FBI's improper withholding of information about illegal conduct. The version of IOB Matter 2006-305 released in *EFF v. DOJ* included the following information: "Field Office drafted a [national security letter ("NSL")] requesting transactional records and all images uploaded . . . and 'all images uploaded' is not specifically allowed pursuant to an NSL[.]" However, when FBI produced the same record in this case it redacted all text referencing "all images uploaded" and thus withheld the conduct that was deemed to be improper. *Compare* Lynch Decl. Ex. 21 (Hofmann-IOB-809), *with* Ex. 22 (NSL VIO-24059). Similarly, in the version of IOB Matter 2007-717 released in this case, FBI redacted the fact that the Bureau had requested "educational records" from a "state university" through the issuance of an NSL. *Compare* Lynch Decl. Ex. 21 (Hofmann-IOB-1075), *with* Lynch Decl. Ex. 22 (NSL VIO-1708).  Thus the version of the report released in this case improperly obscured the very information that made the NSL illegal. Because no

---

[31] These reports were released to EFF in response to a previous FOIA request and litigation involving the FBI's abuse of its national security letter authority. However, because the NSL violations were also reported to the IOB, the FBI released the same records in response to the FOIA requests at issue in this case.

24

Case No. 09-cv-03351 SBA     OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.

exemptions protect this information, FBI has failed to properly segregate exempt from non-exempt information.

Several documents produced by DOD show similarly that the agency withheld more information than is justifiable. In 2011, in response to *Milner v. Dept. of Navy*, 131 S.Ct. 1259 (2011), the DOD re-processed records it originally withheld under a now-overruled interpretation of Exemption 2 and released several pages. The earlier interpretation of Exemption 2 allowed agencies to withhold "predominantly internal" materials whose disclosure would "significantly risk[] circumvention of agency regulation or statutes[.]" *Crooker v. ATF*, 670 F.2d 1051, 1074 (D.C. Cir. 1981). Comparing the redacted pages with the newly released pages, it is clear that DOD withheld more information than it was entitled to—even under the prior interpretation of Exemption 2. In one example, DOD withheld all information about three NSLs an Army special agent issued in violation of the NSL statute. Lynch Decl. Ex. 23 (Bates p. 1241). In another example, DOD withheld all information about an Army investigation of attendees at a conference on Islamic Law at the University of Texas. *Id.* Ex. 24 (Bates pp. 1234-35).  This information should not have been withheld under any exemption.

These examples only underscore the need for this Court's searching review of the Defendants' compliance with the FOIA's obligation to provide "[a]ny reasonably segregable potion" of the records at issue in this case. *See* 5 U.S.C. § 552(b). Given that all Defendants in this case employed similar block-redaction techniques, and given the subject of the withheld records in general, it is extremely likely that FBI and DOD's practices were not isolated.

## IV.   CONCLUSION

For the foregoing reasons, the government's consolidated motion for summary judgment should be denied, and EFF's cross motion for summary judgment should be granted.

DATED:  April 11, 2012                           Respectfully submitted,

                                                        */s/ Jennifer Lynch*
                                                        Jennifer Lynch, Esq.
                                                        ELECTRONIC FRONTIER FOUNDATION
                                                        454 Shotwell Street
                                                        San Francisco, CA  94110
                                                        Telephone:  (415) 436-9333
                                                        Facsimile:  (415) 436-9993

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

Case No. 09-cv-03351 SBA      Opp. to Defs.' Mot. Summ. J.; Not. of Cross Mot. and Cross Mot. Summ. J.;
Mem. in Supp. of Cross Mot. Summ. J.

**CERTIFICATE OF SERVICE**

1

2          I hereby certify that on April 11, 2012, I electronically filed the foregoing document with

3   the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the

4   counsel of record in this matter who are registered on the CM/ECF system.

5          Executed on April 11, 2012, in San Francisco, California.

6

7                                          */s/ Jennifer Lynch*
                                          Jennifer Lynch
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 09-cv-03351 SBA      OPP. TO DEFS.' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT. SUMM. J.;
MEM. IN SUPP. OF CROSS MOT. SUMM. J.