STUART F. DELERY
Acting Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
JOEL McELVAIN, DC Bar No. 448431
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7332
Washington, DC 20001
Telephone:	(202) 514-2988
Fax:	(202) 616-8202
Email:	Joel.McElvain@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION**, | ) | Case No. 4:09-cv-03351-SBA |
| Plaintiff, | )<br>)<br>) | **Defendants' Reply in Support of Their Motion for Summary Judgment, and Opposition to Cross-Motion for Summary Judgment [Corrected]** |
| v. | )<br>) | |
| **CENTRAL INTELLIGENCE AGENCY**, *et al.*, | )<br>) | |
| Defendants. | )<br>) | Submitted without argument per order of April 3, 2012 |

**TABLE OF CONTENTS**

**Page**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Defendants properly withheld classified records under Exemption 1 . . . . . . . . . . . . . . . 1

    A.     Defendants have explained their classified withholdings . . . . . . . . . . . . . . . . . . . . 1

    B.     Defendants did not withhold classified material in order to conceal violations of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    Defendants properly withheld material under Exemption 5 . . . . . . . . . . . . . . . . . . . . . . 5

    A.     Defendants properly withheld deliberative material . . . . . . . . . . . . . . . . . . . . . . . 5

    B.     Defendants properly withheld attorney-client material . . . . . . . . . . . . . . . . . . . . 9

    C.     Defendants properly withheld documents subject to the presidential communications privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   Defendants properly withheld material under Exemption 7 . . . . . . . . . . . . . . . . . . . . . 12

    A.     Defendants properly withheld Exemption 7(D) material . . . . . . . . . . . . . . . . . . 12

    B.     Defendants properly withheld Exemption 7(E) material . . . . . . . . . . . . . . . . . . 13

IV.   Defendants have produced all reasonably segregable material . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Berman v. CIA*,
    501 F.3d 1136 (9th Cir. 1997) ................................................................ 2
*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ................................................................ 14
*Carter v. Dep't of Commerce*,
    307 F.3d 1084 (9th Cir. 2002) ................................................................ 5
*DOJ v. Landano*,
    508 U.S. 165 (1993) ................................................................ 12
*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) ................................................................ 1, 3
*Hunt v. CIA*,
    981 F.2d 1116 (9th Cir. 1992) ................................................................ 1, 2, 3
*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ................................................................ 10
*Keys v. DHS*,
    510 F. Supp. 2d 121 (D.D.C. 2007) ................................................................ 13
*Loving v. DOD*,
    550 F.3d 32 (D.C. Cir. 2008) ................................................................ 11
*Maricopa Audobon Soc'y v. U.S. Forest Serv.*,
    108 F.3d 1082 (9th Cir. 1997) ................................................................ 6, 7
*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ................................................................ 14
*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ................................................................ 1
*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ................................................................ 9
*Nat'l Sec. Archive Fund v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ................................................................ 15
*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
    861 F.2d 1114 (9th Cir. 1988) ................................................................ 9
*Nixon v. Admin'r of Gen. Servs.*,
    433 U.S. 425 (1977) ................................................................ 11
*People for Am. Way Found. v. NSA*,
    462 F. Supp. 2d 21 (D.D.C. 2006) ................................................................ 4
*Rein v. PTO*,
    553 F.3d 353 (4th Cir. 2009) ................................................................ 10, 15
*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ................................................................ 7, 9
*Sellers v. DOJ*,
    684 F. Supp. 2d 149 (D.D.C. 2010) ................................................................ 14
*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................ 9, 10
*Voinche v. FBI*,
    940 F. Supp. 323 (D.D.C. 1996), *aff'd mem.*, 1997 WL 411685 (D.C. Cir. 1997) .... 1, 3

**Statutes**

5 U.S.C. § 552(b)(5) ................................................................ 7, 9
5 U.S.C. § 552(b)(7)(D) ................................................................ 12
5 U.S.C. § 552(b)(7)(E) ................................................................ 13, 14

-ii-

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mor. for S.J./Opp'n to Cross-Mot. for S.J.

**Page**

**Executive Orders**

Exec. Order No. 12,333, 46 Fed. Reg. 59,941 (Dec. 4, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Exec. Order No. 12,958, *as amended by* Exec. Order No. 13,292,
      68 Fed. Reg. 15,315 (Mar. 28, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4
Exec. Order No. 13,462, 73 Fed. Reg. 11,805 (Feb. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . *passim*
Exec. Order No. 13,470, 73 Fed. Reg. 45,325 (July 30, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

-iii-

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mor. for S.J./Opp'n to Cross-Mot. for S.J.

**Introduction**

EFF seeks reports made by intelligence community agencies to a committee of the President's Intelligence Advisory Board (PIAB), the Intelligence Oversight Board (IOB). The President requires those agencies to report to IOB, to assist it in its duty to make intelligence oversight recommendations to him. Exec. Order 13,462, § 6, 73 Fed. Reg. 11,805 (Feb. 29, 2008). It should come as no surprise that a significant portion of those reports is classified, or is otherwise exempt from disclosure. EFF nonetheless challenges virtually all of defendants' withholdings. Its wholesale challenge should be rejected.

**Argument**

**I.     Defendants Properly Withheld Classified Records under Exemption 1**

EFF seeks the release of classified material on two grounds. First, it argues that DOD and FBI have been insufficiently specific in describing the classified material they withheld. Second, it argues that DOD, FBI, and DHS have improperly classified information to "conceal" violations of law. Neither argument has merit.

    **A.     Defendants Have Explained Their Classified Withholdings**

In national security matters, courts must "accord 'substantial weight' to [the agency's] affidavits" if they are not "controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992). "[C]ourts have little expertise in either international diplomacy or counterintelligence operations, [and] are in no position to dismiss the [agency's] facially reasonable concerns" about the harm that disclosure could cause to national security. *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999).

The same principle applies to the question of how much detail can be disclosed in litigation over Exemption 1 withholdings. Exemption 1 affidavits "inherently require a degree of generalization" to prevent the compromise of national security. *Voinche v. FBI*, 940 F. Supp. 323, 328 (D.D.C. 1996), *aff'd mem.*, 1997 WL 411685 (D.C. Cir. 1997). An agency must defend classified withholdings mindful that "a more detailed affidavit could [reveal] the very intelligence sources or methods that the [agency] wished to keep secret." *Maynard v. CIA*, 986 F.2d 547, 557

- 1 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

(1st Cir. 1993). "[I]n asserting a FOIA exemption, the government need not specify its objections in such detail as to compromise the secrecy of the information." *Berman v. CIA*, 501 F.3d 1136, 1142 (9th Cir. 1997). It need only provide "reasonably specific detail," judged in light of the limits on it ability to discuss withholdings in more detail, to "demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of CIA bad faith." *Hunt*, 981 F.2d at 1119.

Defendants easily meet this standard. Even a review of the documents cherry-picked by EFF shows that defendants have justified their classified withholdings. For example, EFF challenges DOD's withholding of classified information from an Army Inspector General report. (Baines Dec., Ex. A at 18 (Bates 1485-1493)). DOD explained that it found, after a review both by classification authorities within the originating components and by the Army's Office of Inspector General, that disclosure of the material could reasonably be expected to cause damage to national security. (*Id.*, ¶ 7.) The material related to information-gathering capabilities that, if disclosed, could reveal to hostile entities specific intelligence measures and DOD's intelligence gathering priorities; hostile entities then could develop effective counter-measures. (*Id.*, ¶¶ 7-8.) DOD thus described the report challenged by EFF in adequate detail and explained the reason that the report was classified.

Nothing more is required. Agencies shall classify information whose unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to national security, including, *inter alia*, "intelligence activities (including covert action), intelligence sources or methods, or cryptology." Exec. Order 12,958, as amended by Exec. Order 13,292, § 1.4(c), 68 Fed. Reg. 15,315 (Mar. 28, 2003). DOD has explained the harm that could arise from disclosure, and has shown that the material was properly classified under the executive order. This Court must accord "substantial weight" to the agency's expert determination on this national security matter. *Hunt*, 981 F.2d at 1119.

For each document that EFF challenges, DOD has shown that release would risk identifiable damage to national security. (Baines Dec., ¶¶ 7-8; *id.*, Ex. A at 4 (discussing Bates 864-895; Hargrave Dec., ¶¶ 7-8; *id.*, Ex. A at 1 (discussing Bates 9-14); *id.* at 2 (discussing Bates 41-49). EFF

- 2 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

faults DOD for using similar language in justifying its classified withholdings. But, in each instance, DOD explained that disclosure risked harm to national security, and described in reasonable detail the general category of "intelligence sources or methods," Exec. Order 13,292, § 1.4(c), that were at issue. DOD could not provide more detail, given the nature of the classified material. It has provided enough information, however, to show that it followed the substantive and procedural requirements for classification. This Court thus should defer to DOD's "facially reasonable concerns" about the risks to national security. *Frugone*, 169 F.3d at 775.

EFF's challenge to FBI's Exemption 1 withholdings fails for the same reason. FBI withheld information that would reveal intelligence sources or methods, the disclosure of which could hamper the missions of U.S. intelligence agencies. (Hardy Dec. ¶¶ 25-28.) To cite one example, FBI withheld classified information from a 2008 IOB report that contained "details related to intelligence activity directed at a specific target of national security interest." (*Id.*, ¶ 40; *see id.*, Ex. I at 1.) Disclosure could reasonably be expected to cause serious harm to national security, as it would reveal the nature, scope, or thrust of a particular investigation, as well as the manner in which intelligence was gathered. (*Id.*, ¶ 40.) FBI also withheld internal agency terminology, the disclosure of which could permit a target to learn what investigatory steps may be expected against him and what resources FBI is willing to devote to the investigation. (*Id.*, ¶ 39; *see id.*, Ex. I at 1.) FBI thus has shown that it properly classified material whose unauthorized disclosure could risk damage to national security. Again, the agency is limited with respect to how much detail it can provide when describing the withheld classified material. *See Voinche*, 940 F. Supp. at 328. It need only provide reasonable detail to show that the procedural and substantive requirements for classification have been met. *See Hunt*, 981 F.2d at 1119. The defendants have met this burden.

**B.     Defendants Did Not Withhold Classified Material in Order to Conceal Violations of the Law**

EFF also contends that defendants classified material so as to conceal illegality. It reasons as follows: IOB was established to assist the President in reviewing reports of intelligence activities that intelligence community agencies "have reason to believe may be unlawful or contrary to

- 3 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

Executive order or Presidential directive," *see* Exec. Order 13,470, § 1.6(c); the reports were submitted to IOB pursuant to this Executive Order; therefore, the material withheld concerns illegal activity and must be disclosed. EFF's reasoning is flawed. As an initial matter, EFF mischaracterizes intelligence community agencies' reporting obligations. Those agencies do report to IOB "concerning any intelligence activities of their elements that they have reason to believe may be unlawful or contrary to Executive order or Presidential directive," Exec. Order 13,470, § 1.6(c), but they also provide any other "information and assistance as . . . the IOB determine[s] is needed to perform functions" that the President has directed it to perform. Exec. Order 13,462, § 8(a).

In any event, it does not follow that, because the agencies have submitted reports of possibly illegal activity to IOB, they must have withheld classified material in those reports to shield illegality. (Defendants, of course, do not concede the accuracy of any of EFF's speculations as to the contents of classified records.) The Executive Order governing classified material does not prohibit the withholding of matters that touch on possibly illegal actions. Instead, it provides that:

> [i]n no case shall information be classified *in order to*: (1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of national security.

Exec. Order 13,292, § 1.7(a) (emphasis added). EFF misleadingly quotes only part of this language, implying a flat ban against classifying records concerning possibly illegal behavior, when in fact the Order simply prohibits classification *for the purpose of* concealing illegality. Even if a classified document concerns illegal behavior,

> it does not follow that the [agencies'] decision regarding the classification of materials relating to the [potentially illegal conduct] was made "in order to ... conceal violations of law." Because of the deference due to the [agencies] in matters of national security, and in the absence of any evidence to the contrary, the Court must accept defendant's reasonable explanation that the materials were classified in order to prevent damage to the national security.

*People for Am. Way Found. v. NSA*, 462 F. Supp. 2d 21, 33 (D.D.C. 2006). So too here. Defendants have explained that they withheld classified information in order to prevent harm to national security. EFF merely speculates that defendants must be withholding classified information for the purpose of concealing illegality, rather than for the purpose of protecting national security. That

- 4 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

rank speculation should not be credited. Instead, this Court should defer to the agencies' expert judgment as to the risks posed by disclosure.

## II. Defendants Properly Withheld Material under Exemption 5

### A. Defendants Properly Withheld Deliberative Material

ODNI and DHS have properly withheld deliberative material under Exemption 5. The material is both "predecisional" and "deliberative," and so is subject to the deliberative process privilege. *See Carter v. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). EFF contends, first, that ODNI has been insufficiently specific in justifying its withholdings; second, that defendants have withheld documents reflecting non-deliberative final decisions; and, third, that defendants have withheld non-deliberative factual information. None of these arguments casts any doubt on the propriety of defendants' withholdings.

First, EFF faults ODNI for not providing a more exhaustive recitation in support of the deliberative process privilege. But ODNI has provided a detailed explanation of the deliberative process and the deliberative nature of the material that it has withheld. ODNI submits to the IOB an analysis of reports received under Executive Order 12,333 from the heads of elements of the Intelligence Community and prepares intelligence oversight assessments. (Hackett Decl., ¶ 28.) In preparing these assessments for IOB, ODNI receives and reviews the quarterly reports submitted by the heads of intelligence community agencies as well as any immediate reports of significant or highly sensitive matters under investigation or review by that agency. (*Id.*) After ODNI reviews these reports, it assesses whether each agency has complied with its reporting obligations in accordance with Executive Order 13462 and its associated reporting criteria, identifies any problematic trends, and provides recommendations for IOB's consideration. (*Id.*) The documents at issue in this case are exchanged and reviewed by ODNI within this deliberative construct. (*Id.*; *see also id.*, ¶¶ 29-30.) The withheld material is thus deliberative. *See Carter*, 307 F.3d at 1089.

EFF in particular faults ODNI for withholding multiple repetitive copies of an email chain concerning deliberations between ODNI and FBI. (Hackett Dec., Ex. J at 29 (Doc. 213).) That document is an email chain among FBI general counsel personnel, ODNI staff, and IOB personnel,

- 5 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

in which FBI solicited legal advice regarding the legality of actions taken by FBI pertaining to a national security letter (and so the document is also protected by the attorney-client privilege). (Hardy Dec., ¶ 88.) The particular matter at issue cannot be described in greater detail, because it relates to material protected under Exemption 7(E) relating to a computer system used by FBI in national security investigations, the disclosure of which would allow individuals to alter their behavior to avoid detection. (*Id.*, ¶ 89.) ODNI has explained, however, that the email chain consists of an exchange between the agencies of information that would allow ODNI to evaluate FBI's handling of the matter, and an exchange within ODNI as to its formulation of a response to the matter. (Hackett Dec., ¶ 31; *id.*, Ex. J at 29.) ODNI has also explained that these materials must be protected from disclosure, because intelligence community agencies would be chilled if ODNI could not maintain the confidentiality of matters that are reported to it. The result would be under-reporting of relevant activities to ODNI, which would undercut the ability of ODNI and IOB to fulfill their responsibility to make accurate and timely reports of intelligence activities to the President. (Hackett Dec., ¶¶ 33, 35.) This is classically deliberative material. *See, e.g., Maricopa Audobon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1092 (9th Cir. 1997).

EFF also disputes ODNI's withholding of a "spreadsheet" that tracks ODNI's actions in reports made to it. ODNI has shown that this document is deliberative. (The spreadsheet was also withheld under Exemptions 1 and 3, which EFF does not dispute, so the question whether the document is also deliberative is moot, in any event.) The spreadsheet tracks reports made by intelligence community agencies, and the progress of the development of a response to those reports. (Hackett Decl., ¶ 35.) The document contains characterizations shared with ODNI by reporting agencies, and those agencies must be assured of confidentiality to ensure a full and frank discussion. (*Id.*) If those discussions would be hampered by concerns over disclosure, ODNI and IOB would not be fully able to fulfill their responsibilities to make recommendations to the President. (*Id.*)

Second, EFF speculates that ODNI and DHS have withheld non-deliberative "final" documents. It contends that "intelligence oversight assessments" for IOB, withheld by ODNI, represent the agency's final position. (Hackett Dec., Ex. J at 3-8 (Docs. 14-19).) These documents

- 6 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

are reports for IOB, and consist of discussions of the status of reporting activity, investigations, and actions between ODNI and intelligence community agencies. (*Id.*) They discuss the gravity, frequency, trends and patterns of occurrences of intelligence activities that may be unlawful or contrary to executive order, and the assessments of the effectiveness of corrective actions taken. (*Id.*, ¶ 28.) Confidentiality is necessary to ensure that ODNI provides candid assessments without concerns that its deliberative analyses and recommendations will be revealed, so that PIAB, and ultimately the President, receives a full and frank discussion in support of any recommendations that may be made for ultimate Presidential action. (*Id.*, ¶¶ 29-30.)[1] These documents are predecisional and deliberative, and ODNI accordingly has explained in exhaustive detail why they should be protected from disclosure. *See Maricopa*, 108 F.3d at 1092.

That ODNI shares these documents with the entities that oversee it – IOB, PIAB, and ultimately the President – does not change their deliberative nature. *See* 5 U.S.C. § 552(b)(5) (FOIA protects privileged "*inter-agency or* intra-agency memorandums or letters") (emphasis added). There is no support (and EFF cites none) for the theory that a document prepared to assist in inter-agency deliberations could still be a "final," non-deliberative document as to the agency that prepared it. The law is precisely the opposite, as explained by controlling Supreme Court authority that goes uncited by EFF. The deliberative process privilege fully protects a document prepared by one agency that lacks final decisionmaking authority (here, ODNI) to assist the decisionmaker (here, PIAB and ultimately the President).[2] *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188 (1975) ("By including inter-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that

---

[1] The documents are also subject to the presidential communications privilege, discussed below. ODNI also withheld portions under Exemptions 1, 2, 3, and 6, and those exemptions have not been challenged by EFF.

[2] EFF's challenge to a DHS document fails for the same reason. *See* Fausett Dec., ¶ 16; *id.*, Ex. A at 8 (Doc. Cardozo-8). EFF argues only that DHS shared the document with IOB. This reasoning fails under *Grumman Aircraft*.

- 7 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

the advice be any more disclosable than similar advice received from within the agency.").

EFF also speculates that "talking points" memos and "briefing materials" reflect final decisions by ODNI. (ECF 66 at 20-21.) Again, ODNI has explained why this is not the case. The withheld "briefing materials" include, for example, a presentation for a senior ODNI official with recommendations regarding the staffing process, and briefing slides for a new general counsel to inform him on the IOB reporting process, as well as emails consisting of exchanges regarding the formulation of draft briefing materials. (Hackett Dec., ¶¶ 46-47.; *id.*, Ex. J (Docs. 104, 128-129, 224, 255, 262, 279, 301, 323).) The "talking points" memos contain recommendations prepared by ODNI staff for senior personnel as to how to resolve certain matters to be addressed in meetings with IOB. (*Id.*, ¶ 48.) They include: (1) a summary of recommendations made by ODNI to IOB – for which the underlying recommendations are themselves deliberative, as discussed above (Hackett Dec., Ex. J at 13 (Doc. 123)); (2) drafts of memos and exchanges regarding the drafting of those documents, which are classically pre-decisional and deliberative materials (*id.*, Ex. J at 42 (Docs. 301, 304)); and (3) internal emails providing proposed talking points to prepare for a meeting to be held by a senior ODNI official, (*id.*, Ex. J at 43 (Doc. 305)). (EFF also challenges document 122, but that document was released in full. *Id.*, Ex. J at 13.) Each of these documents formed part of the agency's decision-making process. There is no basis for EFF's speculation that these documents represent final decisions by ODNI.

EFF also alleges that "draft" documents withheld by ODNI were actually final decisions. It purports to challenge "drafts" that are not linked to a final document. (ECF 66 at 21.) As ODNI has explained, however, in some cases, it was unable to direct EFF to a final document, because, for example, ODNI commented on draft materials provided by another agency and the final document resided with that other agency. (Hackett Dec., ¶¶ 43-44.) This in no way undermines the draft nature of the documents in ODNI's possession. And ODNI has fully explained why these materials are deliberative; premature disclosure of the materials would inhibit the free flow of ideas needed for the formulation of reports and policies. ODNI shared these draft materials in order to solicit a wide range of recommendations for the formulation of a position on a matter. (Hackett Dec., ¶¶ 40-

- 8 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

42.) Such materials are protected by the deliberative process privilege. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121-22 (9th Cir. 1988).

Third, EFF faults ODNI for withholding factual information. In particular, it seeks factual information from the spreadsheet discussed above. (Hackett Dec., Ex. J at 10 (Doc. 107).)[3] That document contains classified factual information; but EFF has not challenged ODNI's classified withholdings. (*Id.*) In any event, that material was reported to ODNI by intelligence community agencies. Those reports must be confidential, to ensure that ODNI may prepare full and fair recommendations on intelligence matters for PIAB and the President. (*Id.*, ¶ 35.) "Where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are 'inextricably intertwined' with 'policy-making processes,' the material is exempt." *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 (internal quotation omitted). The material in documents 107 and 130 is inextricably intertwined with the policy-making process in which ODNI prepares recommendations for PIAB and the President, and so it is deliberative.

### B. Defendants Properly Withheld Attorney-Client Material

EFF also disputes FBI's and DHS's withholding of attorney-client material. It argues that the agencies waived the privilege by sharing communications with IOB and ODNI. As discussed above, this misstates the law. Exemption 5 protects both "inter-agency and intra-agency" documents, 5 U.S.C. § 552(b)(5), and so privileged materials may be shared within the Executive Branch. *See Grumman Aircraft*, 421 U.S. at 188. EFF asserts that a communication must be "circulated no further than among those members of the organization who are authorized to speak and act for the organization in relation to the subject matter of the communication." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977). But this "control group" test was overruled in *Upjohn Co. v. United States*, 449 U.S. 383 (1981). The Court held that the "narrow scope given the attorney-client privilege" under such a test "threatens to limit the valuable

---

[3] EFF also seeks factual information from an incident report form relating to an IOB report. (*Id.*, Ex. J at 13 (Doc. 130.)) That factual information is also classified. (*Id.*)

- 9 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

efforts of corporate [or, here, government] counsel to ensure their client's compliance with the law." *Id.* at 392. The Court held that "no abstractly formulated and unvarying 'test' will necessarily enable courts to decide questions [of the privilege's scope] such as this with mathematical precision," *id.* at 393, and the privilege must be interpreted so as to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389.

In light of these principles, the attorney-client privilege applies fully to these documents. FBI and DHS were obligated by executive order to report to IOB any intelligence activities that were potentially illegal or contrary to executive order. IOB is authorized to speak on behalf of the Executive Branch on the subject matter of these communication. *See* Exec. Order 13,462, § 6. A contrary holding would mean that no intelligence agency lawyer could ever counsel an agency employee as to an activity of uncertain legality, since such matters must be internally reported within the Executive Branch to IOB. The adverse consequence of such a rule are obvious.

There is no sense, then, in which FBI's or DHS's sharing of confidential attorney-client communications with IOB – as they were obligated to do – committed them also to share those communications with the outside world. *See Rein v. PTO*, 553 F.3d 353, 376 (4th Cir. 2009) ("the attorney client privilege can be waived if the document is published, or disclosed to private individuals or to *nonfederal agencies*") (emphasis added). *See also In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) (referring to waiver by *voluntary* disclosure).

**C.  Defendants Properly Withheld Documents Subject to the Presidential Communications Privilege**

ODNI has properly withheld six documents under the presidential communications privilege.[4] It has withheld portions of reports that it made to IOB, because public disclosure would inhibit ODNI staff from providing candid and comprehensive evaluations in future reports, which

---

[4] The documents are also protected by the deliberative process privilege, as shown above. (Hackett Decl., Ex. J, Docs. 14-19.) If this Court holds the documents to be deliberative, it need not reach the presidential communications privilege.

- 10 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

would diminish the ability of PIAB and its committee, IOB, to formulate appropriate or comprehensive policy recommendations on intelligence matters to the President. (Hackett Decl., ¶ 30.) The withheld portions of the reports are therefore protected by the presidential communications privilege. *See Nixon v. Admin'r of Gen. Servs.*, 433 U.S. 425, 448-49 (1977) ("'Unless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends'") (citation omitted).

EFF argues that the privilege cannot apply because neither PIAB nor IOB are located in the Office of the President. But the boards play a central role in the President's decision-making regarding intelligence matters. The President created them for the specific purpose of advising him on national security measures under Executive Order 13,462. Under the same executive order, ODNI supports these boards by providing intelligence oversight assessments, which the boards use to develop recommendations for the President. (Hackett Decl., ¶¶ 29-30 & Ex. J.) Because public disclosure of the reports would inhibit ODNI staff from providing candid and comprehensive evaluations in intelligence oversight reports, that disclosure would significantly interfere with the ability of the boards to fulfill their duty to provide appropriate and comprehensive policy recommendations to the President. (*Id.*)

Contrary to EFF's claim, the President need not personally review a document for the exemption to apply. The privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially," and thus it necessarily protects not only "communications directly involving and documents actually viewed by the President," but also documents solicited and received by the President or his "immediate White House advisers with broad and significant responsibility for investigating and formulating the advice to be given the President." *Loving v. DOD*, 550 F.3d 32, 37 (D.C. Cir. 2008). EFF, puzzlingly, disputes whether the members of PIAB and IOB qualify as "immediate White House advisers" under this test. But, as defendants have shown – and as EFF does not dispute – the boards inform the President of intelligence activities that they believe may be unlawful or contrary to Executive Order or

- 11 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

presidential directive and make recommendations to the President on matters involving oversight of the intelligence community. Executive Order, 13,462, § 4(b). (*See* Hackett Decl., ¶¶ 28-30.) The reports provided by ODNI to this board are "solicited and received" by the President's "immediate White House advisors" on the board, for the purpose of fulfilling their "broad and significant responsibility for investigating and formulating the advice to be given to the President." *Loving*, 550 F.3d at 37. They fall squarely within the presidential communications privilege.

**III.     Defendants Properly Withheld Material Under Exemption 7**

**A.     Defendants Properly Withheld Exemption 7(D) Material**

FBI has withheld material under Exemption 7(D), which permits the withholding or redacting of law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). For this purpose, a confidential source is one who "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *DOJ v. Landano*, 508 U.S. 165, 172 (1993). An implied assurance of confidentiality could be found "when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality." *Id.* at 179, 181. FBI has withheld information from confidential sources concerning the activities of the subjects of the FBI's national security investigations. (Hardy Decl., ¶34-35, 45 & Ex. H.) The disclosure of these sources' identities "could have disastrous consequences." (*Id*., ¶ 45.) These sources "have placed themselves in harm's way should the subjects of these investigations become aware of these third parties' cooperation with the FBI." (*Id.*) In these circumstances, the sources have provided information to FBI under an implied assurance of confidentiality. (*Id.*) The information thus is exempt under Exemption 7(D).

EFF disputes whether it is "reasonable to infer that the informant expected" confidentiality. But sources are not typically indifferent whether the FBI will disclose their identity, if that disclosure would place them in danger. In such a case, the inference of confidentiality is not only

- 12 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

1  reasonable, it is virtually compelled.

### B. Defendants Properly Withheld Exemption 7(E) Material

FBI and DHS withheld material under Exemption 7(E), which protects records or information, the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Under the first clause, law enforcement "techniques or procedures" are categorically exempt. *See Keys v. DHS*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007). Under the second clause, "guidelines for law enforcement investigations or prosecutions" may be withheld only if "disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). (As a precaution, however, defendants have addressed the risk of circumvention of the law for all of the 7(E) withholdings.)

FBI withheld information that would identify field offices, units, or members involved in a national security investigation. Disclosure would reveal how the FBI conducts these investigations, which could foster circumvention of the law. (Hardy Decl., ¶¶ 36, 46-52, 57-59, 65-68, 74, 82-83, 89 & Ex. H.) FBI also withheld, for example, information as to specific e-mail accounts under investigation, as disclosure could allow suspects to switch accounts. (*Id.*) It also withheld information revealing whether it has undertaken a preliminary or full investigation; disclosure would allow targets to learn the criteria for a full investigation, and to adjust their behavior accordingly. (*Id.*) Similarly, DHS withheld information that pertains to techniques and procedures used by DHS I&A, or that would disclose that office's analytic guidelines; disclosure reasonably could be expected to lead to circumvention of criminal laws relating to DHS's homeland security mission. (Fausett Decl., ¶¶ 3-4, 17 & Ex. A.) The information thus is exempt under Exemption 7(E).

EFF contends that Exemption 7(E) does not apply, because criminals are not actually "likely" to use this information if it is disclosed. FOIA does not require such a "more-likely-than-not" showing. Instead, information is protected if its disclosure "*could* reasonably be expected to *risk* circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (emphasis added).

- 13 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

> [T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

*Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). The defendants' showing easily meets this "relatively low bar." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

EFF wrongly argues that information concerning "well known" procedures is not protected by Exemption 7(E). To take only one example, it is "well known" that FBI is able to review internet sites. It still has withheld certain internet addresses and e-mail addresses that it has reviewed during national security investigations, for the obvious reason that disclosure of that *specific* information could permit targets to learn which domains and e-mail addresses are under investigation, and to alter their behavior accordingly. (Hardy Decl., ¶ 46.) Although the tactic of reviewing the internet is hardly a secret, the disclosure of its use in a given investigation could reasonably be expected to risk circumvention of the law. *See Sellers v. DOJ*, 684 F. Supp. 2d 149, 164 (D.D.C. 2010) (even well-known technique may be withheld under Exemption 7(E) if "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques").

Last, EFF speculates that defendants withheld documents with the "force and effect of law." It refers to "analytic guidelines" that DHS has withheld. (Fausett Decl., Ex. A at 10 (Doc. 25)). It should be clear that those "guidelines" are internal guidance for DHS personnel, and do not impose legal obligations on the general public. The other two documents that EFF challenges are to the same effect. *See id.*, Ex. A at 9 (Doc. 9) (describing procedure used by DHS Office of Intelligence & Analysis to receive, store, and disseminate information); Hardy Decl., ¶ 80 (describing policy implementation guide prepared by FBI counsel for agency personnel on IOB matters). To repeat the statutory text, Exemption 7(E) protects "*guidelines* for law enforcement investigations or prosecutions" if disclosure could reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E). EFF's claim that FBI and DHS cannot withhold "guidelines" pertaining to their statutory missions under this exemption is frivolous.

- 14 -

*Electronic Frontier Found. v. CIA*
Case No. 4:09-cv-03351-SBA
Reply in Supp. of Mot. for S.J./Opp'n to Cross-Mot. for S.J.

**IV.     Defendants Have Produced All Reasonably Segregable Material**

Defendants have produced all "reasonably segregable portion[s]" of the withheld records. 5 U.S.C. § 552(b). The test is one of reasonableness; an agency need not produce non-exempt information if what remains would be meaningless. *See Nat'l Sec. Archive Fund v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005). Defendants have disclosed those portions of the voluminous responsive material that may reasonably be separated from exempt material. ODNI, for example, has withheld in full 783 pages, but has released segregable material from another 743 pages. (Hackett Decl., ¶ 23.) FBI likewise has released 553 pages in full and 1,816 pages in part; and has withheld in full 37 pages. (Hardy Decl., ¶ 4.) Defendants' withholdings in full consist of documents where no meaningful information would remain after exempt material is excised. (*Id.*, ¶ 101; Baines Decl., Ex. A; Fausett Decl., ¶ 8 & Ex. A; Hackett Decl., ¶ 23; Hargrave Decl., Ex. A.) EFF asserts that some documents were redacted differently in other FOIA litigation. But "[e]specially where a FOIA request yields the number of responsive documents as did the [requests at issue here], minor differences in a line-by-line redaction are not unexpected." *Rein*, 553 F.3d at 374.

## Conclusion

Defendants respectfully request that the Court deny EFF's cross-motion for summary judgment, and that the Court enter summary judgment in defendants' favor.[5]

> Respectfully submitted,
>
> STUART F. DELERY
> Acting Assistant Attorney General
>
> ELIZABETH J. SHAPIRO
> Deputy Branch Director
>
>   /s/ Joel McElvain
> JOEL McELVAIN
> Senior Trial Counsel
> U.S. Department of Justice

---

[5] EFF asks the Court to order the immediate release of documents. This would not be a proper remedy. Given the presence of classified documents and the national security concerns at issue here, the remedy would be to direct the defendants to more fully explain any withholdings that the Court finds have not yet been justified.

CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2012, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

    /s/ Joel McElvain
JOEL McELVAIN